# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JUAN CARLOS ALVAREZ | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | CASE NO.4:09cv-03040 |
| | ) | |
| RICK THALER, | ) | |
| Director, Texas Department of | ) | DEATH PENALTY CASE |
| Criminal Justice, Correctional | ) | |
| Institutions Division | ) | |
| Respondent. | ) | |
| _____ | ) | |

_____

### PETITIONER'S REPLY TO RESPONDENT'S ANSWER TO WRIT OF HABEAS CORPUS

_____

\* Attorney-in-charge

Robert L. McGlasson\*
Texas Bar No. 13634050
Admitted Pro Hac Vice
McGlasson & Associates, PC
1024 Clairemont Avenue
Decatur, Georgia 30030
(404) 314-7664 (phone)
(404) 373-9338 (fax)
rlmcglasson@comcast.net (e-mail)

Skyla V. Olds
California Bar No. 241742

Admitted *Pro Hac Vice*

Attorney at Law
819 Delaware Street
Berkeley, CA 94710
(510) 915-4168 (phone)
(510) 540-8442 (fax)
skyla.olds@gmail.com (email)

Attorneys for Petitioner

## I.    Introduction

Mr. Alvarez incorporates by reference the amended petition in this case and all other writings filed by him in this action.  Except as expressly admitted herein and in the Amended Petition, Mr. Alvarez specifically refutes each and every denial set forth in Respondent's answer and re-alleges each of the denied claims. Except as expressly admitted herein and in the Amended Petition, Mr. Alvarez denies each and every allegation of fact set forth in Respondent's answer and reasserts all facts alleged in the Amended Petition.

This Court has subject matter jurisdiction over each and every claim for relief in the Amended Petition.

Each and every claim for relief in the Amended Petition has been exhausted and is not barred in any way from federal court review. None of the claims for relief in the Amended Petition are procedurally barred because of any failure on the part of Mr. Alvarez to timely or appropriately assert such claims before the courts of Texas.

None of the claims for relief in the Amended Petition are barred by the nonretroactivity doctrine of *Teague v. Lane,* 489 U.S. 288 (1989). None of the errors raised in the Amended Petition were harmless.

Mr. Alvarez denies each and every defense proffered by Respondent that is based on 28 U.S.C. § 2254(d)-(e), as amended by the Antiterrorism and Effective Death Penalty Act. ("AEDPA").

To the extent that Respondent has improperly raised or failed to raise any potentially applicable defenses, in his answer, those defenses are waived. The Federal Rules of Evidence do not preclude proof of any claim for relief in the Amended Petition.

In resolving the issues raised by Respondent's answer, this Court should permit the parties to employ necessary fact-finding procedures to resolve issues of both fact and law including, but not limited to, discovery, expansion of the record, use of the Court's subpoena power, and an evidentiary hearing.

Even if the Court concludes that only some of the claims raised in the Amended Petition or only some of the defenses raised by Respondent require fact development, this Court should permit the formal fact-finding procedures to proceed before it rules on the other, strictly legal issues. Deferring legal argument pending completion of fact finding procedures will allow the legal issues to be addressed efficiently in a single round of briefing. Additionally, ruling on any of the claims for relief in the Amended Petition prior to formal fact-finding procedures would prohibit proper development of Mr. Alvarez's cumulative error claims.

After having a full and fair opportunity to develop, brief, and present each and every claim in the Amended Petition through investigation, discovery, expert analysis, and evidentiary hearings; and after having a full and fair opportunity to discover, investigate, and brief the basis of each and every specific and general denial or purported assertion contained in the Answer, Mr. Alvarez will fully establish that each and every denial or assertion set forth in the Answer is unsupported in law or fact, and that the requests for relief in the Amended Petition must be granted.

## II.    Additional Facts

Leslie Ribnik was appointed to represent Mr. Alvarez in his state habeas proceedings on December 14, 1999.  Counsel Ribnik filed an application for writ of habeas corpus on September 10, 2001.  On August 4, 2006, Counsel Ribnik was made aware that he was suffering from the affects of Parkinson's Disease, and that he had been experiencing conditions and effects from the disease for a number of years.  As a result, the undersigned, attorney Robert McGlasson, was substituted as habeas counsel for Mr. Alvarez on October 11, 2006.  Substitution Motion, filed October 11, 2006.  After reviewing case files and work conducted by prior habeas counsel Ribnik, on May 15, 2007, current habeas counsel filed a Motion to Withdraw Mr. Ribnik's application for writ of habeas corpus based on the fact that Counsel Ribnik had not been competent to represent Mr. Alvarez at the time of his

appointment because of his un-medicated and undiagnosed Parkinson's Disease. As directed by the Court, counsel for respondent and Mr. Alvarez's current habeas counsel filed proposed findings of facts and conclusions of law on the same date. The State additionally filed an Opposition to the Motion to Withdraw a few days later.

As attorneys for Petitioner indicated in the Supplemental Reply, filed on February 7, 2008, that Reply was the first filing in the state post-conviction proceedings by a habeas counsel not cognitively impaired by Parkinson's Disease that addresses and provides further evidentiary support for the legal claims raised in Mr. Alvarez's application for writ of habeas corpus.

## III.  The State Court Decision Was Contrary To Or Involved An Unreasonable Application of Clearly Established Federal Law And/Or Was Based On An Unreasonable Determination of the Facts

In order to obtain federal habeas review of claims adjudicated on the merits by state court pursuant to 28 U.S.C. § 2254(d), the adjudication must have:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

The merits decisions by the CCA is Mr. Alvarez's case meet this determination.

Petitioner here addresses 2254(d) in connection with one merits arguments raised by counsel for Respondent in his Answer.  To the extent that specific claims in the amended petition are not discussed herein, Petitioner stands on the previous arguments and pleadings submitted to this Court in the Petition, Amended Petition, Motion for Stay/Abeyance, and all other pleadings files by Petitioner in this case and in the state habeas court record.  He incorporates all herein by express reference.

A.  The Sleeping Lawyer Claim

Petitioner has submitted in the state habeas corpus record, and in the amended petition in this case, undisputed, unrebutted evidence that his lead attorney at trial, Frumencio Reyes, slept repeatedly through substantial portions of Petitioner's capital murder trial.  He also sought evidentiary development on this claim in state habeas corpus proceedings, but was denied all requested relief.

Respondent's only argument in the Answer on this claim is the blanket assertion that affidavits from two jurors are "inadequate to show that Reyes was sleeping."   Respondent neither points to, nor has provided any contrary evidence regarding the issue of sleeping counsel.  Rather,

Respondent simply avers that the absence of *additional* evidence (i.e. from other courtroom participants) somehow makes lies or fantasy out of the express and clear recollections of two sitting jurors in this case.

In short, the evidence before this Court, which it must presume to be correct at this point in the proceedings, is that lead counsel slept "repeatedly throughout the trial", Exhibit 10, and that it was so noticeable and egregious that the jurors discussed the sleeping during deliberations. *Id*.   Under the binding law of this Circuit set forth below, that is sufficient to grant habeas corpus relief in this case.

To the extent this Court determines further evidentiary development may be important to a final resolution of this claim, which Petitioner believes is not necessary to prevail at this time, given the state court's failure to grant fact development despite explicit requests for such, this Court must grant discovery and an evidentiary hearing before it can resolve this issue to deny relief to Petitioner.  *See* 28 U.S.C. §2254(e); (*Michael*) *Williams v. Taylor*, 529 U.S. 420 (2000).

B.   The Sixth Amendment Right to Counsel

Nearly seventy years ago the Supreme Court held that a capital defendant's constitutional right to counsel requires "the guiding hand of counsel *at **every step** in the [trial] proceedings against him*."  *Powell v.*

*Alabama*, 287 U.S. 45, 69 (1932) (emphasis added).  In *Powell* nine African-American youths had been charged with the rape of two young white women near Scottsboro, Alabama; eight were convicted and sentenced to death.  The trial court had appointed counsel for the defendants, but only by designating "all the members of the bar."  *Id.* at 49.  The local attorney who eventually stepped forward (with the last minute help of an out-of-state attorney) was unprepared and otherwise not "given that clear appreciation of responsibility or impressed with that individual sense of duty which should and naturally would accompany the appointment of a selected member of the bar... ."  *Id.* at 56.

In *Powell* the Supreme Court considered the scope of a capital criminal defendant's need for legal representation at trial.  Recognizing that an indigent capital defendant is "incapable of adequately making his own defense," the Court held that a trial judge must "assign counsel for [the defendant] as a necessary requisite of due process of law; and that duty is not discharged by assignment at such time or under such circumstances as to preclude the giving of effective aid in . . . the trial of the case."  *Powell*, 287 U.S. at 71.

"Time has not eroded the force of Justice Sutherland's opinion for the Court in *Powell*," the Court would later note,[1] specifically referencing its description of the critically important role of defense counsel in a criminal trial:

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. *Id*. at 68-69.

The Court in *Powell* reversed the defendants' convictions without inquiring into whether counsels' lack of preparation made any difference to the outcome of the trial. Instead, it concluded that "such designation of counsel as was attempted was either so indefinite or so close to trial as to amount to a denial of effective and substantial aid in that regard," *id*. at 53, and remanded the case to the lower court for a new trial.

---

[1] *U.S. v. Cronic*, 466 U.S. 648, 653 n. 8 (1984).

Six years later the Court in *Johnson v. Zerbst*, 304 U.S. 458, 463

(1938), held that the failure to appoint counsel in a non-capital, federal

criminal trial rendered the proceedings void and thus subject to collateral

attack in habeas. *Johnson* echoed *Powell's* statement as to the critical role

of counsel:

> The Sixth Amendment stands as a constant admonition that if the
> constitutional safeguards it provides be lost, justice will not "still be
> done." It embodies a realistic recognition of the obvious truth that the
> average defendant does not have the professional legal skill to protect
> himself when brought before a tribunal with power to take his life or
> liberty, wherein the prosecution is presented by experienced and
> learned counsel. That which is simple, orderly, and necessary to the
> lawyer – to the untrained layman – may appear intricate, complex, and
> mysterious. 348 U.S. at 462-63 (citations omitted).

Four years thereafter, the Court refused to extend its holding to a state

non-capital case in *Betts v. Brady*, 316 U.S. 455 (1942). Instead, the Court

adopted a so-called "special circumstances" test, which conditioned the right

to counsel in a given case upon a showing that counsel was required to

ensure a fair trial either because of the complexity of the facts or relevant

legal issues, or because the defendant was particularly incapable of

protecting his own rights owing to age, mental impairment, and the like.

In *Gideon v. Wainwright*, 372 U.S. 335, 339 (1963), the Court

expressly overruled *Betts*' conditional rule and adopted a *per se* Sixth

Amendment right to counsel in all felony cases. In overturning the *Betts*

test, the Court in *Gideon* relied upon *Powell's* discussion of the inherent

value of counsel and held that *Betts* erred in its failure to acknowledge that

representation by counsel was *invariably* essential to a fair trial:

> ...[R]eason and reflection require us to recognize that in our
> adversary system of criminal justice, any person haled into
> court, who is too poor to hire a lawyer, cannot be assured a fair
> trial unless counsel is provided for him.  This seems to us to be
> an obvious truth....That government hires lawyers to prosecute
> and defendants who have the money hire lawyers to defend are
> the strongest indications of the wide-spread belief that lawyers
> in criminal courts are necessities, not luxuries.  The right of one
> charged with crime to counsel may not be deemed fundamental
> and essential to fair trials in some countries, but it is in ours.
> From the very beginning, our state and national constitutions
> and laws have laid great emphasis on procedural and
> substantive safeguards designed to assure fair trials before
> impartial tribunals in which every defendant stands equal
> before the law.  This noble ideal cannot be realized if the poor
> man charged with crime has to face his accusers without a
> lawyer to assist him.

372 U.S. at 344.[2]

Since *Gideon*, the Court has relentlessly safeguarded and expanded

upon an indigent criminal defendant's right to counsel under the Sixth

Amendment.  The Court extended *Gideon* to misdemeanor cases in

*Argersinger v. Hamlin*, 407 U.S. 25 (1972).  In its so-called "critical stage"

---

[2]  The Court cited to commentary that had been sharply critical of the *Betts*
decision in large part because of the virtual impossibility of a defendant ever
being able to prove retrospectively that he had been prejudiced due to a lack
of counsel.  372 U.S. at 337-38 n.2, <u>citing</u> Kamisar, *The Right to Counsel
and the Fourteenth Amendment*, 30 U.CHI.L.REV. 1, 42-56 (1962).

jurisprudence, the Court expanded the right to counsel to require counsel's presence at any stage of a criminal proceeding in which the "substantial rights of the accused may be affected." *Mempa v. Rhay*, 389 U.S. 128, 134 (1967). *See e.g., Hamilton v. Alabama*, 368 U.S. 52 (1961) (right to counsel at arraignment); *White v. Maryland*, 373 U.S. 59 (1963) (right to counsel at first appearance where plea entered). The Court also buttressed the right to counsel against outside interference with the attorney/client relationship or the ability of the defense to present its case. *See e.g., Geders v. U.S.*, 425 U.S. 80, 91 (1976) (Sixth Amendment violation required no showing of prejudice where defendant denied access to his attorney during overnight recess); *Herring v. New York*, 422 U.S. 853, 863-65 (1975) (same, where state law precluded defense counsel from making closing argument); *Brooks v. Tennessee*, 406 U.S. 605, 612-13 (1972) (same, where state statute required defendant who desired to testify to do so as first witness). Finally, the Court interpreted the Sixth Amendment to require the appointment of an attorney who is unconstrained by any conflict which would interfere with his/her duty of loyalty to the client. *See Holloway v. Arkansas*, 435 U.S. 475 (1978); *Cuyler v. Sullivan*, 446 U.S. 335 (1980). As in *Powell* and *Gideon*,

in each of these cases the Court reversed the convictions of the defendants without regard to potential impact on the outcome of the proceedings.[3]

These precedents recognize that the Sixth Amendment "envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 685 (1984).  At trial and sentencing, that role includes diligently monitoring the prosecution's case, evaluating it (and re-evaluating it as the trial proceeds), and deciding whether to interpose or withhold objections and whether to accept, contest, refute, explain, or undertake to put a new perspective on the prosecutor's evidence and argument, making "all [of these] significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The core command of the Sixth Amendment is and has been that throughout all critical stages of a criminal case the defendant will have the assistance of counsel capable of exercising, and who actually exercises, informed professional judgment in the client's defense.  To say that this also requires

---

[3]   In cases where the trial court has provided the defendant with an opportunity to raise the issue, *Cuyler* does require as a part of establishing a conflict claim that a defendant must show "that an actual conflict of interest adversely affected his lawyer's performance."  446 U.S. at 348.  The Court made clear, however, that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id*. at 349-50.

counsel to be *conscious* while the case against his/her client is presented to a jury is to rehearse the obvious.

Under this settled line of authority, Petitioner was denied his right to counsel. The unrebutted facts in this case at present are that Mr. Alvarez was effectively was without counsel (owing to his state of unconsciousness) during repeated portions of his capital murder trial. Since *Powell* the law has remained unaltered that the Sixth Amendment requires counsel at *every step* of a capital murder trial; Mr. Alvarez took *many* steps throughout both phases of his trial without his attorney "present in any meaningful sense of the term.

Nor did Mr. Alvarez waive this right. Nowhere in the record does the trial court elicit from Mr. Alvarez any willingness to proceed despite his attorney's inability to stay awake. As such, this Court has held that no valid waiver can be found or assumed: "The right to counsel must be waived affirmatively and such waiver must be understandingly, intelligently, and voluntarily done. A waiver cannot be established through presumed acquiescence." *U.S. v. Russell*, 205 F.3d 768, 771 (5th Cir. 2000) (citations omitted). This, too, has been settled Sixth Amendment law at least since *Johnson v. Zerbst* refused to countenance any waiver of counsel that is not

shown on the record to constitute "an intentional relinquishment or abandonment of a known right or privilege."  348 U.S. at 464.

Having established the violation of his right to counsel, the remaining issue is whether Petitioner must also establish that this violation prejudiced him.  Here too, the case law is unequivocal that in circumstances such as those presented here, where the likelihood of prejudice is so great and yet the ability to discern its impact on the trial from a cold record so improbable, prejudice must be presumed.

C.   The Presumption of Prejudice

Drawing upon this substantial Sixth Amendment legacy, the Court in 1984 issued its twin decisions, *Strickland v. Washington*, 466 U.S. 668 (1984), and *U.S. v. Cronic*, 466 U.S. 648 (1984).  Importantly, both cases involved claims of *ineffective* counsel, and not, as here, a claim that counsel was functionally *absent* during extended periods of a capital trial.  Claims of ineffective counsel, the Court held, are generally adjudicated based on an assessment both of the attorney's actual performance and the prejudicial impact of any alleged deficiency on the outcome of the trial.  The Court held that this now-familiar two-pronged test applied in both cases.  *Cronic, supra* at 666-67; *Strickland*, 466 U.S. at 687.

In *Cronic* the Court rejected a presumption-of-prejudice rule when counsel was merely unprepared and inexperienced.  Nevertheless, the Court reaffirmed the decades-old rule that prejudice will be presumed when counsel was functionally absent or disabled during critical stages of a criminal proceeding.  A presumption of prejudice, the Court explained, should attach whenever "the likelihood that counsel could have performed as an effective adversary was so remote" and "the likelihood that any lawyer ... could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."  *Id.* at 659-60.[4]  The Court in *Cronic* recognized that in cases of "constructive or actual denial of counsel" a presumption of prejudice supplants any need for the showing of specific ways in which prejudice was likely to have materialized, because "the cost of litigating ... [the issue of prejudice] in a particular case is unjustified."  *Id.* at 658-62.  *See e.g., White v. Maryland*, 373 U.S. at 60 ("we do not stop to determine whether prejudice resulted: 'Only the presence of counsel could have enabled this accused to know all

---

[4]   The Court in *Cronic* described this principle in a variety of ways throughout the opinion.  It found a presumption appropriate when "the process loses its character as a confrontation between adversaries," 466 U.S. at 656-57; or when there has been a "breakdown in the adversarial process," id. at 657 & n.20, 662; or under "circumstances that in themselves make it unlikely that respondent received the effective assistance of counsel," *id.* at 666.

the defenses available to him and to plead intelligently.'") (citations omitted).

Tracking an historic reliance upon such a rule in its Sixth Amendment jurisprudence, the Court in *Cronic* illustrated such cases with examples of the sort set forth above, like the attorney who labors under a conflict of interest (*Holloway*), or one prevented from consulting with his client during an overnight recess (*Geders*), or one attempting to serve under other "surrounding circumstances" that impeded him/her from performing as an effective adversary (*Powell*).  The Court in *Cronic* discussed and quoted from *Powell* at length, pointing out that while the defendants there had attorneys, the circumstances surrounding their participation in the case made it improbable that they could act as meaningful advocates:

> The Court [in *Powell*] did not examine the actual performance of counsel at trial, but instead concluded that under these circumstances the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair.  *Powell* was thus a case in which the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance that ineffectiveness was properly presumed without inquiry into actual performance at trial.

466 U.S. at 660-61.

The Court also cited to cases outside the Sixth Amendment right-to-counsel, again, to exemplify when and how "surrounding circumstances"

justify reversal of a criminal conviction without regard to a consideration of actual harm at trial. *See Cronic*, 466 U.S. at 658 n. 24, *citing, e.g., Murphy v. Florida*, 421 U.S. 794, 798-99 (1975) (noting prejudice to be presumed in cases involving sufficiently extensive prejudicial media influence in the community and likelihood of impact on jurors); *Sheppard v. Maxwell*, 384 U.S. 333, 352-53 (1966) (same); *Bruton v. U.S.*, 391 U.S. 123, 136-37 (1968) (presuming prejudice from admission in joint trial of co-defendant statement implicating defendant because of "impossibility of determining whether in fact jury did or did not" consider statement and "substantial threat" that harm occurred); *Jackson v. Denno*, 378 U.S. 368, 389 (1964) (automatic reversal required where there existed "substantial threat" that jury may have unfairly considered involuntary confession).

Strickland and *Cronic* provide a clear division between two broad classes of cases that can be described as: (1) cases where counsel was completely or functionally absent or disabled during a critical stage of a criminal proceeding (the *Powell/Holloway* line), requiring a presumption of prejudice; and, (2) cases where counsel was assertedly incompetent or ineffective (the *Strickland* line), requiring the defendant to prove prejudice. With respect to the first, *Cronic* and its legacy hold that prejudice is presumed when the attorney error complained of is inherently and

pervasively prejudicial, and yet its impact at trial is impossible to detect precisely because the trial record is undeveloped due to that attorney error. Under this rationale, sleeping of the sort found here fits comfortably within *Cronic*'s rule.  466 U.S. at 659.

An unconscious lawyer cannot perceive and evaluate the prosecution's case and cannot design a considered strategy in response to it – whether the strategy is to be implemented then or later, and whether it calls for minor or major modifications in the many things that the lawyer may subsequently do throughout the balance of the trial.  A criminal trial is dynamic: what is crucial is not just what happens or does not happen while the lawyer is asleep, but also the significance of what the lawyer misses for the conduct of the rest of the trial.  If one who is forewarned is forearmed, then one who is oblivious to such warnings is totally disarmed.[5]

Mr. Alvarez's case is not simply a *Strickland* case about claimed ineffective assistance.  This is a case about repeated, constructive **absence** of counsel during significant portions of a capital trial, as to which the

---

[5]  As such, Mr. Alvarez's trial was a "sacrifice of unarmed prisoners to gladiators," (*quoting Cronic* at 657).  He was pitted against an armed gladiator while represented  by a defender who periodically lost – repeatedly and for substantial period of time – the power *either* to apperceive dangers *or* employ whatever defensive weapons he might otherwise have had. "Sacrifice" is not too strong a word for the predictable outcome of such a contest.

Constitutional law has been clear at least since *Powell*.  Unconscious

counsel is absent counsel, which is clearly disabled counsel in the sense of

*Powell* and *Holloway*.  A lawyer sleeping during trial is as much absent from

the proceedings as if he/she were physically elsewhere.  And that absence

renders the trial record inscrutable both as to what defenses, objections,

arguments, etc. could have been made while counsel was asleep, and what

the attorney might have done differently while awake had he/she not missed

parts of the trial due to sleeping.  All this Court has to do is to recognize this

ineluctable reality, and the legal outcome of this case is equally ineluctable.

    D.  Circuit Precedents Support the Lower Court's Ruling

    Binding Circuit precedent requires habeas corpus relief here.  In

*Burdine v. Johnson*, 262 F.3d 336 (5th Cir. 2001), the U.S. Court of Appeals

for the Fifth Circuit, sitting *en banc*, held not only that a sleeping attorney in

a capital case violated the right to counsel, but also that prejudice in such

circumstances should be presumed.  In that case, as in the present one, jurors

provided evidence that they had witnessed the defendant's trial attorney

sleeping repeatedly throughout the trial and while the State was presenting

its case in chief.   So too here, jurors have provided evidence that Frumencio

Reyes slept repeatedly and for substantial periods of time while the State

was presenting its case in chief.  In the *Burdine* case, unlike here, the state

court had provided the defendant with a full evidentiary hearing, at which witnesses were called, including the trial prosecutors, the trial judge, and other courtroom participants.  Some of the evidence and testimony was in conflict; i.e., some jurors and courtroom participants observed the sleeping attorney, others did not.  Nevertheless, ultimately the *en banc* Fifth Circuit ultimately rendered a decision that is binding on this Court, namely, sleeping counsel is tantamount to no counsel and presumptively violates a criminal defendant's Sixth Amendment right to counsel.

In the present case, no evidentiary development was allowed in state court, despite the fact that it was sought.  Hence the evidentiary record emanating from state court is *unequivocal* that Mr. Alvarez's trial attorney slept through substantial portions of his capital murder trial.  Under *Burdine*, reversal is mandated.  At the very least, this Court cannot deny relief based on Respondent's assertion that the evidentiary basis is "inadequate", given there is no rebuttal evidence to the contrary, and without allowing for a full and thorough evidentiary record to be made in federal court.

The *Burdine* decision that sleeping counsel of the sort found here fits neatly within a settled body of Supreme Court jurisprudence is supported by other decisions of this Circuit and others treating the same or similar issues. Circuit courts have twice faced the same question presented here in non-

capital cases, and in both instances they have employed the rule followed below.  *See Javor v. U.S.,* 724 F.2d 831 (9th Cir. 1984); *Tippins v. Walker,* 77 F.3d 682, 685 (2nd Cir.1996) .  In light of this wealth of decisional authority, the results in *Javor* and *Tippins* can be readily seen for what they are: unremarkable applications of the *Powell/Holloway/Cronic* line of Supreme Court Sixth Amendment cases requiring a presumption of prejudice when counsel is disabled so significantly that it renders the proceedings fundamentally unfair and the record fundamentally incomplete. The only thing remarkable about these cases is that – like Petitioner's case, though less egregiously – they present the bizarre, extreme situation of a government contending that the Sixth Amendment is satisfied by a lawyer who repeatedly falls asleep during trial.  *Of course Javor* and *Tippins* got the answer right and rejected this oxymoronic contention, as the Court did in *Burdine*, and as should this Court.  The point of *Javor* and *Tippins* is not that they laid down some new and discrete "test" for sleeping-lawyer cases of the kind found here.  The Sixth Amendment analysis *reflected in Tippins* and *Javor* was "compelled by the Supreme Court's clearly established Sixth Amendment jurisprudence."  66 F. Supp.2d at 864.

The Fifth Circuit's treatment of *Cronic's* presumed prejudice doctrine demonstrates the solidity of Petitioner's position here.  *See e.g., U.S. v.*

*Russell*, 205 F.3d 768 (5th Cir. 2000); *Jackson v. Johnson*, 150 F.3d 520, 525 (5th Cir. 1998) *cert. denied*, 526 U.S. 1041 (1999) ("We have found a constructive denial of counsel in cases involving the absence of counsel from the courtroom... .").  Surely there is no analytical distinction between physical absence from the courtroom and absence due to unconsciousness; *see also Goodwin v. Johnson*, 132 F.3d 162, 176 n.10 (5th Cir. 1997) ("*Cronic*-type prejudice results in circumstances in which, *although counsel is present*, counsel's ineffectiveness is so egregious that the defendant is in effect denied any meaningful assistance of counsel at all.") (emphasis added).

In *Childress v. Johnson*, 103 F.3d 1221, 1229 (5th Cir.1997), the Court was faced with a habeas petitioner's attack on two earlier guilty pleas which had been used for enhancement purposes.  The claim against the priors focused on the fact that while counsel had been appointed, his role was so minimal as to effectively deprive the petitioner of his right to counsel.  103 F.3d at 1223 (counsel's "sole duty was to execute a waiver of appellant's right to jury trial" and he otherwise did not assist in investigating the case or advising the defendant).  In holding that petitioner's Sixth Amendment right to counsel had been violated, this Court pointed to Sixth Amendment "structural errors [which] so undermine confidence in the fairness and

reliability of the proceedings that prejudice is presumed." *Id.* at 1229.  Here the Court ***favorably*** cites, by way of example, cases from other Circuits which "have found a constructive denial of Sixth Amendment rights ***when counsel slept for extended periods at trial***, *Tippins*,; . . . [or when counsel] ***was absent*** during cross-examination of an important government witness by counsel for a co-defendant, *Green v. Arn*, 809 F.2d 1257 (6th Cir.) [history omitted];  and [when counsel] ***was absent*** when the verdict was returned, *Siverson v. O'Leary*, 764 F.2d 1208, 1217 (7th Cir.1985)." *Childress*, 103 F.3d at 1229 n.13 (emphasis added).  Although noting that counsel in Childress' case was at least "more sentient than a potted plant," the Court nevertheless held that prejudice should be presumed because counsel "was not the advocate for the defense whose assistance is contemplated by the Sixth Amendment." 103 F.3d at 1231.  Likewise, unconscious counsel completely unaware of the proceedings is certainly no more sentient than a "potted plant."[6]

## IV.   Mr. Alvarez's Amended Petition is Fully Exhausted

### A.  Claims Are Fully Exhausted

---

[6]  Indeed, courts have recognized in the Title VII context that employees have been validly terminated for sleeping on the job.  *See e.g., Bunch v. Bullard*, 795 F.2d 384, 396 (5th Cir. 1986).

Respondent's position is that several of Petitioner's claims presented
in the Amended Petition for Writ of Habeas Corpus are unexhausted and that
several claims are procedurally defaulted.  Petitioner addresses these matters
here, but also requests an opportunity to fully brief and litigate issues of
exhaustion and procedural default, after full factual development, including
discovery, investigative funds, and an evidentiary hearing, have been
granted.

Respondent alleges that Petitioner failed to exhaust the following
claims:
Petitioner never presented to the state courts claims 1 (ineffective assistance
of counsel), aspects of claims 2 and 3 (the VCCR violation caused Alvarez's
trial attorneys to ineffectively prosecute his case and resulted in him to
receiving ineffective assistance of appellate counsel), 8 (extraneous
offenses), 11 (Trevino statements), 13 (lesser-included charge), and 17
(photos).   Doc. 22, Respondent's Answer, at 31.

The State carries the burden of challenging that any particular claim
has not been exhausted. *See, e.g., Johnson v. Zerbst*, 304 U.S. 458, 464
(1938).

As a general matter, in order to satisfy the exhaustion requirements of
28 U.S.C. §2254, all of the grounds raised in a federal application for writ of

habeas corpus must have been "fairly presented" to the state courts prior to being presented to the federal courts. *Dowthitt v. Johnson*, 230 F3d 733, 745-46 (5th Cir. 2000);  *see also Nobles v. Johnson*, 127 F.3d 409, 420 (5th Circuit 1997).  To be "fairly presented," a petitioner must have first provided the state's highest court with a fair opportunity to apply (1) the controlling federal constitutional principles to (2) the same factual allegations. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir. 1990).

Petitioner has fairly presented his claims in state court.  The legal claims advanced in Mr. Alvarez' Amended Petition were based on legal theories that he advanced in state court.   *Nobles v. Johnson*, 127 F.3d at 420 (*citing Vela v. Estelle*, 708 F.2d 954, 958 n. 5 (5th Cir. 1983)).

The legal theories in the seven claims that Respondent asserts are unexhausted were advanced in state court.  The state courts had an opportunity to apply the controlling federal constitutional principles.  The legal theories in these claims include ineffective assistance of counsel, violation of the Vienna Convention, trial court violations of constitution rights in admitting extraneous offenses, the statements of a co-defendant,

prejudicial photos, and trial court violations of constitutional rights in jury charges.

Mr. Alvarez presented the legal theory of ineffective assistance of counsel in his state habeas petition filed on September 10, 2001 and in the reply brief filed on February 7, 2008.  The initial petition's claim six was premised on the theory that Mr. Alvarez was denied effective assistance of counsel at trial.  These pleadings gave the court an opportunity to apply the controlling federal constitutional principles related to the denial of Mr. Alvarez's rights due to ineffective assistance of counsel.  The cases of *Strickland v. Washington*, 466 U.S. 668 (1984) and *Wiggins v. Smith*, 539 U.S. 510 (2003) set forth these principles and were plead in state court. Petitioner's proposed Findings of Facts and Conclusions of Law asserted that trial counsel was ineffective as the first proposed conclusion of law. These pleadings gave the state court ample opportunity and notice that Mr. Alvarez was alleging that his trial court attorneys rendered ineffective assistance of counsel.  See, e.g., *Ford v. Georgia*, 498 U.S. 4 11, 4 18-4 19 (1991) (petitioner adequately "presented the trial court with a cognizable Batson [v. Kentucky, 476 U.S. 79 (1986)] claim although he certainly failed to do it with . . . clarity").

28

The trial court in its proposed Findings of Facts and Conclusions of Law ruled on Petitioner's stand-alone ineffective assistance of counsel claim.  The court explicitly noted in finding of fact 47 that Petitioner was "alleging that trial counsel was ineffective" and generally addresses them in Findings ¶¶47-73.  Trial Court's Recommended Findings of Facts and Conclusions of Law at ¶¶47-73.  The Trial Court likewise addressed IAC in the Conclusions of Law ¶¶ 14-19.  Although the CCA refused to adopt the trial court's findings of facts ¶¶47-73 and conclusions of law ¶¶ 14-19 related to the IAC claims, this failure to adopt recommended finding and conclusions constitutes a denial on the merits without an explanation of the rational.

In footnote 21 of Respondent's Answer, the State speculates that because the CCA failed to adopt the recommendations of the trial court, it reflected the CCA's "belief that the ineffective assistance of counsel claim was not properly before the state habeas court" as the CCA stated that "the rejected findings and conclusions related to arguments and not new claims" (Document 22, Respondent's Answer, at 40 n.21).  The State incorrectly infers that this is a procedural bar.  *Harris v. Reed* makes clear, however, that it is impermissible for the state to presume procedural bar.  *Harris v. Reed,* 489 U.S. 255 (1989).  *Harris v. Reed* unambiguously declares that "a

procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." 489 U.S. at 263 (*citing Caldwell*, 472 U.S. at 327). The CCA did not 'clearly and expressly' assert a state procedural bar for the IAC claim, so it was denied on the merits.

The recent U.S. Supreme Court case *Harrington v. Richer*, 562 U. S. __ (2011) identifies the legal rule that controls in this scenario where the last state appellate court denies a claim with a non-articulated order and without an explanation of the rational. *Harrington* dictates that the proper stand in this scenario with an IAC claim is not a *de novo* review but a rather a review of whether the state courts' application of the *Strickland* standard was unreasonable. 562 U. S. __ (2011). Here, this Court must presume that the CCA applied the correct legal standard under *Strickland* and ask not whether trial counsels' actions were reasonable, but whether there is any reasonable argument that counsel satisfied the *Strickland* standard.

Petitioner maintains that even under this more deferential standard of review, there is no reasonable argument that trial counsel satisfied the *Strickland* standard and it was unreasonable for the CCA to rule otherwise.

Respondent asserts that the aspects of Mr. Alvarez' Vienna Convention claims (claims 2 and 3) were unexhausted because they were not properly raised.  Respondent contends that because these issues were addressed in the reply brief, they were unexhausted and procedurally defaulted.  However, the CCA declined to adopt the trial court's recommended findings related to this issue because they "related to arguments rather than new claims." *Ex parte Alvarez*, No. 62, 425-01 slip op. at 2.  This expressly contradicts Respondent's position on the issue.

The CCA had the opportunity to find that the arguments and assertions made in the reply brief were new claims and constituted a successive petition under Section 5 of the Texas Code of Criminal Procedure Art. 11.071(5)(b)-(c), and it failed to do so.  If the reply brief had presented new claims or presented claims in an improper procedure, the CCA would have conducted Section 5 analysis pursuant to art. 11.07(5) and noted that it was a subsequent petition and an abuse of the writ.  Respondent cannot consider the CCA's failure to do this as proof that Mr. Alvarez's claims addressed in the reply brief are unexhausted or procedurally defaulted; in fact, the CCA's treatment of the reply brief shows just the opposite.  The CCA had the opportunity to assess whether the reply brief presented new claims that could have been procedurally defaulted, and declined to do so.

Everything presented in the reply brief is therefore exhausted and not procedurally defaulted.

The remaining four claims that Respondent asserts are not exhausted were presented to the state court in the direct appeal, but Respondent contends that they were presented based on state law.  However, the direct appeal presentation of claim 8 (extraneous offenses), claim 11 (Trevino statements), and claim 17 (photos) all included the assertion that the violations denied Mr. Alvarez a fair hearing and due process (except claim 17, which only included the due process violation assertion).  These assertions relate to the Fifth and Fourteenth Amendments to the U.S. Constitution.  Appellate counsel for Mr. Alvarez indicates this by citing *In re Murchison*, 349 U.S. 133 (1955) when addressing due process throughout the brief, including, for example, on the same page that presents Error 29 (regarding admission of the extraneous bad acts testimony) (Direct Appeal, p. 68).  The allegation of due process violations is sufficient to allege a federal constitutional violation for these claims.

Finally, Respondent alleges that claim 13 (lesser included offense) is unexhausted because Mr. Alvarez's direct appeal counsel mistakenly presented the claim based on the wrong charge that Mr. Alvarez was accused of killing more than one person during the "same criminal transaction,"

rather than the accurate charge of "different criminal transaction."  The claim in the direct appeal presents the analogous argument, based on the same legal theory, but includes what is effectively a typo error by direct appeal counsel.  The core legal theory presented in the direct appeal is that "[b]ecause appellant was denied a charge on the lesser included offense of murder, Appellant did not receive a fair trial and therefore due process."  Direct Appeal, pp. 52-53.  This is the same legal theory Mr. Alvarez presents in his Amended Petition.  To the extent that the Court disagrees, this error by direct appeal counsel merely high lights the cause and prejudice exception discussed below, highlighting how the careless incompetence of the direct appeals counsel who was unable to even correctly understand the charges in the indictment enabled the Texas CCA to reject an otherwise meritorious claim.

The evidentiary support presented to the federal court was presented to the state court.  Every exhibit attached to the Amended Petition was presented to the state court.  There is not a single document presented in federal court that was not presented in state court.   Exhibits 1-53 of the Amended Petition were presented to the state court in the supplemental reply briefing to the state habeas filed on February 7, 2008.  Exhibits 54-66 were presented to the state court in the subsequent habeas petition filed on April

23, 2010.  Exhibits 67-77 were filed with the Supplemental Brief Relating to the Vienna Convention Claim filed on March 25, 2005.   Thus, the second component of fairly presented, that the same factual allegations and evidentiary support be presented to the state court, is satisfied.

As exhaustion is the basis for a bar to review based on procedural default, failure to exhaust claims can be excused if Mr. Alvarez can demonstrate (1) cause for the default and prejudice as a result of the alleged violation of federal law, or (2) a resulting "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 772, 750-51 (1991), *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

To establish "cause," a habeas petitioner must ordinarily identify circumstances external to the defense that prevented him from properly asserting the claim in state court.  *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (*citing Murray v. Carrier*, 477 U.S. 478, 492 (1986)).  Ineffective assistance of counsel can constitute "cause" if deficiencies or omissions in counsel's performance both resulted in the default and amounted to constitutionally ineffective assistance of counsel at trial or on direct appeal. *Coleman*, 501 U.S. at 752.

To the extent that the Court disagrees that all of the claims were fairly presented in the state court, there is good cause for the failure to fully exhaust.  As a technical matter, Mr. Alvarez would be barred from raising the claims that Respondent asserts are not exhausted by Texas Criminal Code of Procedure art. 11.071(5), so there are no state remedies "available" for these claims and they are therefore exhausted.  ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  There is good cause and prejudice excusing the default of these claims.

The good cause excusing the default of these claims is that Mr. Alvarez was deprived of effective assistance of counsel during his direct appeal and during the beginning of his state habeas proceedings.

As set forth more fully in Mr. Alvarez's motion to withdraw the A writ, filed in state court on May 15, 2007, incorporated by reference herein, (attached hereto for convenience as Exhibit A), Mr. Alvarez did not have competent counsel assigned to represent him from the onset of his state habeas proceedings.  As alleged in the motion, Mr. Leslie Ribnik was suffering from Parkinson's Disease and was not competent under art. 11.071 of the Texas Code of Criminal Procedure to be appointed as Mr. Alvarez

attorney when he was appointed on October 14, 1999.  Parkinson's is a

neurological disease that causes mental deterioration and dementia.  Mr.

Ribnik's Parkinson's Disease deprived Mr. Alvarez was an external factor

that left Mr. Alvarez without the competent counsel to which he was

statutorily entitled under art. 11.071, and deprived him of constitutionally

effective counsel.

Mr. Ribnik failed to fulfill the basic duties of a state habeas counsel.

In the 23 months spent preparing the original writ, Mr. Ribnik did not

conduct any fact investigation in the case, let alone the external investigation

and development of new facts that are required to identify cognizable post-

conviction issues.  In explaining what he did to prepare the writ he filed for

Mr. Alvarez, Mr. Ribnik admits:

> "Prior to filing the writ on September 10, 2001, I did not have
> the assistance of an investigator or mitigation specialist though
> I did not request funding for such.  However, I had discussed
> the possibility of investigating grounds for mitigation with a
> mitigation specialist.  Except for review of trial testimony and
> evidence, and the substance of my conversation with the
> specialist, but without further actual investigation, I did not
> pursue a mitigation investigation."   ¶12

> "I did not attempt to locate or interview any of Mr. Alvarez's
> extended family or conduct any other investigation of his life in
> Mexico." ¶13

> "I did not interview any of the jurors from Mr. Alvarez's case."
> ¶ 14

"Prior to filing the writ on September 10, 2001, I did not hire any expert witnesses nor did I consult with any experts or have anyone evaluate Mr. Alvarez."  ¶15

May 14, 2007 Affidavit of Leslie M. Ribnik, attached as Exhibit C to the Motion to Withdraw Habeas Writ [hereinafter "Ribnik Affidavit"].

A review of Mr. Ribnik's affidavit (attached to Exhibit A) indicates that he duplicated the work of Mr. Alvarez's trial lawyers and direct appeal attorney by preparing to the writ based entirely on the record.  He reviewed the transcripts from trial, looked through the state's file, and requested the record from one (of three) of Mr. Alvarez's trial counsel.  Ribnik Affidavit at ¶¶ 5, 6, and 10.  He did not review or develop any information other than that which the prior attorneys had used.  Even his record-based preparations were plagued by delay and missteps, which may have been caused in part by the cognitive impairments characteristic of early Parkinson's.

Had Mr. Alvarez been appointed competent counsel not suffering from a neurological disease, he would not have been prejudiced by the failure to fully investigate, prepare and present the meritorious claims presented in the Amended Petition.

As to claims 8 (extraneous offenses), 11 (Trevino statements), 13 (lesser-included charge), and 17 (photos), any failure to fully exhaust these claims is the result of the constitutionally inadequate representation by Skip

Cornelius during his representation of Mr. Alvarez in his direct appeal. Mr. Alvarez addresses the deficiencies of Mr. Cornelius' representation more fully in claim 2, pp. 148-149 of the Amended Petition, incorporated herein by reference. The merit of the claims presented (as discussed more fully in each respective claim of the Amended Petition) illustrate the prejudice Mr. Alvarez suffered through the deprivation of his right to effective counsel on appeal.

A petitioner may come within the "fundamental miscarriage of justice" exception, (1) if, as a consequence of the identified constitutional error in the guilt-innocence phase and in light of new evidence, "it is more likely than not that no reasonable juror would have convicted him," *Schlup v. Delo*, 513 U.S. 298, 329 (1995), or (2) if he establishes "by clear and convincing evidence that ,but for the constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty" under state law. Sawyer v. Whitley, 505 U.S. 333, 350 (1992).) The cumulative effect of the claims presented in Mr. Alvarez' Amended Petition bring Mr. Alvarez within the fundamental miscarriage of justice exception as well.

    B.  Stay/ Abeyance Required Upon Any Finding of Non-Exhaustion or Procedural Default

Should this Court be inclined to conclude that any of the aforementioned claims or any other claims in the amended petition are, as Respondent suggests, either unexhausted or procedurally defaulted, Petitioner hereby respectfully requests that, before doing so, this Court stay the proceedings in this case and hold it in abeyance to provide Petitioner the opportunity to return to the state courts of Texas to pursue possible remedies under recent CCA authority and/or under pending cases in the U.S. Supreme Court involving issues of the effectiveness of state habeas counsel and the ramifications of such on the procedural status of otherwise potentially defaulted claims in federal habeas corpus review.

The CCA recently issued an opinion in *Ex Parte Medina* finding that the initial application for writ of habeas corpus that was filed was so deficient that the Court did not consider it, "in fact, 'an application for writ of habeas corpus' under Article 11.071 of the Texas Code of Criminal Procedure." 2011 Tex. Crim. App. LEXIS 1371 at *1 (Tex. Crim. App. Oct. 12, 2011). Rather than simply denying relief based on the deficient filing, as the Court had done repeatedly in the past in the face of similarly deficient pleadings, the CCA exercised its discretion under Article 11.071 § 4A(b)(3)[7]

---

[7] "At the conclusion of the counsel's presentation to the court of criminal appeals [showing cause why an application was untimely or not filed], the court may appoint new counsel to represent the applicant and establish a

to appoint new counsel who was then given 180 days to prepare and file a state habeas application. *Id*. at *28.

As set out more fully below, Mr. Alvarez's case tracks closely with *Medina*, sufficiently so that he should be permitted to present his case to the CCA pursuant to that recent holding. In doing so, not only will the appropriate state court first pass on the clearly relevant question of whether a *Medina*-type remedy should be afforded Mr. Alvarez, but in addition a favorable outcome there could well avert the need for federal review.

    1.  The CCA's holding in *Medina*

The application filed by appointed state habeas counsel in *Medina* alleged ten reasons why the "Applicant's restraint is illegal," all related to the ineffectiveness of trial and appellate counsel. *Id*. at *2. Like the petition filed for Mr. Alvarez by attorney Ribnik, it was a cursory, four-page application that included no memorandum of law and was not accompanied by any exhibits, affidavits, or other evidence in support. *Id*. at *4.

The state in *Medina* filed a motion to dismiss the deficient application. *Id*. at *3. The trial court found that some of the claims were sufficiently pled such that relief could be granted if the factual allegations were proven, but nonetheless dismissed the application to allow the CCA to "resolve the

new filing date for the application, which may not be more than 270 days after the date the court appoints new counsel."

problem" of how to treat the overall defective pleading.  *Id*. at *3-4, n.4.
The CCA ordered briefing and held oral arguments, at which appointed
counsel explained that he had conducted extra record investigations, but did
not plead the facts that he had uncovered to support his claims, "because he
did not want the State to know what his evidence was," and because he
believed withholding the evidence may increase the likelihood of securing
an evidentiary hearing.  *Id*. at *5-6.  Both the state and the trial court
submitted that the application was not proper under Article 11.071 because it
did not contain sufficient factual allegations to support the asserted claims
for relief.  *Id*. at *9.

   After briefing and oral arguments were completed, including briefing
on the potential impact that the CCA's decision would have on "past, present
and future 11.071 writ applications," *Id*. at *8, n.8, the CCA issued a
decision holding that counsel's deficient performance had deprived Mr.
Medina of his,

> [O]ne full and fair opportunity to present his constitutional or
> jurisdictional claims in accordance with the procedures of
> Article 11.071.  Not full because he is entitled to one bite at the
> apple, i.e., one application, and the document filed was not a
> proper writ application.   Not fair because applicant's
> opportunity, through no fault of his own, was intentionally
> subverted by his habeas counsel.

*Id*. at *25-26 (internal citations omitted).  The Court appointed new counsel and gave Mr. Medina 180 days to file a first state habeas application.

Because the CCA split so divisively in *Medina* – seven of the nine Judges dissented or joined in a separate concurring opinion – it is difficult to predict how broadly the CCA will interpret *Medina* in the future.[8]  However, a few things are clear:  first, the holding in *Ex Parte Medina* constitutes a

---

[8] The majority opinion apparently attempted to limit the granting of relief under Article 11.071 § 4A(b)(3) to "unique and extraordinary circumstances, involving not habeas counsel's lack of competence but his misplaced desire to challenge the established law at the peril of his client."  *Id*. at *27.  **But six Judges (which is more than the number of Judges who joined the majority opinion) either authored or joined in separate opinions indicating that the reach of the opinion was, in fact, much broader.** Judge Price's concurring opinion indicates that it would be "intolerable" for a state habeas petitioner to ever, "be made to suffer for the miscalculation of habeas counsel by forfeiting entirely his state habeas forum – and perhaps, ultimately, his life."  *Id*. at *30 (Price, J., joined by Johnson and Cochran, JJ., concurring).  He indicated that the CCA should exercise its discretion to avoid that outcome in certain, as yet undefined, circumstances.  *Id*. at *31-32.  Judge Keasler's dissent opines that the majority opinion will apply to a much greater number of cases, including applications like Mr. Alvarez's that present only non-cognizable claims, and that, "[n]ow that it has tied itself in knots, the majority should stand behind its drastic reversal of course and review prior deficiently pled applications (assuming that those applicants have not already been executed) to determine whether any of them should now be characterized as a non-application under this new precedent."  *Id*. at *39 (Keasler, J., joined by Hervey, J., dissenting).  Judge Keller's dissent explicitly adopts the reasoning in Judge Keasler's dissent and adds that the majority opinion will extend to, and "wreak havoc with non-capital habeas applications."  *Id*. at *39 (Keller, P.J., joined by Hervey, J., dissenting).  It is also worth noting that Judge Meyers dissented without authoring or joining in a written opinion, leaving his conclusions about the breadth of this holding unknown.

significant development on the application and discretionary use of Article

11.071 § 4A(b)(3) in Texas post conviction cases; second, Mr. Alvarez's

initial state habeas application was **at least** equally as deficient as the

application filed in *Medina*; and third, the resulting prejudice to Mr. Alvarez

– the arguable procedural default of his viable federal constitutional claims

in state and federal court – is the exact prejudice that the CCA

acknowledged and prevented by its ruling in *Medina*.

2.  The application filed on Mr. Alvarez's behalf was at least as
    deficient as the one filed in *Medina*

In the present case the CCA appointed attorney Leslie Ribnik to

represent Mr. Alvarez in his state habeas corpus proceedings.  The pleading

finally filed on Mr. Alvarez's behalf was cursory and showed absolutely no

indication counsel had conducted any investigation or work outside the four

corners of the record in this case.  *See* Exhibit B attached (Application for

Writ of Habeas Corpus Seeking Post-Conviction Relief from a Death

Sentence, *Ex Parte Juan Carlos Alvarez* (Cause No. 787007) (September 10,

2001).

Like the application in *Medina*, Mr. Alvarez's application was filed on

the last possible day, leaving no time for amendment.  Also like the

application in *Medina*, the document that Ribnik filed did not contain a

memorandum of law, had no affidavits or exhibits accompanying it, and alleged no disputed facts.

       3. The CCA's holding in *Ex Parte Medina* is a clear development in Texas state habeas corpus practice

The law in Texas leading up to *Medina* seemed to be that a capital habeas corpus applicant could be granted a new opportunity to file an initial state habeas application when his first application has "not claimed, much less shown himself entitled to, any relief from his underlying conviction and sentence." *Ex Parte Kerr*, 64 S.W. 3d 414, 416 (Tex. Crim. App. 2002) (emphasis added); *see Ex Parte Medina*, *supra*, 2011 Tex. Crim. App. LEXIS 1371 at *24; *Ex Parte Santana*, 227 S.W.3d 700, 703 (Tex. Crim. App. 2007) ("[a] challenge to the conviction means . . . claims regarding the validity of the prosecution or the judgment of guilt") (internal quotations removed).

"*Ex Parte Kerr's* holding was extremely limited . . . ." *Ex Parte Medina*, *supra*, 2011 Tex. Crim. App. LEXIS 1371 at * 33 (Keasler, J., dissenting). It contemplated the substitution of a subsequent state habeas application for a first application only when the claims alleged in the first application, "even if meritorious, would not result in immediate relief from [applicant's] capital murder conviction or death sentence." *Kerr*, *supra*, 64 S.W. 3d at 419. Because none of the claims in *Kerr* challenged the legality

of the applicant's conviction or death sentence, the CCA found that the document filed was not a proper application and substituted a subsequently filed application in its place, per its discretionary authority under Article 11.071 § 4A(b)(3).

In contrast to *Kerr*, Mr. Medina's application listed ten allegations of ineffective assistance of counsel which, even according to the CCA, were "perfectly appropriate" legal claims challenging the legality of his conviction and death sentence. *Ex Parte Medina*, *supra*, 2011 Tex. Crim. App. LEXIS 1371 at *20. He therefore would not have prevailed under a strict reading of the *Kerr* decision. Whereas the application in *Kerr* failed to *claim* entitlement to habeas relief, the deficiency of Mr. Medina's application was that it failed to adequately *support* his claims of entitlement to relief. *Id*. (Mr. Medina's IAC claim "is a perfectly appropriate legal claim, but habeas counsel fails to provide any facts that would support that claim").

The fact that in *Medina* the CCA exercised its discretion to appoint new counsel and grant Mr. Medina 180 days to file a first state habeas application, even though his application technically satisfied the requirements laid out by *Kerr* and its progeny, indicates – at the very least –

that the class of applicants who may now get relief under Article 11.071 §

4A(b)(3) has expanded.

4. Mr. Alvarez was prejudiced by his state habeas counsel's deficient performance in the exact way that the CCA was trying to avoid for the applicant in *Medina*; he may reasonably expect to be a member of the new class of applicants entitled to relief under Article 11.071 § 4A(b)(3)

Mr. Alvarez submits that it is not only possible, but indeed likely, that

under the recent *Medina* holding, the CCA will conclude that the expanded

class of Texas capital habeas corpus applicants now entitled to relief under

Article 11.071 § 4A(b)(3) would include Mr. Alvarez, who, through no fault

of his own, but because of the unconscionably deficient performance of

appointed state habeas counsel, may well be procedurally defaulted from

raising any viable constitutional challenges to his conviction and death

sentence.  This conclusion is supported by each of the opinions in *Medina*.

*See id.* at *4-5 (majority opinion) ("[b]ecause counsel waited until the last

possible day to file this document, a dismissal, even though not on the

merits, would foreclose the opportunity to file a new pleading, bringing

those same claims.  Similarly, a denial on the merits of the conclusory

allegations would foreclose any opportunity to raise those same claims

again. By all appearances, counsel has thrown his client under the bus."); *id.*

at *29 (Price, J., concurring, joined by Johnson and Cochran, JJ.) (denying

the writ application for failing to adequately allege facts, "effectively leaves the applicant with nothing more to raise in federal habeas corpus proceedings than whatever federal constitutional issues were raised on direct appeal, supported only by whatever facts are memorialized in the appellate record – in other words, precious little.  The applicant would pay dearly for his habeas counsel's gambit.  I find it intolerable that the applicant should be made to suffer for the miscalculation of habeas counsel by forfeiting entirely his state habeas forum – and perhaps, ultimately, his life"); *id.* at \*39 (Keasler, J., joined by Hervey, J., dissenting) ("[n]ow that it has tied itself in knots, the majority should stand behind its drastic reversal of course and review prior deficiently pled applications (assuming that those applicants have not already been executed) to determine whether any of them should now be characterized as a non-application under this new precedent"); *see id.* at \*39 (Keller, P.J., joined by Hervey, J., dissenting) (adopting Judge Keasler's dissenting opinion).

Mr. Alvarez respectfully suggests that because the CCA may well conclude that his court-appointed state habeas counsel was at least as inadequate as Mr. Medina's counsel, that his application was at least as deficient as Mr. Medina's application, and that the resulting procedural default of his habeas claims has been at least as prejudicial as that which the

CCA, in its discretion, anticipated and avoided for Mr. Medina, a likelihood

exists that success in state court will obviate the need for further federal

review.  For this reason, should this Court be inclined to adopt the position

taken by Respondent that certain of Petitioner's claims are either

unexhausted or procedurally defaulted or both, he hereby respectfully

requests that the Court stay the proceedings in this case and hold it in

abeyance to permit him to return to the state courts of Texas to vindicate his

rights to one full and fair bite at the apple under *Medina*.

 5.  Stay of Proceedings To Await Decisions In *Maples* and *Martinez*

 Similarly, Petitioner respectfully asks the Court to stay all appellate

proceedings in this case until the United States Supreme Court has issued its

rulings in *Maples v. Thomas*, 131 S.Ct. 1718 (2011) (order granting

*certiorari*), and *Martinez v. Ryan*, 131 S.Ct. 2960 (2011) (order granting

*certiorari*).  As will be shown more fully below, the Supreme Court's

opinion in either of those cases will shed considerable light on the

procedural issues raised by Respondent in the Answer, and may well obviate

the need for any further use of this Court's resources, so the request is being

made for the sake of judicial economy.  Furthermore, the Supreme Court has

already heard oral arguments on both petitions, making it likely that a stay

would be of limited duration.

In *Maples v. Thomas*, the Supreme Court granted *certiorari* to decide:

> Whether the Eleventh Circuit properly held – in conflict with the decisions of this Court and other courts – that there was no "cause" to excuse any procedural default where the petitioner was blameless for the default, the State's own conduct contributed to the default, and petitioner's attorneys of record were no longer functioning as his agents at the time of any default.

*See Petition for Writ of Certiorari, Maples v. Thomas* (No. 10-63) (Jul. 9, 2010)), attached hereto as Exhibit C.  The Court heard oral arguments on October 4, 2011.  The case raises the issue whether the rule announced in *Coleman v. Thompson*, 501 U.S. 722 (1991), that habeas corpus petitioners bear the risk of attorney error so long as the attorney is not constitutionally ineffective, governs "where, as here, an attorney no longer functions as an agent at the time of the alleged default.  As other courts have recognized, in such circumstances, a client is not responsible for an attorney's malfeasance."

As noted in the *Maples* petition, the Supreme Court has held that principles of agency law apply to the state habeas attorney-client relationship, such that "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman v. Thompson*, *supra*, 501 U.S. at 753. The petitioner in *Maples* argued, however, that such agency principles do

not apply when the agency relationship ended prior to the running of the time in which the petitioner may act, and in situations where the attorney has "committed a serious breach of loyalty."

Mr. Alvarez similarly urges this Court not to fault him for the failure of his state habeas attorney because he, like the attorneys in *Maples*, essentially abandoned him in state court.  Respondent asserts that, owing to the abysmal failures of appointed state habeas counsel, several of Mr. Alvarez's claims as unexhausted and/or procedurally barred, including his claims of ineffective assistance of counsel, *Brady*, and parts of the VCCR claim.  On each of these issues there are substantial questions regarding whether state habeas counsel "committed a serious breach of loyalty" such that the agency relationship ceased to exist, thereby making the Court's treatment of the same issues in *Maples* of direct relevance to this case.

A Supreme Court decision in favor of the petitioner in *Maples* will arguably invalidate the persuasive force and effect, if any, of Respondent's suggestions of lack of exhaustion and/or procedural default, since there is little doubt that Mr. Alvarez's state habeas counsel abandoned him. Attorney Ribnik's failure to perform any investigation or present any evidence substantiating Mr. Alvarez's meritorious *Brady*, VCCR and ineffectiveness claims, nor indeed to investigate or present evidence of any

non-record claims, "violated fundamental professional standards of care as well as principles of agency."

Any suggestion that claims presented in the amended petition are either defaulted and/or unexhausted are a direct result of Ribnik's malfeasance, indicating that equitable relief from procedural default would be appropriate under the reasoning advanced by the petitioner in *Maples*. If the Supreme Court adopts the arguments made by the petitioner in *Maples*, or some variation thereof, Mr. Alvarez should be allowed to argue that Ribnik's malfeasance should not be attributed to him, and that his claims of ineffective assistance of counsel, *Brady,* and the VCCR violation, among others, should be heard on the merits after full evidentiary development. Such a result would obviate the need for Mr. Alvarez to pursue some of the arguments that he will otherwise be pursuing in this case, and may, if he returns to state court and is successful, obviate the need for Mr. Alvarez to continue any litigation in this Court. Mr. Alvarez accordingly respectfully requests a stay of the appellate proceedings here in order to avoid needlessly consuming this Court's time and resources on procedural arguments that the Supreme Court will itself soon decide in *Maples*.

Mr. Alvarez also respectfully requests a stay until the Supreme Court issues its opinion in *Martinez v. Ryan*. That petition raises the question

whether a state habeas petitioner is entitled to the effective assistance of counsel to present federal constitutional claims when the state post conviction proceedings present the petitioner's first opportunity to raise those claims.  *See Petition for Writ of Certiorari*, *Martinez v. Ryan* (No. 10-1001) (Feb. 3, 2011)), attached hereto as Exhibit D.  The petitioner in *Martinez* also argues that ineffective assistance of post conviction counsel during those proceedings constitutes "cause" to excuse a procedural default resulting from the ineffective assistance rendered.  A Supreme Court decision in the petitioner's favor will directly impact the procedural posture of Mr. Alvarez's ineffective assistance of counsel and VCCR claims, both of which the district court found were procedurally defaulted.  As with an opinion in favor of the petitioner in *Maples*, Mr. Alvarez would accordingly seek to return to state court to argue that he received ineffective assistance of state habeas counsel, and to present his claims anew for full merits review.

There is little doubt that Leslie Ribnik rendered ineffective assistance to Mr. Alvarez.  Not only did he fail to conduct any extra-record investigation, he never even met Mr. Alvarez's prior attorneys, or anyone else who may have reasonably been expected to possess relevant information about Mr. Alvarez.  The resulting filing harmed Mr. Alvarez not only because of the unlikelihood of Mr. Alvarez ever succeeding on the

claims contained in it, but also because Mr. Alvarez may well be procedurally defaulted from raising any viable constitutional challenges to his conviction and death sentence in subsequent state and federal proceedings.

In short, there is little doubt that if the Supreme Court recognizes a right to the effective assistance of state habeas counsel to present claims that could not have been raised in trial or direct appeal proceedings, Mr. Alvarez will have a compelling claim for relief from procedural default in federal court, and possibly a new claim for relief in state court. Should he succeed on either of those claims, he will avoid using this Court's resources any further.

Finally, Mr. Alvarez respectfully submits that the interests of judicial economy favor staying the current proceedings until the Supreme Court issues its opinions in *Martinez* and *Maples* regardless of this Court's assessment of the likely outcomes in those cases. Even denials of relief in those cases will undoubtedly clarify a state habeas petitioner's right to the effective assistance of counsel and the limits, if any, to the attorney-client agency relationship. Because the Supreme Court will at least be shedding new light on these issues that are central to many of Mr. Alvarez's procedural arguments, it will save this Court and the parties considerable

time and resources to postpone the briefing of, as well as the final

disposition on, these issues until the Supreme Court has issued its rulings.

## V.    Mr. Alvarez' Claims Are Not Procedurally Defaulted

In addition to the claims that Respondent asserts are not exhausted

(and thereby procedurally defaulted for failure to exhaust), Respondent

asserts that following additional claims are procedurally defaulted: claims 4

(Brady), 5 (Napue16),6 (prosecutorial misconduct claim concerning Kim),

and 7 (prosecutorial misconduct claim concerning HPD store room).

Respondent asserts that these claims were presented the state court in a

procedurally incorrect manner and therefore are procedurally defaulted.

(Doc. 22, Respondent's Answer, at 32).  Additionally, Respondent asserts

that aspects of claims 2 and 3 based on the Vienna Convention are

procedurally defaulted through the contemporaneous objection rule. (Doc.

22, Respondent's Answer, at 92).

None of the claims in the Amended Petition are procedurally barred

because of any failure on the part of Mr. Alvarez to timely or appropriately

assert such claims before the state courts of Texas.  The fact that the state

court concluded that the federal claimant failed to abide by a state

procedural rule does not necessarily prevent a federal court from reaching

the merits of the claim. *Harris v. Reed*, 489 U.S. 255, 261 (1989).

Procedural default is a bar to federal review only if petitioner actually violated a state procedural rule, and the state procedural rule provides an "adequate" and "independent" state ground for denying petitioner's claim, and the highest state court to rule on the claim unambiguously relied on the procedural rule to deny relief, and petitioner cannot excuse the default by demonstrating "cause and prejudice" or a "fundamental miscarriage of justice,". *Id.*, 489 U.S. at 260-262; *Coleman v. Thompson*, 501 U.S. 722,729-735 (1991); *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

A state rule of procedure is not "adequate" to bar federal court consideration of the merits of a federal claim unless the rule is both "firmly established and regularly followed" by the state court. *Ford v. Georgia*, 498 U.S. 411,423-424 (1991) (*citing James v. Kentucky*, 466 U.S. 341,348 (1984)); *see Johnson v. Mississippi*, 486 U.S. 578, 589 (1988). Only state rules that are clear, consistently applied, and well established at the time of the purported default are "adequate" to support a finding of procedural default. *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994).

The state rule that barred review of Mr. Alvarez' claim 4 (Brady), 5 (Napue), 6 (prosecutorial misconduct claim concerning Kim), and 7 (prosecutorial misconduct claim concerning HPD store room) was not

adequate as it was not consistently applied.  These claims were presented to the Texas courts in a subsequent habeas writ pursuant to Texas Code of Criminal Procedure art. 11.071(5) on April 23, 2010.  The CCA dismissed these claims as an abuse of the writ pursuant to art. 11.071(5).  Although Respondent indicates that art. 11.071 abuse-of-the-writ doctrine has been found to be regularly applied and thus an adequate bar to review as a general matter, it was not consistently applied in Mr. Alvarez' case, and therefore is not adequate in this specific instant.

Mr. Alvarez's successor petition, filed on September 15, 2010 presented claim 4, 5, 6, and 7 to the state court for the first time in compliance with Section 5 of Texas Code of Criminal Procedure art. 11.071. The claims arose from facts not disclosed to the defense until after the initial habeas corpus petition had been filed and were based on the Houston Crime Lab DNA scandal.

In denying Mr. Alvarez's successor petition on, the CCA failed to apply Section 5 analysis in a consistent manner.  The CCA had on numerous occasions found that claims arising from facts not disclosed to the defense until after the filing of the initial habeas corpus petition are not barred from merits consideration under section 5.  In fact, Mr. Alvarez's successor petition presented claims that are in the *identical* procedural posture and fact

pattern as another case, *Ex parte Alix*, No. 50,786-02 (Tex. Crim. App. June 23, 2004), that also arose from the same DNA crime lab scandal. Based on the same factual and legal issues, the CCA granted Alix the right to litigate his claims on the merits in the lower court, finding that he satisfied the requirements of Section 5.

Mr. Alvarez's case presented the same procedural stance and underlying factual basis for the successor petition as presented by *Ex parte Alix*, No. 50,786-02 (Tex. Crim. App. June 23, 2004). Alix filed his initial petition on October 29, 2001, a month after Mr. Alvarez filed his initial petition. The very same Houston Crime Lab DNA scandal formed the basis of his successor habeas petition. In his case, the information forming the basis of the successor petition was revealed and developed after his original petition had been filed. The only difference between his successor petition and Mr. Alvarez's successor petition is that this Court found that Alix met section five requirements and inexplicably found that Alvarez's did not.

Mr. Alvarez satisfied the requirements of section 5 of Article 11.071. The claims contained in his successor petition, mostly involving prosecutorial misconduct for failing to disclose exculpatory evidence and for presenting false evidence to the jury, all stemmed from facts and information which the State hid from (or failed to disclose to) the defense until over two

years after the statutory deadline for the filing of the first state habeas corpus application.  *See* TEX. CODE CRIM. PROC. art. 11.071 § 5(e) (authorizing merits consideration of subsequent habeas corpus applications in which factual basis of claim is unavailable at time previous application filed). These claims demonstrated that, if true, Mr. Alvarez would not have been found guilty and/or would not have been sentenced to death.  *See* Tex. Code Crim. Proc. art. 11.071 § 5(a)(2) (authorizing merits consideration of subsequent habeas corpus applications if, by preponderance of evidence, but for constitutional violations claimed no rational juror could have found applicant guilty beyond reasonable doubt).

The CCA repeatedly held that subsequent state habeas corpus applications containing claims just such as those presented in Mr. Alvarez's application satisfy section 5's requirements.  *See e.g.*, *Ex Parte Blair*, No. 40,719-3 (Tex. Crim. App. May 30, 2001) (authorizing successive proceedings on, *inter alia*, claim that prosecution suppressed evidence); *Ex parte Murphy*, No. 30.035-02 (Tex. Crim. App. Sept. 13, 2000) (authorizing successive proceedings on claim that prosecutors relied on perjured testimony); *Ex parte Faulder*, No. 10,395-03 (Tex. Crim. App.  June 9, 1997) (authorizing successive proceedings on claim that prosecutors allowed witnesses to testify falsely and withheld exculpatory evidence); *Ex parte*

*Nichols*, No. 21,253-02 (Tex. Crim. App. Apr. 16, 1997) (authorizing

successive proceedings on claim that prosecutors withheld correct name and

address of exculpatory witness).

As mentioned above, the CCA found that section 5's requirements

were satisfied in *Ex parte Alix*, No. 50,786-02 (Tex. Crim. App. June 23,

2004), the case with the materially identical basis as Mr. Alvarez's case.

Both cases raised in a subsequent habeas corpus application various *Brady*-

type issues relating to facts arising from the Houston Crime Lab scandal

when the State had failed to disclose the information until well after the first

habeas corpus application had been filed.  The CCA had no trouble

immediately recognizing the satisfaction of section 5's requirements in the

*Alix* case.  *See* Exhibit ***, attached hereto (Copy of Court's Remand Order

in *Ex parte Alix*, No. 50,786-02 (Tex. Crim. App. June 23, 2004)).

The *Alix* remand order is directly on point with respect to the section 5

issue presented here.  In both cases, the habeas corpus applicants were not

informed of case-related facts arising from the Houston Crime Lab scandal

until well after the filing of the initial state habeas corpus application.  In

both cases, the applicants asserted claims of prosecutorial misconduct and

related issues arising from those newly disclosed facts.  In both cases, they

first raised these claims while in federal habeas corpus proceedings, and

thereafter, when the federal court stayed the cases to permit exhaustion of the claims in state court, each applicant raised prosecutorial misconduct claims in subsequent state applications for writ of habeas corpus.

If the CCA determined that a remand was required under section 5 in *Alix*, then had to grant Mr. Alvarez a remand in order to consistently apply its state procedural rule. The cases are indistinguishable on the pertinent question of the appropriate treatment under section 5.

The CCA's failure to grant a remand in Mr. Alvarez' case and to instead determine to the contrary that it was an abuse of the writ violated due process, equal protection, and lead to the inconsistent application of the state procedural rule. Therefore, the CCA's determination that Mr. Alvarez's successor petition was an abuse of the writ is not an adequate state rule and the claims presented in the petition are not procedurally barred from federal review.

To the extent that this Court might find that a claim for relief in the Amended Petition is defaulted because the Texas CCA denied relief based on an independent and adequate state procedural bar, Mr. Alvarez is excused from that default because he can demonstrate cause and prejudice.

As to the aspects of the claims in claims 2 and 3 that Respondent asserts are procedurally defaulted due to the lack of contemporaneous

objection, Mr. Alvarez asserts that he satisfied the purpose of the contemporaneous objection rule in raising the Vienna Convention violation concerns in the Motion to Suppress.  Mr. Alvarez served the purpose of the procedural rule by fairly presenting his claim in another manner, so federal review is not barred.  *See Reiger v. Christensen*, 789 F.2d 1425, 1431 (9th Cir. 1986) (although state court found claim procedurally barred by claimant's failure to object contemporaneously to the evidence, federal review is not precluded because petitioner satisfied the purpose of the state procedural rule by challenging the testimony in a subsequent motion for mistrial) (*citing Henry v. Mississippi*, 379 U.S. 443,448-449 (1965) (purpose of contemporaneous objection rule substantially served by motion for directed verdict at close of evidence, therefore state bar did not preclude federal review)); *see also Douglas v. Alabama*, 380 U.S. 415, 422 (1965) (failure to object contemporaneously to introduction of confession did not preclude federal review where petitioner had three times previously objected to the use of the confession and later moved for mistrial).

## VI.    Merits

Mr. Alvarez re-asserts and re-alleges the merits arguments presented as to each and every claim in the Amended Petition.  In response to the observation on page 129 and footnote 45 that Mr. Alvarez previously

submitted the wrong documents to the Petition under Exhibit 68,

Petitioner accidentally cited to Exh. 68, when the cited documents were

actually included at Exh. 50.  As for the citation to the United States Census

Bureau's 1990 Spanish Surname List of Heavily Hispanic Surnames,

Petitioner attaches the article: Word, David and Perkins, R. Colby, Building

a Spanish Surname List for the 1990s – a New Approach to an Old Problem,

U.S. Bureau of Census (March 1996), *see* Exhibit E attached, to provide

additional information regarding the Spanish Surnames List and its

relevance.  Petitioner is happy to provide more information to support this

claim if requested by the Court.

Mr. Alvarez respectfully requests the opportunity for additional

briefing on the merits after discovery and other factfinding is permitted, and

an evidentiary hearing is held, as requested in the Prayer for Relief of the

Amended Petition.  Petitioner also intends to file separate pleadings seeking

discovery and an evidentiary hearing, specifying not only the legal bases for

the request, but also the specific factual investigations that are necessary to a

full and fair hearing of all claims in this case, in light of the denial of same

in state habeas corpus proceedings.

## Conclusion

For all of the reasons set forth herein, and in all pleadings filed previously in this case and in the state habeas corpus proceedings, Mr. Alvarez respectfully urges the Court to grant habeas corpus relief outright. Should the Court determine it necessary prior to the grant of relief, Mr. Alvarez respectfully urges the Court to grant him discovery and an evidentiary hearing, the precise contours of which he intends to address in separate pleadings to be filed.  Should this Court determine that one or more of the claims presented are, as Respondent suggests, either unexhausted, procedurally defaulted, or both, he respectfully urges the Court to stay the proceedings in the case either to await the U.S. Supreme Court's rulings in *Martinez* and in *Maples*, and/or to stay the proceedings in this case, hold it in abeyance, to permit Mr. Alvarez the opportunity to return to state court to vindicate his rights as set forth in the CCA's recent decision in *Ex parte Medina*.

Submitted this 19th day of December, 2011.

Respectfully Submitted,

  /s/ Robert L. McGlasson

* Attorney-in-charge                     Robert L. McGlasson*
                                          Texas Bar No. 13634050
                                          *Admitted Pro Hac Vice*

Attorney at Law
McGlasson & Associates, PC
1024 Clairemont Avenue
Decatur, Georgia 30030
(404) 314-7664 (phone)
(404) 373-9338 (fax)
rlmcglasson@comcast.net (e-mail)


Skyla V. Olds
California Bar No. 241742
Admitted *Pro Hac Vice*
Attorney at Law
819 Delaware Street
Berkeley, CA 94710
(510) 915-4168 (phone)
(510) 540-8442 (fax)
skyla.olds@gmail.com (email)

Attorneys for Petitioner

## CERTIFICATE OF SERVICE

I, ROBERT L. MCGLASSON, attorney for Petitioner Juan Carlos Alvarez, do hereby certify that a true and correct copy of the above and foregoing Petitioner's Reply to Respondent's Answer to Petition for Writ of Habeas Corpus has been served through the electronic case filing system for the U.S. District Court of the Southern District of Texas, to:

Stephen M. Hoffman, Esq.
Edward Larry Marshall, Esq.
Assistant Attorneys General
Texas Attorney General's Office

Date: December 19, 2011

/s/ Robert L. McGlasson
ROBERT L. MCGLASSON
Attorney for Petitioner