Supreme Court, U.S.
FILED

10-63      JUL 9 - 2010

No. OFFICE OF THE CLERK

## In the
## Supreme Court of the United States

CORY R. MAPLES,

*Petitioner,*

v.

RICHARD F. ALLEN,
COMMISSIONER, ALABAMA DEPARTMENT
OF CORRECTIONS,

*Respondent.*

ON PETITION FOR A WRIT OF CERTIORARI TO THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

## PETITION FOR A WRIT OF CERTIORARI

GREGORY G. GARRE
  *Counsel of Record*
J. SCOTT BALLENGER
DEREK D. SMITH
MICHAEL E. BERN
LATHAM & WATKINS LLP
555 11th Street, NW,
  Suite 1000
Washington, DC 20004
(202) 637-2207
gregory.garre@lw.com

*Counsel for Petitioner*

Blank Page

# CAPITAL CASE
## QUESTIONS PRESENTED

In this capital case, the divided Eleventh Circuit held that Alabama may execute a state inmate without any federal court review of the merits of serious constitutional claims because of a missed filing deadline that indisputably occurred through no fault of petitioner and after the State failed to take any action when court orders mailed to petitioner's lead attorneys of record were returned to a court clerk unopened with "Return to Sender—Left Firm" written on an envelope. The questions presented are as follows:

1.   Whether the Eleventh Circuit properly held—in conflict with the decisions of this Court and other circuits—that the purported state procedural default rule is "adequate" as a matter of federal law to bar federal habeas review of serious constitutional claims, where the court of appeals disregarded state case law allowing untimely appeals in analogous circumstances, reconstructed state law based on distinctions not drawn by the state courts themselves, and relied on cases decided after the asserted default.

2.   Whether the Eleventh Circuit properly held—in conflict with the decisions of this Court and other courts—that there was no "cause" to excuse any procedural default where petitioner was blameless for the default, the State's own conduct contributed to the default, and petitioner's attorneys of record were no longer functioning as his agents at the time of any default.

ii

## TABLE OF CONTENTS

**Page**

QUESTIONS PRESENTED............................................i

TABLE OF AUTHORITIES..........................................vii

OPINIONS BELOW ........................................................ 1

JURISDICTION ............................................................... 1

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED..................................... 2

STATEMENT OF THE CASE ........................................ 2

    A.  Trial Court Proceedings and Direct Appeal.................................................. 3

    B.  State Post-Conviction Proceedings.................. 5

    C.  Federal Habeas Proceedings .............................. 8

REASONS FOR GRANTING THE WRIT ................. 9

I.  THE DIVIDED ELEVENTH CIRCUIT'S DECISION THAT THE STATE'S ALLEGED DEFAULT RULE IS ADEQUATE WARRANTS THIS COURT'S REVIEW ................................................................. 12

    A.  The Eleventh Circuit's Decision Directly Conflicts With This Court's Precedents......... 13

    B.  The Eleventh Circuit's Decision Conflicts With Decisions Of Other Courts Of Appeals................................................................. 19

    C.  The Grant Of Certiorari In *Walker v. Martin* Heightens The Need For Review Here ..................................................................... 21

## TABLE OF CONTENTS—Continued

Page

II. THE DIVIDED ELEVENTH CIRCUIT'S DECISION THAT MAPLES FAILED TO SHOW CAUSE WARRANTS REVIEW ............ 24

   A. The Eleventh Circuit's Decision Conflicts With *Jones v. Flowers* And Other Precedents ........................................................... 24

   B. The Eleventh Circuit's Decision Goes Well Beyond The Reach Of *Coleman v. Thompson* ........................................................... 27

III. THE QUESTIONS PRESENTED ARE EXCEPTIONALLY IMPORTANT ..................... 32

CONCLUSION ................................................................. 33

## APPENDIX TABLE OF CONTENTS

Opinion of the United States Court of Appeals for the Eleventh Circuit, *Maples v. Allen*, 586 F.3d 879 (11th Cir. 2009) ..................................... 1a

Memorandum of Opinion of the United States District Court for the Northern District of Alabama, *Maples v. Campbell*, No. 5:03-CV-2399-SLB-PWG (N.D. Ala. Sept. 29, 2006) .......................................................................... 33a

iv

## TABLE OF CONTENTS—Continued

Page

Memorandum Opinion and Order of the United
States District Court for the Northern
District of Alabama Denying
Reconsideration Under Rule 59(e), *Maples
v. Campbell*, No. 5:03-CV-2399-SLB-PWG
(N.D. Ala. Sept. 26, 2007) ..................................... 203a

Order of the United States Court of Appeals for
the Eleventh Circuit Granting Leave to
Expand Certificate of Appealability,
*Maples v. Allen*, No. 07-15187-P (11th Cir.
Aug. 15, 2008) ........................................................ 219a

Order of the United States District Court for
the Northern District of Alabama Granting
Certificate of Appealability, *Maples v.
Campbell*, No. 5:03-CV-2399-SLB-PWG
(N.D. Ala. July 3, 2008) ........................................ 220a

Order of the Circuit Court of Morgan County of
Alabama Denying Motion to Reissue May
22, 2003 Order Denying Cory R. Maples's
Rule 32 Petition, *Maples v. State of
Alabama*, No. CC95-842.60 (Ala. Cir. Sept.
3, 2003)................................................................... 222a

Order of the Court of Criminal Appeals of
Alabama Denying Petition for Writ of
Mandamus, *Ex parte Maples*, No. CR-03-
0021 (Ala. Crim. App. Jan. 23, 2004) ................... 226a

v

## TABLE OF CONTENTS—Continued

Page

Order of the Supreme Court of Alabama
Denying Petition for Writ of Mandamus,
*Ex parte Maples*, No. 1030701 (Ala. Sept. 3,
2004)........................................................................ 237a

Order of the United States Court of Appeals for
the Eleventh Circuit Denying Rehearing,
*Maples v. Allen*, No. 07-15187-P (11th Cir.
Feb. 9, 2010)............................................................ 238a

Letter concerning Extension of Time for Filing
Petition for Writ of Certiorari, *Maples v.
Allen*, Application No. 09A974 (U.S. Apr.
19, 2010).................................................................. 240a

U.S. Constitution amendment VI ............................... 242a

U.S. Constitution amendment XIV, § 1 ..................... 243a

28 U.S.C. § 2254............................................................ 244a

Alabama Rule of Criminal Procedure 1.2.................. 248a

Alabama Rule of Criminal Procedure 32.1
(1990) ...................................................................... 249a

Alabama Rule of Appellate Procedure 4(a)(1).......... 251a

vi

## TABLE OF CONTENTS—Continued

Page

Letter from State of Alabama Office of
Attorney General to Cory R. Maples
regarding expiration of right to appeal to
the Alabama Court of Criminal Appeals,
*Maples v. State*, No. CC-95-84260 (Aug. 13,
2003) ........................................................................ 253a

Affidavit of John G. Butler, attachment to
Motion to Reissue Court's May 22, 2003
Order Denying Cory R. Maples's Rule 32
Petition, *Maples v. State of Alabama*, No.
CC95-842.60 (Ala. Cir. Aug. 26, 2003) ................ 255a

Affidavit of Marc de Leeuw, attachment to
Motion to Reissue Court's May 22, 2003
Order Denying Cory R. Maples's Rule 32
Petition, *Maples v. State of Alabama*, No.
CC95-842.60 (Ala. Cir. Aug. 26, 2003) ................ 257a

vii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ake v. Oklahoma,*
  470 U.S. 68 (1985) .................................................31

*Alverson v. State,*
  531 So. 2d 44 (Ala. Crim. App. 1988) ......................15

*Baldayaque v. United States,*
  338 F.3d 145 (2d Cir. 2003).......................................29

*Barr v. City of Columbia,*
  378 U.S. 146 (1964) ...................................................18

*Beard v. Kindler,*
  130 S. Ct. 612 (2010) ..................................2, 11, 12, 21

*Carlson v. Green,*
  446 U.S. 14 (1980) .....................................................25

*Coleman v. Thompson,*
  501 U.S. 722 (1991) .......................................11, 27, 28

*Combs v. Coyle,*
  205 F.3d 269 (6th Cir.), *cert. denied,* 531
  U.S. 1035 (2000) ........................................................19

*Davis v. Wechsler,*
  263 U.S. 22 (1923) .....................................................19

*Denko v. INS,*
  351 F.3d 717 (6th Cir. 2003) .....................................31

viii

## TABLE OF AUTHORITIES—Continued

Page(s)

*Fadiga v. Attorney General of the United States,*
 488 F.3d 142 (3d Cir. 2007).........................................31

*Fautenberry v. Mitchell,*
 515 F.3d 614 (6th Cir.), *cert. denied,* 129 S.
 Ct. 412 (2008)...............................................................20

*Fields v. Calderon,*
 125 F.3d 757 (9th Cir.), *cert. denied,* 523
 U.S. 1132 (1998) ..........................................................20

*Fountain v. State,*
 842 So. 2d 719 (Ala. Crim. App. 2000), *aff'd*
 *in relevant part, Ex parte Fountain,* 842
 So.2d 726 (Ala. 2001) ......................................13, 14, 15

*Gosier v. Welborn,*
 175 F.3d 504 (7th Cir.), *cert. denied,* 528
 U.S. 1006 (1999) ..........................................................20

*Hathorn v. Lovorn,*
 457 U.S. 255 (1982) .....................................................18

*Holland v. Florida,*
 No. 09-5327, 2010 WL 2346549 (U.S. June
 14, 2010) ....................................................27, 28, 29, 31

*House v. Bell,*
 547 U.S. 518 (2006) .....................................................24

ix

## TABLE OF AUTHORITIES—Continued

Page(s)

*Ex parte Ingram,*
    675 So. 2d 863 (Ala. 1996) ...........................................5

*James v. Kentucky,*
    466 U.S. 341 (1984) ..............................................12, 18

*Jamison v. Lockhart,*
    975 F.2d 1377 (8th Cir. 1992) ....................................30

*Jenkins v. State,*
    12 So. 3d 166 (Ala. Crim. App. 2008) ......................15

*Johnson v. Mississippi,*
    486 U.S. 578 (1988) ....................................................18

*Jones v. Flowers,*
    547 U.S. 220 (2006) ............................10, 11, 25, 26, 27

*Jones v. Sussex I State Prison,*
    591 F.3d 707 (4th Cir. 2010) ....................................19

*Kennedy v. Louisiana,*
    128 S. Ct. 2641 (2008) ................................................32

*Lawrence v. Florida,*
    549 U.S. 327 (2007) ....................................................28

*Lee v. Kemna,*
    534 U.S. 362 (2002) ..................................10, 12, 17, 18

*Manning v. Foster,*
    224 F.3d 1129 (9th Cir. 2000) ....................................29

x

## TABLE OF AUTHORITIES—Continued

Page(s)

*Marshall v. State,*
    884 So. 2d 898 (Ala. Crim. App. 2002),
    rev'd *on other grounds,* 884 So. 2d 900
    (Ala. 2003)....................................................5, 14, 15, 16

*Marshall v. State,*
    884 So. 2d 900 (Ala. 2003) ....................................14, 17

*Martin v. Walker,*
    357 F. App'x 793 (9th Cir. 2010), *cert.*
    *granted,* No. 09-996, 2010 WL 621406 (U.S.
    June 21, 2010)..............................................................22

*Melson v. State,*
    902 So. 2d 715 (Ala. Crim. App. 2004) ....................14

*Munaf v. Geren,*
    128 S. Ct. 2207 (2008) ................................................31

*Murray v. Carrier,*
    477 U.S. 478 (1986) ..............................................24, 32

*Murray v. Giarratano,*
    492 U.S. 1 (1989) ........................................................32

*NAACP v. Alabama ex rel. Flowers,*
    377 U.S. 288 (1964) ....................................................12

*NAACP v. Alabama ex rel. Patterson,*
    357 U.S. 449 (1958) ..............................................12, 18

xi

## TABLE OF AUTHORITIES—Continued

Page(s)

*Nehad v. Mukasey,*
   535 F.3d 962 (9th Cir. 2008) .....................................31

*Porter v. State,*
   2 S.W.3d 73 (Ark. 1999) ............................................30

*Puckett v. State,*
   834 So. 2d 676 (Miss. 2002) .......................................30

*Rafiyev v. Mukasey,*
   536 F.3d 853 (8th Cir. 2008) .....................................31

*Roe v. Flores-Ortega,*
   528 U.S. 470 (2000) ....................................................24

*Rouse v. Lee,*
   339 F.3d 238 (4th Cir. 2003), *cert. denied,*
   541 U.S. 905 (2004) ....................................................29

*Saleh v. United States Department of Justice,*
   962 F.2d 234 (2d Cir. 1992) .......................................31

*Scott v. Schriro,*
   567 F.3d 573 (9th Cir.), *cert. denied,* 130 S.
   Ct. 1014 (2009).....................................................19, 20

*Shephard v. State,*
   598 So. 2d 39 (Ala. Crim. App. 1992) ......................15

*Smith v. Mullin,*
   379 F.3d 919 (10th Cir. 2004) ...................................19

xii

## TABLE OF AUTHORITIES—Continued

Page(s)

*Sones v. Hargett,*
    61 F.3d 410 (5th Cir. 1995) ........................................19

*Tang v. Ashcroft,*
    354 F.3d 1192 (10th Cir. 2003) .................................31

*Thompson v. State,*
    860 So. 2d 907 (Ala. Crim. App. 2002) ..............14, 15

*Trest v. Cain,*
    522 U.S. 87 (1997) ......................................................19

*Wainwright v. Sykes,*
    433 U.S. 72 (1977) ......................................................24

*Walker v. Attorney General of the United States,*
    167 F.3d 1339 (10th Cir.), *cert. denied,* 528
    U.S. 987 (1999) ...........................................................20

*Ex parte Weeks,*
    611 So. 2d 259 (Ala. 1992) .........................................17

*Williams v. State,*
    44 S.W.3d 464 (Tenn. 2001) ......................................30

*Yee v. City of Escondido,*
    503 U.S. 519 (1992) ....................................................25

*Zeru v. Gonzales,*
    503 F.3d 59 (1st Cir. 2007).........................................31

xiii

**TABLE OF AUTHORITIES—Continued**

Page(s)

## STATUTES AND RULES

28 U.S.C. § 1254(1) ................................................................2

Alabama Code § 13A-5-46(f) ...............................................3

Alabama Rule of Appellate Procedure 4(b)(1)................5

Alabama Rule of Criminal Procedure 32.1(f)
  (1990)....................................................................5, 13

## OTHER AUTHORITY

Eric M. Freedman, *Giarratano is a Scarecrow:*
  *The Right to Counsel in State Capital*
  *Postconviction Proceedings,* 91 Cornell L.
  Rev. 1079 (2003).........................................................33

Nancy J. King et al., *Final Technical Report:*
  *Habeas* Litigation *in U.S. District Courts*
  48 (2007) ......................................................................32

Eve Brensike Primus, *A Structural Vision of*
  *Habeas* Corpus, 98 Calif. L. Rev. 1 (2010) .............12

xiv

## TABLE OF AUTHORITIES—Continued

Page(s)

Recent Case, *Federal Courts—Habeas Corpus—Fourth Circuit Fails To Reach a Judgment on the Merits of a* Constitutional *Claim Based on the State Procedural Default Doctrine.—McNeill v. Polk, 476 F.3d 206 (4th Cir. 2007)*, 120 Harv. L. Rev. 2246 (2007) ................................................................21

Restatement (Second) of Agency (1958)........................28

Restatement (Third) of Agency (2006) ...........................28

Catherine T. Struve, *Direct and Collateral Federal Court Review of the Adequacy of State Procedural Rules,* 103 Colum. L. Rev. 243 (2003).....................................................................12

Larry W. Yackle, *State Convicts and Federal Courts: Reopening the Habeas Debate,* 91 Cornell L. Rev. 541 (2006).........................................12

# In the
# Supreme Court of the United States

_____

No.

_____

CORY R. MAPLES,

*Petitioner,*

v.

RICHARD ALLEN,
COMMISSIONER, ALABAMA DEPARTMENT
OF CORRECTIONS,

*Respondent.*

_____

ON PETITION FOR A WRIT OF CERTIORARI TO THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

## PETITION FOR WRIT OF CERTIORARI

_____

Cory R. Maples respectfully petitions for a writ of
certiorari to review the judgment of the United States
Court of Appeals for the Eleventh Circuit in this case.

### OPINIONS BELOW

The opinion of the court of appeals (App.1a-32a) is
reported at 586 F.3d 879 (11th Cir. 2009). The opinion
and orders of the district court denying habeas relief
(App.33a-218a) are not reported. The orders of the
district court granting and expanding (App.219a-21a)
the certificate of appealability are not reported.

### JURISDICTION

The judgment of the court of appeals was entered
on October 26, 2009. App.1a. A timely petition for

2

rehearing was denied on February 9, 2010. App.238a-39a. On April 19, 2010, Justice Thomas extended the time within which to file a petition for a writ of certiorari to and including July 9, 2010. App.240a-41a. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1254(1).

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

Pertinent constitutional and statutory provisions are reprinted in the appendix at 242a-52a.

## STATEMENT OF THE CASE

This case raises exceptionally important questions concerning the gateway standards governing access to federal habeas relief for petitioners challenging a state court conviction or sentence under the Constitution. The proper understanding of these standards is especially critical in capital cases such as this where an individual's life is at stake. The divided Eleventh Circuit decision below fundamentally misconstrues—and debases—these standards in concluding that the procedural default rule at issue is "adequate" as a matter of federal law, and that petitioner could not establish "cause" to excuse any default. The court's decision directly conflicts with the decisions of this Court and other courts in several significant respects, and exacerbates the uncertainty that already exists over the standards governing procedural defaults. This Court's recent grant of certiorari in *Walker v. Martin*, No. 09-996, and decision in *Beard v. Kindler*, 130 S. Ct. 612 (2010), underscore the importance of these standards, and this case warrants certiorari to provide needed guidance in these critical areas of law.

3

## A. Trial Court Proceedings and Direct Appeal

1. In 1997, an Alabama jury found Maples guilty of two counts of capital murder, intentional murder during a robbery and intentional murder of two or more persons. The jury recommended death by a vote of 10-2—one vote shy of the number that would have barred the jury from issuing such a recommendation under state law. Ala. Code § 13A-5-46(f). The trial court sentenced Maples to death. App.1a.

a. Because of trial counsel's gross ineffectiveness, key facts concerning the offenses and appropriateness of a death sentence were never explored. At trial, the State introduced evidence that Maples—who had a history of serious drug and alcohol dependence, but no prior record of violent crime—had been drinking heavily and using drugs on the night of the offense. For example, one of the State's witnesses testified that she saw crystal methamphetamine and crack on Maples shortly after the shootings and that Maples told her he had been "doing crystal meth and crack" that evening. R.1894.[1]   Numerous other witnesses testified that Maples's behavior before the shootings was abnormal, R.1848, R.1858-59, and that he was "hyper," acting "drunk," or not making sense. R.1848, 1858, 1803.

The jury would have been entitled to conclude that Maples lacked the mental state necessary for capital murder because of voluntary intoxication.   But Maples's attorneys failed to investigate evidence that Maples had been drinking and using drugs, presented no evidence at trial that Maples was intoxicated at the

---

[1] "R." refers to the record for this case in the Circuit Court of Morgan County, Alabama, Case No. CC95-842, as submitted to the Court of Criminal Appeals of Alabama, Case No. CR-03-0021.

4

time of the shootings, and did not even request an instruction on voluntary intoxication or manslaughter. App.20-22a. Maples's attorneys instead told the jury that Maples was *not* intoxicated—even though they later told the jury during the penalty phase that "but for the alcohol and drug usage on this occasion, [the shooting] would probably not have happened." R.3086.

Worse still, Maples's attorneys told the jury during closing argument that "[w]hat we have here is ... [Maples] walking out to the car and in an instantaneous rush killing two people," R.2918, and "conceded ... there was a loss of life caused intentionally at the hand of Corey [sic] Maples," R.2914. In other words, far from providing an effective defense, Maples's state-provided attorneys essentially professed Maples's guilt to capital murder under Alabama law.

b. The penalty phase began following a lunch break on the same day that the jury handed down its verdict in the guilt phase and lasted the afternoon with closing arguments the following morning. During the hearing, Maples's attorneys—who had never previously tried the penalty phase of a capital case—admitted that, owing to their inexperience, they "may appear to be stumbling around in the dark." R.3081-82. Their affirmative case amounted to unprepared testimony from three family members and the testimony of a psychologist who had met with Maples months earlier for four hours and made no "formal diagnosis." R.3165.

Maples's attorneys failed to investigate numerous matters highly relevant to sentencing, including Maples's abusive childhood and abandonment by his mother, Maples's mental health and history of depression and suicide attempts as well as the history of mental illness in Maples's family, and his extensive

5

history of alcohol and substance abuse including abuse of crack cocaine, crystal methamphetamine, and LSD. Nor did Maples's attorneys investigate Maples's character, cooperation with the police, and voluntary admission to a drug treatment program.

2. On direct appeal, the Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Maples's conviction and sentence. App.2a. Consistent with settled Alabama law, Maples was not permitted on appeal to challenge the effectiveness of the assistance that he received from counsel at trial. *Ex parte Ingram*, 675 So. 2d 863, 865 (Ala. 1996).

### B. State Post-Conviction Proceedings

1. Under Rule 32.1 of the Alabama Rules of Criminal Procedure, a defendant convicted of a criminal offense may bring a post-conviction challenge in state court arguing that his conviction or sentence violates federal or state law. Under Alabama Rule of Appellate Procedure 4(b)(1), the time for appealing an adverse decision in "a criminal case" is generally 42 days. Rule 32.1(f), however, authorizes a request for relief when "[t]he petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part." Ala. R. Crim. P. 32.1(f) (1990). Alabama courts have excused the failure to file a timely appeal of the denial of a Rule 32.1 petition in circumstances in which the failure was without fault on petitioner's part. *See, e.g.*, *Marshall v. State*, 884 So. 2d 898, 899 (Ala. Crim. App. 2002), *rev'd on other grounds*, 884 So. 2d 900 (Ala. 2003); *infra* at 13.

2. On August 1, 2001, Maples—represented by new out-of-state pro bono counsel—filed a petition for post-conviction relief under Alabama Rule of Criminal Procedure 32.1, raising ineffective assistance of counsel

6

and other claims. Maples was represented by Clara Ingen-Housz and Jaasi Munanka, attorneys at the law firm of Sullivan & Cromwell in New York, who represented Maples in their individual capacities. App.255a. John Butler, a local attorney, appeared for the sole purpose of admitting Ingen-Housz and Munanka *pro hac vice*. He had no substantive involvement in the case. App.255a-56a, 257a.

Respondent moved to dismiss the petition. The state trial court initially denied respondent's motion to dismiss in December 2001, and Maples's requests for discovery remained pending before the court. Approximately 18 months later, on May 22, 2003, while Maples was awaiting rulings on his discovery motions, the trial court issued an order denying the petition outright. App.3a. Through no fault of his own, Maples never received timely notice of the trial court's order.

The trial court clerk sent copies of the order individually addressed to Maples's pro bono attorneys of record (Ingen-Housz and Munanka) and to Butler. App.222a-23a. By this time, however, both Ingen-Housz and Munanka had left Sullivan & Cromwell—without notice to the court or substitution of counsel. App.222a. Copies of the court's order were returned to the trial court clerk unopened with "Return to Sender—Attempted Unknown" stamped on the envelope addressed to Munanka, and "Return to Sender—Attempted Not Known" stamped on the envelope addressed to Ingen-Housz and "Return to Sender—Left Firm" written on the front. App.223a. Butler received the order, but because he had "no substantive involvement" in the case, he did nothing. App.255a-56a.

7

After receiving the unopened and unclaimed envelopes containing the order, the trial court clerk did nothing. The clerk made no further effort to contact pro bono counsel (or anyone else at their former law firm), local counsel, or Maples. There matters stood and the 42-day period for appeal under Alabama Rule of Appellate Procedure 4(b)(1) passed. On August 13, 2003, about a month after the deadline had passed, the State's attorney sent a letter to Maples—not his attorneys—to "inform [him] of recent events" concerning the dismissal of his Rule 32 petition and to advise him that the time for filing a federal habeas corpus petition would soon expire. App.253a.

When Maples learned of the missed deadline, he immediately informed his step-mother, who contacted Sullivan & Cromwell. Other attorneys at that firm then sought leave to file an appeal notwithstanding the missed deadline, but that request was denied. App.5a.

3. The trial court deemed the notice sent to counsel sufficient (even if not received) and stated, "[i]f the petitioner is entitled to an out-of-time appeal, let the Court of Appeals so rule." App.224a. Although the Alabama Court of Criminal Appeals recognized that "[t]he circuit clerk here assumed a duty to notify the parties of the resolution of Maples's Rule 32 petition," it concluded that the State "was not negligent in its duty to notify the parties of the resolution of the Rule 32 petition" and that Maples had failed to show a violation of due process. App.234a, 236a. In defending that judgment, respondent told the Alabama Supreme Court that petitioner "may still present his postconviction claims to [the] court" on federal habeas. App.18a. The Alabama Supreme Court affirmed in a one-sentence order, and this Court denied certiorari.

8

## C. Federal Habeas Proceedings

1. On August 29, 2003, Maples filed a federal habeas petition raising, *inter alia*, ineffective assistance of counsel claims. That petition was stayed pending the state court proceedings, and amended in May 2005. Notwithstanding respondent's representation to the Alabama Supreme Court that Maples "may still present his postconviction claims" on federal habeas, App.18a, respondent argued in federal court that Maples defaulted on his ineffective assistance of counsel claims due to the missed deadline.

The district court acknowledged that the Alabama courts had previously permitted an out-of-time appeal from the denial of a Rule 32 petition where the petitioner claimed that he "had not received the order dismissing his petition and that his counsel was ineffective for failing to inform him of the dismissal." App.53a (discussing *Marshall*). However, the court held that Maples "has not established that the State of Alabama's interpretation of Rule 32.1(f)'s 'no fault' provision for petitioners in Maples's posture is *not* firmly established or regularly followed." App.54a-55a (emphasis added). The court further held that Maples could not show "cause" to overcome a procedural default. App.55a. The court nevertheless authorized an appeal on these issues, recognizing that "[j]urists of reason" could "debat[e]" whether the alleged default rule was "firmly established and regularly followed" and whether Maples had established cause. App.221a.

2. A divided panel of the Eleventh Circuit affirmed. The panel declined to consider the text of Rule 32.1's "no fault" provision. Even though no decided case in Alabama has ever articulated such a framework, the panel majority held that Maples had

9

notice of the purported default rule because "Alabama has granted out-of-time appeals in only three limited circumstances." App.13a. The court then sought to articulate such "exceptions" based on a *post hoc*, fact-specific rendering of various Alabama cases, emphasizing distinctions that (it said) Alabama courts "appeared" to draw, though the decisions themselves did not emphasize such grounds, and relying on cases decided after the alleged default. App.13a-16a. The panel majority then held that Maples failed to show cause on the ground that attorney performance can never constitute "cause" to excuse a default. App.17a-18a.

Judge Barkett dissented. She concluded that the alleged default rule "is not 'adequate' pursuant to the Supreme Court's definition of that term." App.27a. She explained that the Alabama courts had allowed untimely appeals on "indistinguishable facts" and that the panel majority based its analysis on distinctions that the Alabama courts themselves have not applied. App.28a-31a. She also concluded that equity, if not the Constitution, required that Maples be afforded federal review of his claims given that, accepting his allegations as true, he had raised a serious ineffective assistance of counsel claim that would go unreviewed for reasons involving no fault of his own. App.30a-31a.

## REASONS FOR GRANTING THE WRIT

This case raises important and recurring questions governing the gateway standards for securing federal habeas review of the constitutionality or legality of a state conviction or sentence. The divided Eleventh Circuit decision below holding that petitioner is barred from seeking federal habeas relief is seriously flawed and conflicts with decisions of this Court and other

10

courts of appeals in several important respects. What
is more, the decision raises the shocking prospect that
a man may be executed without any federal court
review of serious constitutional claims due to a series of
events for which all agree he was blameless and
notwithstanding the State's own failings in the
purported default. Certiorari is warranted to review
two overriding questions raised by that ruling.

The first concerns when a state default rule is
"adequate" to bar federal habeas review. This Court
has held that a state rule is adequate only when it was
"'firmly established and regularly followed'" at the time
of the alleged default, *Lee v. Kemna*, 534 U.S. 362, 376
(2002) (citations omitted), but courts have divided in
applying that standard. To hold that this standard was
satisfied here, the Eleventh Circuit overlooked the text
of the Alabama rule, relied on cases decided *after* the
alleged procedural default, and read into the extant
Alabama cases distinctions that Alabama cases do not
apply. That approach conflicts with decisions of this
Court and other circuits, which make clear that federal
courts may not recognize a "firmly established" or
"regularly followed" rule on the basis of distinguishable
case law or *post hoc* reinterpretations. And the
Eleventh Circuit's decision conflicts with decisions
holding that the *State*—not the inmate—bears the
burden of proving that a rule is adequate.

The second question concerns when a petitioner has
demonstrated "cause" to excuse any default for federal
purposes. This Court has held that, when the loss of a
home is at stake, state officials cannot just do nothing
when an important notice is returned unopened, but
instead must make further efforts to provide notice.
*Jones v. Flowers*, 547 U.S. 220 (2006). It follows that

11

the State may not "shrug [its] shoulders ... and say 'I tried'" when a man's *life* is at stake. *Id.* at 229. Yet the Eleventh Circuit did not account for the State's own involvement in the default. Moreover, the Eleventh Circuit short-circuited the inquiry into cause by concluding that *Coleman v. Thompson*, 501 U.S. 722 (1991), governed since Maples was represented by counsel. App.17a. But *Coleman* does not govern where, as here, an attorney no longer functions as an agent at the time of the alleged default. As other courts have recognized, in such circumstances, a client is not responsible for an attorney's malfeasance.

As the dissent below recognized, petitioner presented strong claims for ineffective assistance of counsel. App.30a-31a & n.3. Those claims would have been heard if the Eleventh Circuit had properly followed this Court's precedents or this case had arisen in other circuits that have addressed these threshold issues in a different fashion. The fact that a man may be executed in these circumstances without any federal review of those claims ought to be enough to merit this Court's review. But the questions presented are recurring and of immense importance to the thousands of individuals who annually seek federal habeas review. Moreover, the first question presented concerns an area of law that Justices of this Court, *e.g.*, *Beard v. Kindler*, 130 S. Ct. 612, 619-21 (2009) (Kennedy, J., joined by Thomas, J., concurring), as well as many commentators, *infra* at 12, have recognized is urgently in need of clarification by this Court.

12

## I.  THE DIVIDED ELEVENTH CIRCUIT'S DECISION THAT THE STATE'S ALLEGED DEFAULT RULE IS ADEQUATE WARRANTS THIS COURT'S REVIEW

To provide an "adequate" basis for barring federal habeas review, a state procedural rule must be "clear" at the time of the asserted default. *James v. Kentucky*, 466 U.S. 341, 346 (1984).  To meet that requirement, a rule must be "'firmly established and regularly followed.'"  *Lee*, 534 U.S. at 376 (citation omitted); *accord Beard*, 130 S. Ct. at 617; *James*, 466 U.S. at 348. Federal habeas review may not be denied on the basis of state law procedural impediments that did not provide the defendant with fair notice or that are novel, arbitrary, inconsistent, or unpredictable in application.  *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457-58 (1958); *see also NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 293-302 (1964).

As explained below, the federal courts have divided on the proper contours of these basic requirements. The divided Eleventh Circuit decision below conflicts with the decisions of this Court and other courts in numerous respects and exacerbates the widespread confusion that already exists concerning when a state default rule is adequate.  *See, e.g.*, Catherine T. Struve, *Direct and Collateral Federal Court Review of the Adequacy of State Procedural Rules*, 103 Colum. L. Rev. 243, 315 (2003) (discussing the lack of "consistent standards for adequacy review"); *see also* Larry W. Yackle, *State Convicts and Federal Courts: Reopening the Habeas Debate*, 91 Cornell L. Rev. 541, 559 n.106 (2006) (case law on procedural defaults is "extraordinarily difficult"); Eve Brensike Primus, *A*

13

*Structural Vision of Habeas Corpus,* 98 Calif. L. Rev. 1, 1 (2010) (case law is "unworkable").

### A. The Eleventh Circuit's Decision Directly Conflicts With This Court's Precedents

1. The Eleventh Circuit's conclusion in this case that there was a "firmly established and regularly followed" Alabama rule against allowing untimely appeals in petitioner's circumstances strips the adequacy requirement of all force.   App.12a.   The Alabama rule at issue has none of the qualities of a "firmly established and regularly followed" rule.  Even as described by the Eleventh Circuit, the rule is riddled with *ad hoc* exceptions and evolving.  And as a consequence, Maples lacked the requisite notice of that rule at the time it was invoked to bar his claims.

The text of Rule 32.1 itself has been a source of confusion, even to Alabama courts.   In uncabined terms, the rule expressly states that a defendant may seek Rule 32 relief where "[t]he petitioner failed to appeal within the prescribed time … and that failure was without fault on petitioner's part."  Ala. R. Crim. P. 32.1(f) (1990).  At the time of the alleged default, Alabama courts had recognized that, while Rule 32 did not "specifically provide for an out-of-time appeal from the denial of a Rule 32 petition" (as opposed to an order on direct review), "neither do the Rules specifically prohibit such relief." *Fountain v. State*, 842 So. 2d 719, 721 (Ala. Crim. App. 2000), *aff'd in relevant part, Ex parte Fountain*, 842 So. 2d 726 (Ala. 2001).  Moreover, Alabama courts had stated that Rule 32.1(f) should be interpreted in light of Alabama Rule of Criminal Procedure 1.2, which instructs courts to construe the

14

rules to promote "fairness" and "protect the rights of individuals." *See id.* at 721-22.[2]

Maples could reasonably have understood Rule 32.1(f) to authorize relief from a missed Rule 32 appeal deadline through no fault of his own—and indeed many then-extant Alabama court decisions took that very position at the time of the events at issue. *See, e.g., id.* at 720 (answering in the affirmative question "whether Rule 32 … permits an out-of-time appeal from the denial of a petition for post-trial relief"); *accord Marshall v. State*, 884 So. 2d 898, 899 (Ala. Crim. App. 2002) (*Marshall*); *Thompson v. State*, 860 So. 2d 907, 909-10 (Ala. Crim. App. 2002).

The divided Eleventh Circuit nevertheless held that the state courts have "routinely" *denied* untimely appeals from the denial of a Rule 32 petition. App.12a. But the cases the panel majority cited are readily distinguishable. *Melson v. State*, 902 So. 2d 715 (Ala. Crim. App. 2004), post-dated *Marshall v. State*, 884 So. 2d 900 (Ala. 2003) (*Marshall II*)—and Maples's alleged default—and simply followed *Marshall II*'s holding that the prisoner must use mandamus. Maples, by contrast, indisputably invoked the now-correct mandamus procedure in seeking review of the denial of his Rule 32 petition. App.5a. The other cases involved situations in which Alabama courts found that the

---

2 In September 2003—after the procedural default at issue in this case—the Alabama Supreme Court held that "[s]ubsection (f) contemplates the appeal from a conviction or sentence, but not an appeal from an adverse ruling in a collateral proceeding (such as a Rule 32 petition)." *Marshall v. State*, 884 So. 2d 900, 904 n.4 (Ala. 2003). As the dissenting justice observed, the effect of that ruling was to hold, "without citation to authority, … that this rule does not mean what it says." *Id.* at 907 (Johnstone, J., dissenting).

15

*inmate* was at fault for missing the deadline, and thus did not satisfy the "no fault" rule. *Shephard v. State*, 598 So. 2d 39, 40 (Ala. Crim. App. 1992); *Alverson v. State*, 531 So. 2d 44, 45 (Ala. Crim. App. 1988). Here, all agree that Maples was *not* at fault for the missed deadline.

At the same time, the Eleventh Circuit refused to acknowledge that Alabama courts have consistently *allowed* untimely appeals from the denial of a Rule 32 petition in circumstances where the petitioner was not at fault for the missed deadline—and in situations where the petitioner was proceeding with counsel as well as where he was proceeding *pro se*. *See, e.g.*, *Marshall*, 884 So. 2d at 898-99; *Fountain*, 842 So. 2d at 721-24; *Thompson*, 860 So. 2d at 910; *Jenkins v. State*, 12 So. 3d 166, 166-67 (Ala. Crim. App. 2008).

The Eleventh Circuit's analysis of the *Marshall* case epitomizes the problems with its treatment of state law. As the dissent below explained, in *Marshall* the Alabama Court of Criminal Appeals—relying on prior case law, including *Fountain*—*allowed* an out-of-time appeal from the denial of a state habeas petition based on facts that are "indistinguishable" from those here. App.30a. Like Maples, Marshall was formally represented by counsel but nevertheless did not receive timely notice of the denial of his Rule 32 petition because (according to Marshall) his attorney improperly failed to notify him of the ruling. *Marshall*, 884 So. 2d at 898-99; App.28a (dissent).

The Eleventh Circuit sought to distinguish *Marshall* on the ground that the Alabama appellate court "*appeared* to find" that the court clerk "assumed a duty to serve Marshall personally in prison" based on various *pro se* motions Marshall had filed. App.14a

16

(emphasis added). But as the dissent below explained, that interpretation is entirely speculative; the panel majority's use of "appear[s]" recognizes that the *Marshall* court itself did not invoke such a distinction in allowing the out-of-time appeal. App.28a-30a. The *Marshall* court nowhere relied on any assumed duty on the part of the clerk or on the fact that Marshall may have made some *pro se* filings. The court instead based its holding on the fact that Marshall had shown that his failure to appeal was "through no fault of his own," since "he had never received notice of the circuit court's dismissal of his [petition]." 884 So.2d at 898-99.[3]

The Eleventh Circuit based its reading of *Marshall* on language taken out of context from a subsequent decision by the Alabama Supreme Court in that case, which was decided *after* Maples's alleged default. App.14a-15a. But the *Marshall II* court did not remotely hold, as the Eleventh Circuit would have it, that Marshall was entitled to relief only because "the state circuit court clerk assumed a duty to serve Marshall personally in prison" due to his "'numerous *pro se* filings.'" App.14a (citation omitted). *Marshall II* did not revisit the facts of Marshall's case, or whether he was substantively entitled to relief, at all. The only holding of *Marshall II* was that he should have used mandamus rather than Rule 32.1(f). The language about *pro se* filings and clerks assuming duties was not referring to Marshall's case but was simply a quote from a different case, holding that *procedural due process* was violated when a clerk

---

[3] Even if *Marshall* could be interpreted to turn on the presence of a duty to notify, such a duty existed here. *See infra* at 24-27; App.234a (recognizing basic "duty to notify").

17

assumed a duty to notify a defendant about a trial date and then failed to fulfill it. The *Marshall II* court relied on that case only to support its holding that mandamus was the proper remedy. *See Marshall II*, 884 So. 2d at 903 (quoting *Ex parte Weeks*, 611 So. 2d 259, 262 (Ala. 1992)). And in any event, *Marshall II* was issued several months *after* the events at issue, and thus could not have provided any notice to Maples at the time of the alleged default or be used to show that any rule was "firmly established" at that time.

2. The divided Eleventh Circuit's decision directly conflicts with this Court's decisions. In *Lee*, this Court refused to find a state default rule adequate where, among other things, there was no published decision applying the purported rule in the circumstances presented, and where the cases relied on by the State were "distinguishable." 534 U.S. at 382 & n.13. In stark contrast, the Eleventh Circuit below refused to account for published decisions *allowing* out-of-time appeals in analogous circumstances and grounded its adequacy finding on case law that both is readily distinguishable and post-dates the events at issue. *See supra* at 14. The extended debate among the court below over the meaning of *Marshall*—which is longer than the *Marshall* decision itself—alone underscores the absence of a discernible rule in May 2003 against allowing untimely appeals when, as here, the petitioner is not at fault. *Cf. Lee*, 534 U.S. at 378-80.

The Eleventh Circuit's *post hoc* effort to pigeonhole Alabama cases into its own newly-invented tripartite framework also conflicts with this Court's decisions. This Court has explicitly repudiated efforts to manufacture a firmly established and regularly followed default rule by reconceiving the case law "in

18

retrospect" as "form[ing] part of a consistent pattern." *Patterson*, 357 U.S. at 457. And the exception-riddled framework that the Eleventh Circuit conceived *post hoc* is on its own terms the antithesis of a firmly established and regularly followed rule.

The Eleventh Circuit's decision also conflicts with this Court's precedents on when a state rule is "regularly followed." *James*, 466 U.S. at 348-49. In *Barr v. City of Columbia*, 378 U.S. 146, 149 (1964), for example, this Court held that no adequate state ground barred review of various breach-of-peace convictions because the South Carolina Supreme Court had applied the disqualifying rule at issue in a manner inconsistent with contemporaneous cases. *See also Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988). In addition to *Marshall*, where relief was allowed when the failure of notice was alleged to be solely the result of attorney negligence, the Alabama courts have granted relief in multiple cases where the petitioner was not at fault and fault for the prisoner's lack of notice instead appeared to rest with the court clerk, or was shared between the court clerk and counsel. *Supra*, 14.

4. Finally, this Court has recognized that, even when the State can show a firmly established rule, "[t]here are ... exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee*, 534 U.S. at 376. This is such a case. Maples bears no fault for the missed deadline, and the State itself is a cause of the default given its failure to do anything when it learned that petitioner's *pro bono* attorneys of record never received notice of the denial of his Rule 32 petition. *See infra*, 25-26. Indeed, the

19

State had no difficulty notifying Maples immediately *after* the appeal period had lapsed. App.253a. Its attempt to preclude federal review in these circumstances reflects a "gotcha" mentality that this Court long ago repudiated. *See Davis v. Wechsler*, 263 U.S. 22, 24 (1923) (Holmes, J.) ("Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.").

### B. The Eleventh Circuit's Decision Conflicts With Decisions Of Other Courts Of Appeals

The Eleventh Circuit's opinion also conflicts with the decisions of other courts of appeals in a number of important respects that go to the heart of the federal adequacy requirement and the nature of the inquiry demanded by this Court's precedents.

1. The courts below impermissibly placed on the habeas petitioner the burden of establishing that the purported state default rule is *inadequate*. App.16a. Consistent with the fact that procedural default is "a 'defense' that the State is 'obligated to raise,'" *Trest v. Cain*, 522 U.S. 87, 89 (1997), however, other circuits have held that the State bears the burden of proving that an asserted default rule was adequate. *See Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010)*; Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir.), *cert. denied*, 130 S. Ct. 1014 (2009); *Smith v. Mullin*, 379 F.3d 919, 927 (10th Cir. 2004); *Combs v. Coyle*, 205 F.3d 269, 276-77 (6th Cir.), *cert. denied*, 531 U.S. 1035 (2000). *But see Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) (presuming that a "state court's reliance on a procedural bar functions as an independent and adequate ground in support of the judgment" unless

20

the *petitioner* can show otherwise).   The proper allocation of the burden of proof in determining the adequacy of a state rule is crucial and, as underscored by the hairsplitting in which the Eleventh Circuit engaged in its analysis of Alabama case law, was almost certainly outcome determinative here.

2. The decision below further conflicts with the decisions of other circuits on when a state rule is adequate.   Even accepting the Eleventh Circuit's characterization of Alabama case law, it describes a jurisprudence riddled with *ad hoc* exceptions and unpredictable case-by-case development.   In other circuits, the fact that a rule is "*subject to a [growing] number of exceptions*" would have compelled the conclusion that it is "*not* an adequate state ground to bar federal habeas review." *Fields v. Calderon*, 125 F.3d 757, 763 (9th Cir.) (second emphasis added), *cert. denied*, 523 U.S. 1132 (1998).  Likewise, other circuits have refused to engage in *post hoc* efforts to "harmonize[]" inconsistent decisions by raising distinctions not "emphasized (or even mentioned)" by state courts. *Gosier v. Welborn*, 175 F.3d 504, 507 (7th Cir.), *cert. denied*, 528 U.S. 1006 (1999).

3. In concluding that the alleged default rule was adequate, the Eleventh Circuit even relied on several state decisions decided *after* the alleged default. *See supra* at 14; App.12a-13a.  But that approach directly conflicts with decisions of other circuits holding that "[t]he relevant inquiry is whether the rule was well-established or consistently applied 'at the time of [the] alleged default.'"   *Scott*, 567 F.3d at 581 n.7; *accord Walker v. Attorney Gen. of U.S.*, 167 F.3d 1339, 1344-45 (10th Cir.), *cert. denied*, 528 U.S. 987 (1999); *see also Fautenberry v. Mitchell*, 515 F.3d 614, 641 (6th Cir.),

21

*cert. denied*, 129 S. Ct. 412 (2008). A petitioner cannot have notice of an interpretation issued after the fact.

4. The multi-dimensional conflicts created by the divided decision below exacerbate the conflict and confusion that already pervades the adequacy inquiry. *See, e.g.,* Recent Case, *Federal Courts—Habeas Corpus—Fourth Circuit Fails To Reach a Judgment on the Merits of a Constitutional Claim Based on the State Procedural Default Doctrine.—McNeill v. Polk, 476 F.3d 206 (4th Cir. 2007)*, 120 Harv. L. Rev. 2246, 2246 (2007) (noting existing "confusion as to when a state procedural default is an adequate state ground to preclude federal habeas review"); *cf. Beard*, 130 S. Ct. at 620 (Kennedy, J., joined by Thomas, J., concurring) (observing that the level of specificity or consistency that an evolving body of state law must provide in order to establish an adequate default rule "should be addressed"). This case provides an ideal vehicle to resolve these conflicts of authority and provide needed guidance in this important area.

### C. The Grant Of Certiorari In *Walker v. Martin* Heightens The Need For Review Here

The Court's grant of certiorari in *Walker v. Martin*, No. 09-996, indicates that this Court already appreciates the need for guidance in this area. Granting certiorari in this case—in complement to *Walker*—would provide the Court with the best opportunity to consider the full dimensions of the problems currently vexing the lower courts in conducting the adequacy inquiry and to provide the needed guidance. The grant in *Walker* thus only bolsters the importance of plenary review in this case.

In *Walker*, the Ninth Circuit reversed the district court's determination that California's case-made

22

timeliness rule—which calls for inmates to file habeas claims without "substantial delay"—was adequate and thus precluded federal habeas review of claims filed in state court *five years* after a case became final on direct review. The Ninth Circuit held that the state courts had not "firmly defined" the timeliness rule and that the State had not met its burden in showing that the rule was "consistently applied." *Martin v. Walker*, 357 F. App'x 793, 794 (9th Cir. 2010), *cert. granted*, No. 09-996, 2010 WL 621406 (U.S. June 21, 2010).

In its petition for certiorari, the State—which repeatedly touted "the need to further clarify the rules relating to the 'adequacy' of state procedural bars"— sought to portray the Ninth Circuit's decision as the poster child for what is *wrong* with the adequacy doctrine. Pet. at 6, *Walker*, No. 09-996 (Feb. 17, 2010). In addition, the State argued that its rule had a discretionary component and that the Ninth Circuit had improperly nullified that rule. *Id.* at 13-14, 16. The State's amicus—which likewise observed that "[t]his Court's jurisprudence of 'adequate state grounds' has been plagued by imprecise language"—went further and argued that this Court should "consider whether to scrap the 'adequacy' inquiry in habeas altogether." Br. Amicus Curiae of the Criminal Justice Legal Foundation in Support of Pet. for Writ of Certiorari (CJLF Br.) at 9, 15, *Walker*, No. 09-996 (Mar. 24, 2010).

While they both involve application of the adequacy inquiry, there are important differences between this case and *Walker*. For example, *Walker* concerns the adequacy of a judge-made rule that is overtly discretionary. This case involves a written state procedural rule that is not discretionary in the relevant sense, and that was applied by state courts in a manner

23

favorable to defendants before the relevant period. (Of course there is some discretion associated with determining whether a prisoner was without fault, but the State does not deny that Maples was without fault here.) Even if States should be allowed to have rules that are clear but discretionary, this Court's precedents recognize that federal review of alleged constitutional violations should not be foreclosed on the basis of state rules—like the one at issue here—that are purportedly objective but capriciously applied.

Likewise, whereas the Ninth Circuit based its inadequacy finding largely on the state courts' failure to *define* the default rule, this case involves the adequacy of a procedural rule that on its face appears to authorize an untimely appeal when the inmate is not at fault and has been interpreted by courts to allow untimely appeals in analogous circumstances. In that respect, this case also raises the concern that even the amicus in *Walker* seemed to recognize would be an appropriate ground for refusing to enforce a state rule: when doing so would amount to a "procedural trap" for the unwary. CJLF Br. 8. And of course, whereas the inmate in *Walker* waited five years to file his state habeas petition, the inmate here sought relief as soon as he learned of the denial of his petition.

If *Walker*, to some, illustrates how federal courts can apply the adequacy inquiry in a way that unduly *intrudes* on the sovereignty of the States, then this case underscores why the doctrine is needed to ensure that inmates are not arbitrarily deprived of federal habeas review of constitutional claims. This case therefore would be an ideal companion to *Walker*. And granting review in this case, as well as *Walker*, would thus permit the Court more fully to consider the range

24

of issues currently surrounding the adequacy inquiry and to ensure that the Court fully accounts for the legitimate uses of the doctrine in federal habeas.

## II. THE DIVIDED ELEVENTH CIRCUIT'S DECISION THAT MAPLES FAILED TO SHOW CAUSE WARRANTS REVIEW

Even when a state default rule is adequate, the federal courts may excuse a default where the prisoner had "cause" for not following the state procedural rule and suffered prejudice. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *see also House v. Bell*, 547 U.S. 518, 536 (2006). The divided Eleventh Circuit decision's conclusion that Maples failed to establish cause independently warrants review.[4]

### A. The Eleventh Circuit's Decision Conflicts With *Jones v. Flowers* And Other Precedents

As the Court has stated, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense" precipitated the default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The divided Eleventh Circuit held that Maples failed to establish cause only "because there is no right to post-conviction counsel." App.17a. In focusing solely on whether the actions of Maples's *attorneys* constituted cause, the Eleventh Circuit departed from this Court's cases by failing to consider whether there were other external factors precipitating the alleged default—

---

[4] Because the Eleventh Circuit held that Maples did not establish cause, it did not consider prejudice. Given the grave consequences of any default, however, prejudice is undeniable. *See, e.g., Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000).

25

including the State's own failure to provide constitutionally adequate notice.[5]

In *Jones v. Flowers*, 547 U.S. 220 (2006), this Court considered the due process requirements when a State mails notice to an individual concerning a deprivation of property in connection with a tax forfeiture and the notice is returned unclaimed. The Court, in a decision by the Chief Justice, held that "[w]e do not think that a person who actually desired to inform [a recipient] would do nothing when a certified letter sent to the [recipient] is returned unclaimed." *Id.* at 229. As the Court explained, when receiving an unclaimed letter, it is not enough for the State just to "shrug [its] shoulders … and say 'I tried.'" *Id.* Rather, given the interests at stake—in *Jones*, "such an important and irreversible prospect as the loss of a house," *id.* at 230—the State must try again through a different means. To say the least, due process requires no less when it comes to the "important and irreversible prospect," *id.*, of extinguishing a *life*.

---

[5] Although respondent conceded below that this argument was raised in Maples's opening brief, respondent argued that it was somehow waived at oral argument. Resp. Mot. To Review Oral Argument Record and/or Transcript at 2. That is incorrect. Maples's counsel observed during oral argument that he was not trying to shift the blame to the State, but in a case where there is plenty of blame to go around (except to petitioner, who all agree was blameless) that hardly amounts to a renunciation of the argument that the State's own conduct must be taken into account in determining whether cause exists. Moreover, because this argument is included within petitioner's overarching position that he demonstrated cause for any default, this Court undeniably has the authority to address it. *See Yee v. City of Escondido*, 503 U.S. 519, 535 (1992); *Carlson v. Green*, 446 U.S. 14, 17, n.2 (1980). And there are compelling reasons for the Court to do so.

26

Here, as in *Jones*, the State received copies of the unopened orders sent to both *pro bono* attorneys and the envelopes plainly indicated that they were not delivered and that an attorney had left the firm. App.34a-35a, 223a, 227a. Yet, as in *Jones*, upon receiving the unopened and unclaimed envelopes individually addressed to Maples's *pro bono* attorneys of record, the state court clerk did "nothing." *Jones*, 547 U.S. at 234. It follows *a fortiori* from *Jones* that—wholly apart from the failures of Maples's counsel—the State's failure to take further action to provide Maples with notice was constitutionally inadequate. As in *Jones*, the state clerk's "[f]ailure to follow up [was] unreasonable, despite the fact that the letters were reasonably calculated to reach their intended recipients when delivered to the postman." *Id.* at 229.

This due process violation was not excused by the fact that the clerk sent notice to Maples's local counsel. The State is well aware that out-of-state counsel typically serve as the primary—if not sole—counsel to Alabama's substantial death row population. The State recently advised this Court that 75% of Alabama's death row inmates are represented during post-conviction proceedings by "out-of-state law firms and/or public interest groups." Br. in Opp. at 11, *Barbour v. Allen*, No 06-10605 (May 10, 2007) (citation omitted), *cert. denied*, 551 U.S. 1134 (2007). Alabama has acknowledged that it has affirmatively chosen "to rely on the efforts of typically well-funded out-of-town volunteers" to provide post-conviction representation to the State's death row inmates. *Id.* at 23.

Furthermore, due process "require[s] the government to consider unique information about an intended recipient regardless of whether a statutory

27

scheme is reasonably calculated to provide notice in the ordinary case." *Jones*, 547 U.S. at 230. The Eleventh Circuit decided this case on the premise that Maples's *pro bono* counsel were "attorneys of record and had performed all of the substantive work on Maples's Rule 32 case." App.3a. When the State learned that its attempt to notify those attorneys had failed, the state court clerk was obligated to do *something*—such as attempting to contact the pro bono attorneys or their former law firm through other means, or reaching out to local counsel or even Maples himself. The State certainly had no difficulty contacting Maples directly once the appeal period ran. Its failure to do so earlier deprived petitioner of due process and establishes cause to excuse any procedural default.

## B. The Eleventh Circuit's Decision Goes Well Beyond The Reach Of *Coleman v. Thompson*

Even assuming that the State's own conduct failed to establish cause under this Court's precedents, the Eleventh Circuit erred in holding that this Court's decision in *Coleman v. Thompson* categorically bars a finding of cause. App.17a. *Coleman* rests on agency principles that are inapplicable when an attorney is not functioning as his client's agent, as other courts have recognized and members of this Court recently confirmed in *Holland v. Florida*, No. 09-5327, 2010 WL 2346549, at *18 (U.S. June 14, 2010).

*Coleman* held that, during postconviction proceedings when the Sixth Amendment right to counsel does not attach, "[a]ttorney *ignorance* or *inadvertence* is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" 501 U.S. at 753

28

(emphasis added) (citation omitted). As the Court explained, this principle is rooted in "well-settled principles of agency law" attributing the negligence of an agent to his principal. *Id.* at 754; *see Holland*, 2010 WL 2346549, at *20 n.4 (Scalia, J., dissenting) ("*Coleman* ... merely applied, the already established principle that an attorney's acts are his clients.").

It is equally well-settled, however, that a client is not constructively responsible for an agent's misconduct after the agency relationship has ended, or after the supposed agent has committed a serious breach of loyalty. *See* Restatement (Second) of Agency ch. 5 scope note (1958); *id.* § 112; Restatement (Third) of Agency § 5.04 (2006). Thus, the rule of *Coleman* by its own terms does not extend to such situations.

In the context of equitable tolling in federal habeas, this Court has held that a missed deadline may be forgiven if "some extraordinary circumstance stood in [the petitioner's] way," *Holland*, 2010 WL 2346549, at *1 (citation omitted), but has explained that a client is generally responsible for garden-variety negligence by his attorney, *see id.*; *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (citing *Coleman*). As Justice Alito recently explained in *Holland*, however, those principles do not apply if the petitioner's "attorney essentially 'abandoned' him." 2010 WL 2346549, at *18 (Alito, J., concurring in part and concurring in the judgment). "Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." *Id.*

Although the procedural default doctrine implicates considerations of federalism and comity not present in *Holland*, there is no basis to extend *Coleman* to

29

attorney malfeasance that falls outside of the agency relationship. Indeed, even the dissenters in *Holland* agreed with the principle that attorney error would not be attributable to petitioner (under *Coleman* or *Lawrence*) if the circumstances "ended the agency relationship before the relevant window." *Id.* at \*22 n.9 (Scalia, J., joined by Thomas, J., in relevant part, dissenting). And in his concurring opinion, Justice Alito emphasized that attorney abandonment is fundamentally different. *Id.* at \*18. At the time of the events at issue, Maples's *pro bono* attorneys of record had left Sullivan & Cromwell without providing notice to the Alabama trial court or substituting counsel, and thus were no longer functioning as his agent.[6]

Federal and state courts have recognized that a procedural default precipitated by a petitioner's "utter abandonment" by his attorneys would "constitute[] extraordinary circumstances *external* to the party's own conduct" and thus constitute cause. *Rouse v. Lee*, 339 F.3d 238, 250 n.14 (4th Cir. 2003) (en banc) (citation omitted), *cert. denied*, 541 U.S. 905 (2004); *see also Baldayaque v. United States*, 338 F.3d 145, 154 (2d Cir. 2003) (Jacobs, J., concurring) ("[W]hen an 'agent acts in a manner completely adverse to the principal's interest,' the 'principal is not charged with [the] agent's misdeeds.'") (citation omitted); *Manning v. Foster*, 224

---

[6] As the Eleventh Circuit stated, "arrangements had been made within the firm for other attorneys at Sullivan & Cromwell to take over representation of Maples," but "none of Maples's attorneys filed anything with the Alabama trial court reflecting this change." App.4a; *see also* App.257a-58a. And local counsel's only involvement was to admit Ingen-Housz and Munanka. App.257a. So Maples was left without counsel in his Rule 32 proceeding—despite his belief to the contrary—and thus abandoned.

30

F.3d 1129, 1135 (9th Cir. 2000) (attorney's errors not attributable to client when attorney "does not actually represent the client"); *Jamison v. Lockhart*, 975 F.2d 1377, 1380 (8th Cir. 1992) (acknowledging that attorney's alleged conflict-of-interest would be "external" cause for default because attorney would have "effectively ceased to be [the client's] agent"). The Eleventh Circuit's holding that Maples failed to show cause is inconsistent with those decisions.

It is also inconsistent with the decisions of numerous state courts holding that due process entitles a habeas petitioner to an out-of-time filing when a missed deadline is due to the abandonment of counsel. *See Puckett v. State*, 834 So. 2d 676, 681 (Miss. 2002) ("[W]e do not base [equitable relief] on mere excusable neglect or ignorance by Puckett or his counsel, but upon our recognition that the actions of former counsel were such as to rise to the deprivation of fundamental due process."); *Williams v. State*, 44 S.W.3d 464, 469 (Tenn. 2001) ("If a defendant erroneously believes that counsel is continuing to represent him or her, then the defendant is essentially precluded from pursuing certain remedies independently."). Similarly, the Arkansas Supreme Court found "cause" to excuse a petitioner's procedural default after his attorney ceased representation but "had not taken any formal steps to withdraw as the attorney of record." *Porter v. State*, 2 S.W.3d 73, 74 (Ark. 1999). As the *Porter* court recognized, it is fundamentally unfair "to require an inmate on death row to abide by the stringent filing deadlines when he was under the [false] impression he was represented by counsel." *Id.* at 75.

Worse yet, the Eleventh Circuit's decision has widened an entrenched circuit split on whether the

31

Due Process Clause permits a litigant in a civil proceeding (in which no Sixth Amendment right to counsel attaches) to be held responsible for attorney misconduct that renders a proceeding fundamentally unfair. Several circuits have concluded that counsel's performance in a deportation proceeding may be "'so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause.'" *Saleh v. United States Dep't of Justice*, 962 F.2d 234, 241 (2d Cir. 1992) (citation omitted); *see also Zeru v. Gonzales*, 503 F.3d 59, 72 (1st Cir. 2007); *Fadiga v. Attorney Gen. of U.S.*, 488 F.3d 142, 155 (3d Cir. 2007); *Denko v. INS*, 351 F.3d 717, 723-24 (6th Cir. 2003); *Nehad v. Mukasey*, 535 F.3d 962, 967 (9th Cir. 2008); *Tang v. Ashcroft*, 354 F.3d 1192, 1196 (10th Cir. 2003). Two other circuits have held the opposite. *Rafiyev v. Mukasey*, 536 F.3d 853, 861 (8th Cir. 2008). Although this case does not involve a deportation proceeding, the same due process principles apply to post-conviction proceedings. *See Ake v. Oklahoma*, 470 U.S. 68, 76-77 (1985).

As the dissent explained (App.31a), the Eleventh Circuit's decision also conflicts with the decisions of this Court emphasizing that "[h]abeas corpus is 'governed by equitable principles.'" *Munaf v. Geren*, 128 S. Ct. 2207, 2200 (2008) (citation omitted); *see also Holland*, 2010 WL 2346549, at *11. As the dissent stated, denying an indigent death-row prisoner access to federal courts with respect to serious ineffective assistance counsel claims because of a missed deadline that all agree was not his fault is "'fundamentally unjust'" and incompatible with the "equitable principles" on which habeas corpus is grounded, if not the Constitution itself. App.32a (citation omitted); *see*

App.31a n.4. Those principles bolster the logical conclusion that *Coleman* does not control here.

## III. THE QUESTIONS PRESENTED ARE EXCEPTIONALLY IMPORTANT

The questions presented here are vitally important and frequently recurring. One study commissioned by the Department of Justice concluded that asserted procedural defaults were invoked to bar claims in some 42% of capital habeas cases brought by state prisoners. *See* Nancy J. King et al., *Final Technical Report: Habeas Litigation in U.S. District Courts* 48 (2007). The significance of that statistic is underscored by the fact that "a substantial proportion of [state] prisoners succeed in having their death sentences vacated in habeas corpus proceedings." *Murray v. Giarratano*, 492 U.S. 1, 14 (1989) (Kennedy, J., concurring in the judgment). But of course, a state prisoner cannot secure any relief in federal court if his claim is barred by the procedural default doctrine.

As this Court has emphasized, important state interests are served when States enforce well-established procedural rules against petitioners who cannot show cause for their noncompliance. *See, e.g., Carrier*, 477 U.S. at 494-95. But a regime in which *ad hoc* rules reconcilable only through *post hoc* ingenuity are permitted to bar access to federal court, or an individual may be put to death without any federal review of serious constitutional claims for reasons that all concede were not his fault, may call into question the legitimacy of a system of capital punishment itself and "transgress[] the constitutional commitment to decency and restraint." *Kennedy v. Louisiana*, 128 S. Ct. 2641, 2650 (2008).

33

These risks are particularly acute here where—unique among all other states—Alabama does not provide *any* right to post-conviction counsel at the post-conviction stage. *See* Eric M. Freedman, *Giarratano is a Scarecrow: The Right to Counsel in State Capital Postconviction Proceedings*, 91 Cornell L. Rev. 1079, 1081 (2003). Alabama understands that its capital prisoners are routinely forced to rely on the assistance of "'out-of-state law firms and/or public interest groups.'" Br. in Opp. at 11, *Barbour*, No. 06-10605 (May 10, 2007) (citation omitted). Under the decision below, however, even those prisoners who secure counsel may be subjected to insuperable and unforeseen procedural barriers that will further diminish meaningful access to federal court. Moreover, when a prisoner runs afoul of such barriers for reasons that all agree are not his fault, he will have no recourse—even if the State itself is involved in the alleged default. The potential for these rulings to work manifest injustice is clear and warrants review.

## CONCLUSION

The petition for a writ of certiorari should be granted.

34

Respectfully submitted,

GREGORY G. GARRE
 *Counsel of Record*
J. SCOTT BALLENGER
DEREK D. SMITH
MICHAEL E. BERN
LATHAM & WATKINS LLP
555 11th Street, NW,
 Suite 1000
Washington, DC 20004
(202) 637-2207
gregory.garre@lw.com

July 9, 2010   *Counsel for Petitioner*