IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUAN CARLOS ALVAREZ, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:09-CV-03040 |
| | § | **DEATH PENALTY CASE** |
| WILLIAM STEPHENS, | § | ECF |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

**RESPONDENT STEPHENS'S SUPPLEMENTAL BRIEF
WITH BRIEF IN SUPPORT**

Petitioner, Juan Carlos Alvarez (Alvarez),[1] participated in two gang-related drive-by shootings that resulted in the deaths of Michael Aguirre and Jose Varela. A Texas jury subsequently convicted Alvarez of capital murder and sentenced him to die. Following unsuccessful direct appeal and initial writ proceedings in state court, Alvarez sought federal habeas relief in this Court pursuant to 28 U.S.C. §§ 2254 and 2241. Over the Director's opposition (ECF[2]

---

[1] Respondent William Stephens will be referred to as "the Director."

[2] "ECF" refers to entries to this Court's electronic docket sheet, available on PACER. "SX" refers to the State's trial exhibits. "CR" refers to the clerk's record of pleadings and documents filed during Alvarez's capital-murder trial. "RR" refers to the reporter's record of transcribed trial proceedings. "SHCR-01, -02, & -04" refer to the clerk's record of pleadings and documents filed during Alvarez's first, second, third state habeas proceedings, respectively (the -03 writ was a petition for mandamus). "Supp. SHCR-01" refers to the supplemental writ package that the trial court forwarded to the CCA in conjunction with Alvarez's first state habeas

Nos. 9, 33, 34, 36.), this Court twice stayed federal proceedings to allow Alvarez to return to state court and attempt to exhaust previously unpresented claims. ECF Nos. 12, 35. Both of Alvarez's subsequent state habeas applications were dismissed by the Court of Criminal Appeals (CCA) as an abuse of the writ. *Ex parte Alvarez*, No. 62,426-02 (Tex. Crim. App. Sept. 15, 2010) (per curiam) (unpublished); *Ex parte Alvarez*, No. 62,426-04 (Tex. Crim. App. April 29, 2015) (per curiam) (unpublished).

Because the CCA dismissed Alvarez's subsequent state applications as an abuse of the writ, the procedural bar to federal review of these previously unpresented claims remains intact. ECF No. 22 at 31-40. Indeed, the only appreciable result of these two stays is that Alvarez's claims are now actually defaulted instead of merely prospectively defaulted.

In supplemental briefing, Alvarez contends that many of his claims are not unexhausted and defaulted because the state procedural bar was not adequate and independent or they were presented in conjunction with his first state habeas application or direct appeal. ECF No. 59 at 11 (incorporating by reference ECF No. 31). Alternatively, Alvarez contends that he can evade the procedural bar on his ineffective-assistance-of-counsel (IATC) claims under the

---

proceeding. All references are preceded by volume number and followed by page number where applicable.

Supreme Court's holdings in *Martinez v. Ryan*[3] and *Trevino v. Thaler*[4] because he received ineffective assistance of state habeas counsel (IASHC). ECF No. 59 at 11-59. But Alvarez's arguments to the contrary are unavailing, and the claims in question are unequivocally procedurally defaulted. And even if *Martinez* or *Trevino* were somehow applicable, Alvarez has not shown that his initial state habeas counsel was ineffective or that his underlying IATC claims are substantial; thus, he is not be entitled to relief under the *Martinez* and *Trevino* holdings. The Court should therefore refuse to allow Alvarez to circumvent his procedural defaults and deny any federal habeas corpus relief.

## I.   Procedural History

Alvarez was convicted and sentenced to death by the 338th District Court of Harris County, Texas. 1A CR 4, 486, 504-05; 17 RR 5. Alvarez appealed his conviction and sentence to the CCA, which affirmed in an unpublished opinion. *Alvarez v. State*, No. 73,648 slip op. (Tex. Crim. App. Oct. 30, 2002). Alvarez did not file a petition for a writ of certiorari.

Alvarez also filed a state application for a post-conviction writ of habeas corpus. 1 SHCR-01 2. In conjunction with this proceeding, he also filed a supplemental brief, further addressing previously-raised claims based on the

---

[3]     132 S. Ct. 1309 (2012).

[4]     133 S. Ct. 1911 (2013).

Vienna Convention on Consular Relations (VCCR). Supp. SHCR-01 2-32. Considering the possibility that this supplement might constitute a successive state habeas application, the trial court sent it to the CCA for evaluation. *Id*. at 234-35. But the CCA found that the supplement only offered new precedent and did not raise new claims. *Ex parte Alvarez*, No. 62,426-01, Order of June 6, 2007. Consequently, the CCA ordered the trial court to consider the supplement to the extent appropriate. *Id*.

The trial court subsequently made findings and conclusions, and the CCA entered an order adopting the majority of the findings and conclusions and denying state habeas relief. *Ex parte Alvarez*, No. 62,426-01 (Tex. Crim. App. Sept. 24, 2008) (per curiam) (unpublished).

Alvarez filed a skeletal federal habeas petition on September 18, 2009. ECF No. 1. Alvarez also received permission from the Court to file an amended petition. ECF No. 4. But before the amended petition was due, Alvarez sought and received a stay from this Court in order to return to state court for a second time and exhaust four new claims. ECF No. 5, 12. The CCA denied Alvarez's subsequent application as an abuse of the writ, and Alvarez was forced to resubmit his federal habeas petition. *Ex parte Alvarez*, No. 62,426-02 ("[W]e find that the allegations fail to satisfy the requirements of Article 11.071, [Section] 5(a). Accordingly, the application is dismissed as an abuse of the

writ."); ECF No. 18. The Director answered, and Alvarez replied. ECF Nos. 22, 31.

The Court then issued a second order staying this case so that Alvarez could again return to state court the purpose of filing a subsequent state habeas application arguing that he is entitled to relief from various procedural bars under the CCA's decision in *Ex parte Medina*[5] and the Supreme Court's holdings in *Martinez* and *Trevino*. ECF Nos. 35, 37. The Director opposed giving Alvarez a third opportunity to pursue state habeas relief. ECF Nos. 33, 34, 36.

In state court, Alvarez refrained from filing his subsequent state writ application while he applied for investigative funding from the trial court.[6] ECF No. 43-1. Alvarez then attempted to appeal the trial court's unappealable order denying funding. *Alvarez v. State*, No. AP-77,035 (Tex. Crim. App. May 7, 2014) (per curiam) (unpublished) ("Appellant's appeal is not permitted. Appellant does not cite, nor have we found, any constitutional or statutory provision or any rule that would authorize this appeal from the trial court's

---

[5]   361 S.W.3d 633 (Tex. Crim. App. 2011).

[6]   State law does not provide for the appointment of counsel or expenses to investigate potential grounds for filing a successive habeas application. *See* Tex. Code Crim. Proc. art. 11.071 §§ 2, 5; *see also Ex parte Blue*, 230 S.W.3d 151, 165-67 (Tex. Crim. App. 2007) ("That is the hurdle the Legislature has deemed appropriate for the subsequent applicant who has, for whatever reason, bypassed his opportunity to avail himself of the resources to which he would have been entitled had he raised the issue in an initial writ application, when it was factually and legally available to him.").

order."). Alvarez also filed a petition a writ of mandamus in an attempt to secure the same funding. *Ex parte Alvarez*, No. 62,426-03 (Tex. Crim. App. Sept. 17, 2014) (denying leave to file a petition for mandamus without written order).

After a year had passed without Alvarez filing his state habeas application, the Director moved the Court to reopen Alvarez's federal case. ECF No. 42. The Court declined to reopen the case but instead directed Alvarez to file a state habeas application or a motion to reopen within thirty days of any action denying relief on his then-pending mandamus motion. ECF No. 44. Once Alvarez actually filed his state habeas application on October 16, 2014—sixteen months after the Court granted a stay—the CCA dismissed it, finding that it constituted an abuse of the writ. 1 SHCR-04 at 1 (application); ECF No. 35 (order staying case on June 6, 2013); *Ex parte Alvarez*, No. 62,426-04 ("We have reviewed the application and find that Applicant has failed to satisfy the requirements of Article 11.071, [Section] 5(a). Accordingly, we dismiss the application as an abuse of the writ without considering the merits of the claims.").

After the dismissal of his second subsequent state habeas application, Alvarez moved to reopen his federal case. ECF Nos. 47, 48. The Court entered a scheduling order directing the parties to file supplemental briefs. ECF No.

49. Alvarez recently filed his supplemental brief, and the Director now responds. ECF No. 59.

## ARGUMENT

### I.   Many Alvarez's Claims Are Procedurally Defaulted.

Many of Alvarez's claims are procedurally defaulted as a consequence of his failure to present them to the state court in a procedurally correct manner. It is well-settled that federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989). Thus, federal review of a habeas claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default.[7] *Coleman*, 501 U.S. at 729; *Harris*, 489 U.S. at 265; *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995).

Concerning the case-at-bar, Texas Code of Criminal Procedure Article 11.071 Section 5(a) prohibits a successive state habeas corpus application except in limited circumstances. *Williams v. Thaler*, 602 F.3d 291, 306 (5th Cir.

---

[7]     A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a defendant's claim. *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

2010) (recognizing Section 5 bars consideration on the merits of new claims contained in a subsequent state habeas corpus application unless either: (1) the new claims could not have been presented in a previous application because the legal or factual basis for the new claims were unavailable at the time the previous application was filed; (2) by a preponderance of the evidence, but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt; or (3) by clear and convincing evidence, but for a violation of the United States Constitution, no rational juror would have answered in the state's favor one or more of the capital sentencing special issues). Thus, the state court's dismissal of claims as an abuse of the writ precludes federal habeas relief as a matter of law. *Balentine v. Thaler*, 626 F.3d 842, 857 (5th Cir. 2010) (recognizing that Section 5 is an adequate state law ground for rejecting a claim); *Aguilar v. Dretke*, 428 F.3d 526, 533 (5th Cir. 2005) ("This court has consistently held that Texas' abuse-of-writ rule is ordinarily an 'adequate and independent' procedural ground on which to base a procedural default ruling."); *Matchett v. Dretke*, 380 F.3d 844, 848 (5th Cir. 2004) ("Texas' abuse-of-the-writ rule is ordinarily an 'adequate and independent' procedural ground on which to base a procedural default ruling."); *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004) ("the Texas abuse of the writ doctrine is an adequate ground for considering a claim procedurally defaulted."); *Barrientes v. Johnson*, 221 F.3d 741, 758-59 (5th Cir.

2000); *Fuller v. Johnson*, 158 F.3d 903, 906 (5th Cir. 1998); *see also Moore v. Texas*, 535 U.S. 1044, 1047-48 (2002) (Scalia, J., dissenting) (recognizing Texas abuse-of-the-writ statute as independent and adequate state ground).

A petitioner may overcome the state procedural bar only "by demonstrating (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his claims will result in a fundamental miscarriage of justice." *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997). A fundamental miscarriage of justice occurs when the petitioner is "'actually innocent' of the offense underlying his conviction or 'actually innocent' of the death penalty." *Roberts v. Thaler*, 681 F.3d 597, 605 (5th Cir. 2012). As noted above, the Supreme Court expanded the notion of cause to include IASHC in *Martinez* and found *Martinez* applicable to Texas cases in *Trevino*.

On direct appeal, Alvarez raised the following thirty-nine grounds for relief:

(1)     "The district court erred when it allow[ed] into evidence a coerced and involuntary written statement allegedly made by [Alvarez.]"

(2)     "The district court erred when it allow[ed] into evidence a coerced and involuntary oral (video) statement allegedly made by [Alvarez.]"

(3)     "The trial court erred by permitting the introduction of weapons recovered from [Alvarez's] home[.]"

(4) "The trial court erred by allowing into evidence State's Exhibit 31, the cumulative photograph of the body of Michael Aguirre which was not relevant or the probable value [of which] was substantially outweighed by unfair prejudice[.]"

(5) "The trial court erred by allowing into evidence State's Exhibits 87 and 88, cumulative and unduly gruesome photographs of the deceased which were not relevant or the probable value [of which] was substantially outweighed by unfair prejudice[.]"

(6) "The trial court erred by allowing into evidence State's Exhibit 96, cumulative and unduly gruesome photographs of the deceased which were not relevant or the probable value [of which] was substantially outweighed by unfair prejudice[.]"

(7) "The trial court erred by allowing into evidence State's Exhibits 133A, 133B, 133C, 133D, 133E, 133G, [and] 133H, which were allegedly photographs of [Alvarez] throwing gang signs which were not relevant or the probable value [of which] was substantially outweighed by unfair prejudice[.]"

(8) "The trial court erred by commenting on the weight of the evidence by commenting on the credibility of witness Brandy Varela on two occasions[.]

(9) "The trial court erred by commenting on the weight of the evidence by refusing to rules on a valid objection and commenting on the effectiveness of the trial prosecutor[.]

(10) "The trial court erred by commenting on the weight of the evidence by commenting on the credibility of witness George Alderete on two occasions[.]

(11) "The trial court erred by denying [Alvarez]'s motion for mistrial to the prosecutorial misconduct of creating before the jury a scene of extremely prejudicial emotion by showing a gruesome photograph of the deceased to his sister when such display had absolutely no probative value[.]"

(12) "The trial court erred by overruling [Alvarez]'s hearsay objections to [the] prosecutor's bad faith question to George Alderete as to

whether Juan Sibrian had identified [Alvarez] which resulted in prosecutorial misconduct and denied [Alvarez] a fair trial and therefore his right to due process[.]"

(13) "The trial court erred by improperly limiting [Alvarez]'s cross-examination of Miguel Reyes by not allowing into evidence a prior inconsistent statement, prior inconsistent testimony, and plea papers of Miguel Reyes which denied [Alvarez] a fair trial and due process of law[.]"

(14) The trial court erred by improperly limiting [Alvarez]'s cross-examination of Beth Kreuzer-Halling by not allowing into evidence the statement of Jessica Trevino as a declaration against interest which denied [Alvarez] a fair trial and due process of law[.]"

(15) "The trial court committed reversible error in admitting, without competent evidence, testimony concerning comparison between a stain card from which blood was identified as a match to alleged blood on both weapons[.]""

(16) "The trial court erred by overruling [Alvarez]'s objections to the medical examiner's testimony about the autopsy of Adrian Aguirre which violated [Alvarez]'s right to a fair trial and due process[.]"

(17) "[Alvarez]'s *Brady*[8] objections should have been sustained when trial counsel was not allowed to effectively cross-examine a key witness with exculpatory information[.]"

(18) "The trial court erred by denying [Alvarez]'s request for a jury charge on the lesser included offense of murder[.]"

(19) "The trial court erred by denying [Alvarez]'s request for a charge on the voluntariness of the alleged confession[.]"

(20) "Improper prosecutorial jury argument by striking at [Alvarez] over trial counsel's shoulder on three occasions violated [Alvarez]'s rights to a fair trial and due process of law[.]"

---

8      [*Brady v. Maryland*, 373 U.S. 83 (1963).]

(21)   "Improper prosecutorial argument by attacking [Alvarez] in opening statement with a statement that people like him just don't care violated [Alvarez]'s rights to a fair trial and due process of law[.]"

(22)   "Improper prosecutorial jury argument by arguing outside the record and threatening the jury with sequestration violated [Alvarez]'s rights to a fair trial and due process of law[.]"

(23)   "Improper prosecutorial jury argument by arguing outside the record that the jurors may be shot by one of [Alvarez]'s buddies violated [Alvarez]'s rights to a fair trial and due process of law[.]"

(24)   "Improper prosecutorial jury argument of personal opinions of the evidence was outside the record and violated [Alvarez]'s rights to a fair trial and due process of law[.]"

(25)   "After the jury received the charge and began deliberations the trial court erred by having an improper communication with the jury which amounted to additional instructions by the court[.]"

(26)   "The trial court erred by denying [Alvarez]'s motion to set aside indictment and quash indictment on the basis of a lack of Hispanic representation on the grand jury[.]"

(27)   "The trial court erred in denying [Alvarez]'s motion to suppress based on a violation of the international treaty [.]"

(28)   "The trial court's denial of [Alvarez]'s motion for mistrial to the improper offer of the alleged clothing of extraneous victim Hugo Perez violated [Alvarez]'s right to a fair punishment hearing and due process[.]"

(29)   "The trial court's admission of extraneous bad acts testimony violated Rule 403, Texas Rules of Criminal Evidence[.]"

(30)   "The trial court erred in overruling [Alvarez]'s motion for mistrial to the hearsay statement of Juan Nevarez concerning someone having a rifle which denied [Alvarez] a fair punishment hearing and due process[.]"

(31)    "The trial court erred by allowing into evidence hearsay testimony from a probation officer concerning [Alvarez] being on probation at the time of this offense[.]"

(32)    "Improper prosecutorial punishment argument by attacking [Alvarez]'s race violated [Alvarez]'s rights to a fair trial and due process of law[.]"

(33)    "The trial court erred by overruling trial counsel's objections to and requested charge on special issue number 2 in the charge on punishment in that the charge given lessens the state's burden of proof[.]"

(34)    "The trial court's denial of [Alvarez]'s motion to challenge prospective juror Lamerle Forest deprived [Alvarez] of a fair trial and due process of law[.]"

(35)    "The trial court's denial of [Alvarez]'s motion to challenge prospective juror Jeffrey Lynn Sims deprived [Alvarez] of a fair trial and due process of law[.]"

(36)    "The trial court's denial of [Alvarez]'s motion to challenge prospective juror Otto Henry Powell deprived [Alvarez] of a fair trial and due process of law[.]"

(37)    "The trial court erred in denying [Alvarez]'s motion to declare the Texas capital sentencing scheme unconstitutional and motion to preclude imposition of the death penalty[.]"

(38)    "The trial court erred by denying [Alvarez]'s offer at the punishment hearing of testimony from Dr. Laval that age is a factor that has been found to relate to dangerousness[.]"

(39)    "The trial court erred by denying [Alvarez]'s motion for instructed verdict on the grounds that the evidence was insufficient to prove that the two alleged murders were committed during the same criminal transaction[.]"

*See* Appellant's Brief at ii-x (table of contents) (formatting omitted). As noted above, the CCA rejected Alvarez's claims for relief and affirmed Alvarez's conviction and sentence. *Alvarez v. State*, No. 73,648, slip op.

In his first state habeas application, submitted by original state habeas counsel Leslie Ribnik and Susan Crump, Alvarez raised the following three claims:

(1) "Article 37.071, [Texas Code of Criminal Procedure] is unconstitutional in violation of [Alvarez]'s right to due process under the Fifth and Fourteenth Amendments and in violation of the notice and jury trial guarantees of the Sixth Amendment[.]"

(2) "The State violated Article 36 of the Vienna Convention in the arrest and conviction of [Alvarez] and [Alvarez] is entitled to a new trial[.]"

(3) [Alvarez] was denied effective assistance of counsel where trial counsel failed to challenge the admissibility of evidence obtained in violation of the Vienna Treaty[.]"

SHCR-01 2-29 (formatting omitted).

In a supplemental brief presented during his first state habeas proceedings, Alvarez submitted further briefing on his VCCR claims. Supp. SHCR-01 2-32. The trial court originally sent this supplement to the CCA, thinking that it might constitute a successive state habeas application. *Id.* at 234-35. But the CCA found that the supplement was not successive and directed the trial court to consider it as appropriate. *Ex parte Alvarez*, No. 62,426-01, Order of June 6, 2007, at 2.

During the pendency of his first state habeas application, current federal habeas counsel began representing Alvarez after original state habeas counsel fell ill. New counsel filed a motion to withdraw Alvarez's initial writ. 4 SHCR-01 235-309. However, it does not appear that this motion was ever granted. 2 SHCR 315 (unsigned order). Alvarez's new counsel also filed a reply brief alleging the VCCR violation adversely affected Alvarez's trial and appellate representation. 4-5 SHCR-01 390-1055.

After filing a skeletal petition, Alvarez sought and received leave from this Court to return to state court and attempt to exhaust previously unpresented claims. Alvarez, represented by instant federal habeas counsel, then filed a subsequent state habeas application that alleged:

(1)    "The State violated [Alvarez]'s constitutional rights under [*Brady*] and related cases by failing to disclose serious problems with the Houston Police Department Crime Lab generally and the DNA evidence used against him at trial[.]"

(2)    "[Alvarez]'s constitutional rights were violated when the prosecutor knowingly allowed Christy Kim to testify falsely[.]"

(3)    "[Alvarez]'s constitutional rights were violated by prosecutorial misconduct due to the malfeasance of Christy Kim, the DNA analysts who examined the evidence in [Alvarez]'s case and testified falsely at his trial, and by the State's failure to disclose substantial impeachment regarding [Kim][.]"

(4)    "The State engaged in prosecutorial misconduct in maintaining, utilizing, and relying upon evidence from a government agency lab, the Houston Police Department property room, the conditions of which were deplorable and therefore the product of which

inherently unrelable, in violation of [Alvarez]'s constitutional rights[.]"

1 SHCR-02 46, 59, 61, 66. The CCA dismissed this application as an abuse of the writ. *Ex parte Alvarez*, No. 62,426-02, slip op.

After filing an amended petition (answered by the Director), the Court granted Alvarez a second stay to return to state court. Alvarez filed a second subsequent state habeas application that raised eleven claims for relief:

(1) "Trial counsel rendered ineffective assistance of counsel throughout all phases of the pre-trial, trial, and post-trial proceedings in this case[. . .]"

(2) "Trial counsel was ineffective for failing to effectively litigate and otherwise address the violation of [Alvarez]'s rights under the [VCCR.]"

(3) "The State violated [Alvarez]'s right to consular assistance pursuant to Article 37 of the [VCCR] and [Alvarez] was prejudiced by the violation[.]"

(4) "The State violated [Alvarez]'s constitutional rights under [*Brady*] and related cases by failing to disclose serious problems with the Houston Police Department Crime Lab generally and the DNA evidence used against him at trial[.]"

(5) "[Alvarez]'s constitutional rights were violated when the prosecutor knowingly allowed Christy Kim to testify falsely[.]"

(6) "[Alvarez]'s constitutional rights were violated by prosecutorial misconduct due to the malfeasance of Christy Kim, the DNA analysts who examined the evidence in [Alvarez]'s case and testified falsely at his trial, and by the State's failure to disclose substantial impeachment regarding [Kim][.]"

(7) "The State engaged in prosecutorial misconduct in maintaining, utilizing, and relying upon evidence from a government agency lab,

the Houston Police Department property room, the conditions of which were deplorable and therefore the product of which inherently unreliable, in violation of [Alvarez]'s constitutional rights[.]"

(8)    "The trial court's refusal to conduct any pre-trial reliability determination regarding evidence of uncharged, unadjudicated, and/or other "bad act" evidence allegedly committed by [Alvarez], and the admission of such evidence, especially absent any requirement for a standard of proof, at the sentencing phase of [Alvarez]'s capital trial violated his constitutional rights[.]"

(9)    "The trial court's refusal to admit the custodial statements of c-defendant Jessica Trevino into evidence during the cross-examination of the police officer who obtained them from her, especially when such statements were highly probative on issues of guilt, culpability, and other related matters, violated [Alvarez]'s right to a fair trial[.]"

(10)    "The trial court's refusal to charge the jury on the lesser included offense of murder violated [Alvarez]'s right to fair trial."

(11)    "The trial court's admission of photos allegedly of [Alvarez] making so called "gang signs" deprived [Alvarez] of a fundamentally fair trial."

1 SHCR-04 2-4.

The CCA dismissed this application as an abuse of the writ, and Alvarez returned to federal court. *Ex parte Alvarez*, No. 62,426-04, slip op. at 2.

As noted above, many of the claims in Alvarez's amended petition are now procedurally defaulted because he did not raise them in a procedurally correct manner. Specifically (and shown in more detail below), Alvarez first

presented claims 4 (*Brady*), 5 (*Napue*[9]), 6 (prosecutorial misconduct claim concerning Kim), and 7 (prosecutorial misconduct claim concerning HPD store room) in his first subsequent state habeas application, which the CCA found to be an abuse of the writ. Furthermore, Alvarez did not properly raise claims 1 (free-standing IATC), aspects of claims 2 and 3 (the VCCR violation caused Alvarez's trial attorneys to ineffectively prosecute his case and resulted in him receiving ineffective assistance of appellate counsel), 8 (extraneous offenses), 11 (Trevino statements), 13 (lesser-included charge), and 17 (photos), until his second subsequent state habeas application—also found to be an abuse of the writ—despite raising somewhat similar claims in his direct appeal brief and/or other pleadings. Accordingly, all of these claims are procedurally defaulted.

### A.   Alvarez's argument that his claims are not defaulted is without merit.

In his supplemental brief, Alvarez claims that he exhausted his claims and incorporates his reply brief by reference. ECF No. 59 at 11. In his reply brief, Alvarez argued that: (1) the Section 5 bar was not independent and adequate with respect to the claims raised in his first subsequent state habeas application (ECF No. 31 at 54-60); (2) he fairly presented the legal and factual basis of his several of his claims to the state court during direct appeal (*id.* at

---

[9]     *Napue v. Illinois*, 360 U.S. 264 (1959).

32-33); and (3) he adequately presented his IATC claims in his initial state habeas reply brief (*id.* at 32). As shown below, these assertions are meritless.

### 1.    The Section 5 bar is independent and adequate.

Alvarez's claims 4 (*Brady*), 5 (*Napue*), 6 (prosecutorial misconduct claim concerning Kim), and 7 (prosecutorial misconduct claim concerning HPD store room) were all first raised in a state habeas application that was dismissed as an abuse of the writ. 1 SHCR-02 1-83; *Ex parte Alvarez*, No. 62,426-02 slip op. Consequently, they are unequivocally procedurally barred from federal review.

Nevertheless, Alvarez argues in his reply brief that the state procedural rule (*i.e.* Section 5) that the CCA explicitly applied to these claims is not independent and adequate because the CCA allowed subsequent proceedings in what Alvarez views as a substantially similar case. ECF No. 31 at 56-60 (citing *Ex parte Alix*, No. 50,786-02 (Tex. Crim. App. Jun. 23, 2004)). However, the two cases are easily distinguishable. As shown below, the state court Alix's initial state habeas application was denied well before Alix discovered the alleged *Brady* violation. In contrast, the State made its *Brady* disclosure in Alvarez's case during the pendency of Alvarez's initial state habeas application, during which time it was litigated between the parties.

Indeed, the CCA denied Alix's initial request for state habeas relief on December 19, 2001. *Ex parte Alix*, No. 50,786-01 at Order (Tex. Crim. App. Dec. 19, 2001) (unpublished). After filing for federal habeas relief, Alix then moved

for abatement alleging that he had discovered new claims pertaining to the HPD Crime Lab's testing of DNA in one of the extraneous homicides presented at his trial. *Alix v. Quarterman*, 4:07-cv-00039 (S.D. Tex.) (ECF No. 8). The federal court then dismissed the case without prejudice on October 29, 2003, to allow Alix to exhaust his new claims in state court. *Id.* (ECF No. 16). The CCA reviewed Alix's application and determined that it met the exceptions for a subsequent application under Section 5 before eventually denying relief. *Ex parte Alix*, No. 50,786-02 & -03 (Tex. Crim. App. Sept. 27, 2006) (per curiam) (unpublished).

In Alvarez's case, however, factual predicate of this claim was made available to Alvarez at least as early as February 25, 2003, when the State alerted counsel to potential *Brady* issues. 1 SHCR-01 94 (*Brady* Disclosure). Original state habeas counsel sought and received discovery and retesting of the DNA during initial state habeas proceedings. 1 SHCR 79 (Motion for Preservation of Evidence); 88 (Motion to Abate); 153 (Request to Incur Expenses); 158 (Order Granting Request to Incur Expenses); 161 (Motion for Production); 166 (Order on Motion for Production).

Accordingly, the two cases are distinguishable. Alix's first habeas application was denied before he was aware of the factual predicate of his claim and therefore had no chance to litigate it at the time. Alvarez had knowledge

of the factual predicate of his claims during his initial state habeas proceeding and litigated them then.[10]

Moreover, even if Alvarez and Alix were identically situated the bar is still not inadequate. *Amos*, 61 F.3d at 342 ("we do not regard an occasional act of grace by the Texas court in entertaining the merits of a claim that might have been viewed as waived by procedural default to constitute such a failure to strictly or regularly follow the state's [. . .] rule as permits us to disregard that rule generally or where the state court has not done so.") (citation omitted). The Fifth Circuit noted that "the question [is] whether the rule 'is strictly or regularly applied *evenhandedly to the vast majority of similar claims*,' and "'the relatively few occasions. . . in which it might be said that the [CCA] has disregarded the rule and its exceptions are not sufficient to undercut the overall regularity and consistency of their application and thus the adequacy of the state procedural bar.'" *Hogue v. Johnson*, 131 F.3d 466, 488 (5th Cir. 1997).

---

[10]   This is not to say that any of Alvarez's prosecutorial-misconduct claims were exhausted at this time—no claims for relief based on the alleged prosecutorial misconduct were raised in Alvarez's initial state habeas proceeding through a properly filed and accepted amendment. Nevertheless, the factual predicate of the claims was available to Alvarez at the time of his first state habeas proceeding and the subject of litigation between the parties, as shown above.

## 2.   Alvarez did not fairly present the federal nature of several of his claims.

With respect to claims 8 (extraneous offenses), 11 (Trevino statements), 13 (lesser-included charge), and 7 (photos), the Director argued in his answer that these claims were unexhausted and procedurally defaulted because although somewhat similar claims were raised during direct appeal, they were not presented as federal constitutional violations or presented on a different legal or factual basis.[11] Alvarez now argues—incorporating by reference his reply brief—that he sufficiently raised these claims before the CCA because he made passing references to due process or somewhat similar legal arguments. ECF No. 31 at 31-32. However, Supreme Court and Circuit precedent make clear that this is insufficient for exhaustion purposes.

The exhaustion doctrine codified in 28 U.S.C. § 2254(b)(1) reflects a policy of comity consistently adhered to by the Supreme Court and the Fifth Circuit. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8-10 (1992); *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971); *Dowthitt v. Johnson*, 230 F.3d 733, 745-46 (5th Cir. 2000). Before seeking federal habeas corpus relief, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.

---

[11]   Alvarez later raised these claims in his procedurally defaulted second subsequent state habeas application.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S .C. § 2254(b)(1). Under AEDPA[12] federal courts lack the power to grant habeas corpus relief on unexhausted claims. *Kunkle v. Dretke*, 352 F.3d 980, 988 (5th Cir. 2003) ("28 U.S.C. § 2254(b)(1) requires that federal habeas petitioners fully exhaust remedies available in state court before proceeding in federal court."); *Henry v. Cockrell*, 327 F.3d 429, 432 (5th Cir. 2003) ("Absent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief.").

Thus, before a federal court will entertain alleged errors, a petitioner must have first provided the state's highest court with a fair opportunity to apply (1) the controlling federal constitutional principles to (2) the same factual allegations. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir. 1990). This requirement is designed to give state courts the initial opportunity to pass upon and, if necessary, correct errors of federal law in a state prisoner's conviction. *Picard*, 404 U.S. at 275-76; *Keeney*, 504 U.S. at 10 (The purpose of exhaustion "is not to create a procedural hurdle on the path to federal habeas court, but to channel claims

---

[12]    The Antiterrorism and Effective Death Penalty Act of 1996.

into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court.")

To provide the State with this necessary "opportunity," the prisoner must fairly present his claim to the appropriate state court in a manner that alerts that court to the federal nature of the claim. "Comity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court." *Keeney*, 504 U.S. at 10. Thus, "daisy-chain" citations—citations to state cases that cite federal constitutional law—do not "meet [the Supreme] Court's standards for proper presentation of a federal claim." *Howell v. Mississippi*, 543 U.S. 440, 443-44 (2005). Likewise, "[a] fleeting reference to the federal constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument, does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights." *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001).

Additionally, the exhaustion requirement is not met if the petitioner presents new legal theories or factual claims in his federal habeas petition. *Anderson v. Harless*, 459 U.S. 4, 6-7 (1982); *Riley v. Cockrell*, 339 F.3d 308, 318 (5th Cir. 2008) ("It is not enough that the facts applicable to the federal claims were all before the State court, or that the petitioner made a similar state-law based claim. The federal claim must be the 'substantial equivalent' of the claim brought before the State court."); *Wilder*, 274 F.3d at 259 ("where petitioner

advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement").

Here, Alvarez's "fleeting" references to due process[13] are insufficient to fairly present the federal nature of his claims. *Wilder* 274 F.3d at 260; *Canales v. Stephens*, 765 F.3d 551, 578 (5th Cir. 2014) ("Vague or fleeting references to principles of constitutional law are not enough, nor will the fact that the petitioner made a somewhat similar state law claim suffice.") (internal citations omitted). As a consequence, claims 8 (extraneous offenses), 11 (Trevino statements), and 17 (photos) are unexhausted and procedurally defaulted because Alvarez's direct appeal did not fairly apprize the state court of the claims' federal nature. The lesser-included-charge claim (claim 13) is likewise procedurally defaulted because as explained in the Director's answer, Alvarez did not present it to the state court on the same legal theory as in his federal habeas petition. ECF No. 22 at 129.

### 3. Alvarez improperly presented claims in his state habeas reply brief.

Alvarez argues that trial counsel rendered ineffective assistance throughout pretrial, guilt-innocence, and sentencing. Petition at 44-140.

---

[13]   Alvarez's citation to *In re Murchison*, 349 U.S. 133 (1955), relied upon on his reply brief to show exhaustion, does not even occur in one of claims in question, but rather an unrelated claim. ECF No. 31 at 32.

However, as shown below, these claims were not properly presented to the state courts. "If a petitioner wishes to exhaust his constitutional claims, he is expected to present them before the state courts in a procedurally correct manner. If he fails to do so, he has failed to give the state a fair opportunity to pass upon those claims and, as a result, has failed to meet the requirements of exhaustion." *McGee v. Estelle*, 704 F.2d 764, 768 (5th Cir. 1983); 28 U.S.C. § 2254(b) (precluding federal habeas corpus relief when applicant has not exhausted state court remedies); *Picard*, 404 U.S. at 275-76 (all the grounds raised in a federal writ must have been fairly and properly presented to highest state court); *Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir. 1989) (claims must be presented in a procedurally correct fashion).

Proper presentation of claims in Texas is generally accomplished through a properly-filed state habeas application or direct appeal to the CCA. *See*, *e.g.*, *Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001) ("Beazley did *not* raise this issue in either his direct appeal or his state habeas petition."). Furthermore, the CCA has held that an untimely amendment adding new claims is not allowed under the statute governing habeas corpus petitions seeking relief from a death sentence.[14] *Ex parte Medina*, 361 S.W.3d at 636-37;

---

[14]    Alvarez's initial state habeas application was filed at the end of the applicable time period, thus not allowing for subsequent amendment. 1 SHCR-01 2-3. Section 4 of Article 11.071 of the Texas Code of Criminal Procedure states:

*Ex parte Graves*, 70 S.W.3d 103, 106 (Tex. Crim. App. 2002) (emphasis added) (rejecting an applicant's attempt to supplement his habeas application because the "filing was an 'untimely supplement' to the initial application" that did not comply with Article 11.071); *Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir. 2001) (a late-filed supplement to a state application for a writ of habeas corpus does not properly present a claim in the CCA).

Here, Alvarez did not raise any IATC claims on direct appeal. *See generally* Appellant's Brief. Likewise, Alvarez also did not raise any IATC claims in his original state habeas application save that counsel should have challenged the admissibility of evidence allegedly obtained in violation of the

---

(a)     An application for a writ of habeas corpus, returnable to the court of criminal appeals, must be filed in the convicting court not later than the 180th day after the date the convicting court appoints counsel under Section 2 or not later than the 45th day after the date the state's original brief is filed on direct appeal with the court of criminal appeals, whichever date is later.

(b)     The convicting court, before the filing date that is applicable to the applicant under Subsection (a), may for good cause shown and after notice and an opportunity to be heard by the attorney representing the state grant one 90-day extension that begins on the filing date applicable to the defendant under Subsection (a). Either party may request that the court hold a hearing on the request. If the convicting court finds that the applicant cannot establish good cause justifying the requested extension, the court shall make a finding stating that fact and deny the request for the extension.

(c)     An application filed after the filing date that is applicable to the applicant under Subsection (a) or (b) is untimely.

VCCR. 1 SHCR-01 2-28. He did not raise an IATC claim in his supplemental application detailing the VCCR violation. Supp. SHCR-01 2-32.

In his state habeas reply brief, Alvarez did claim that the VCCR violation affected the quality of counsel's representation, but no free-standing ineffectiveness claims were made. 2 SHCR-01 390. Alvarez's claims regarding the quality of his trial and appellate representation were piggy-backed onto the VCCR claim, and thus can only be addressed in that context. Moreover, while the trial court addressed some allegations of ineffective assistance of counsel in its findings, these specific findings were not adopted by the CCA.[15] *Ex parte Alvarez*, No. 62,426-01, slip op. at 2. This likely reflected the CCA's belief that the ineffectiveness claims were not properly before the state habeas court. *Id.*

---

[15]    In his supplemental brief, Alvarez asserts that the trial court did not consider his reply brief at all. ECF No. 59 at 5 ("[. . .] current habeas counsel filed a Motion to Withdraw Mr. Ribnik's Application for Writ of Habeas Corpus [. . .] The state court never addressed this motion.") ("On that same date, [Alvarez] filed a Motion for Evidentiary Hearing, Reply in Support of Application for Writ of Habeas Corpus and Motion Renewing Request for an Evidentiary Hearing to Resolve Controverted Material Facts, Motion Requesting Permission to Participate as Pro Hac Vice Counsel and Motion Supporting Applicant's Motion to Participate as Pro Hac Vice Counsel. The state court never ruled on any of these filings submitted by Mr. Alvarez.), 6 ("On May 23, 2008, the court issued Findings of Facts and Conclusions of Law, and an Order sending all documents related to Mr. Alvarez's case, 787007-A to the Texas Court of Criminal Appeals pursuant to Article 11.071 of the Texas Code of Criminal Procedure. The court did not rule on any of the [Alvarez]'s other pending motions or pleadings." To the extent this is true, then the arguments contained in these documents are clearly procedurally defaulted because they were never considered during the initial state habeas proceeding.

Nevertheless, to the extent that there is any doubt as to whether the CCA reached the merits of these ineffectiveness claims, the CCA clarified the matter during Alvarez's second subsequent state habeas proceeding. The CCA stated in its most recent order that "[t]he record also reflects that the federal district court has entered an order staying its proceedings for [Alvarez] to return to state court to consider *his current unexhausted claims*"—thus reflecting the view of the CCA that the claims had not been considered previously. *Ex parte Alvarez*, No. 62,426-04, slip op. at 2 (emphasis added). Similarly, the concurrence explained that "[Alvarez] argues that, but for the ineffectiveness of his initial state habeas attorney, he could have asserted a 'robust' claim of ineffective assistance of trial counsel in his initial application." *Id.*, concurring opinion at 2. "[Alvarez] argues that, under these circumstances, he ought to be allowed to raise his claim of ineffective trial counsel *for the first time* in a subsequent state writ application."[16] *Id.*, concurring opinion at 3 (emphasis added). "Suffice it to say that I am persuaded that, should this Court refuse to reach the merits of [Alvarez]'s claim of ineffective assistance of trial counsel, the federal courts may do so, and indeed may conduct their own review de novo, not deferentially (*since there is no state decision on the merits to defer*

---

[16]     "He also make[s] a different, alternative argument for why this Court should reach his [IATC for failure to investigate mitigating evidence] claim *for the first time* in his second subsequent writ application[…]" *Id.* at 20 (emphasis added).

*to*), under *Martinez/Trevino*." *Id.*, concurring opinion at 3 (emphasis added). Thus, it is clear that the CCA did not believe that there was a decision on the merits concerning Alvarez's instant IATC claims during the first state habeas proceeding.

> The requirements of the exhaustion concept are simple: An applicant must fairly apprise the highest court of his state of the federal rights which were allegedly violated. Further, the applicant must present his claims in a procedurally correct manner. If, for whatever reason, an applicant bypasses the appellate processes of his state—whether through procedural default or otherwise—he will not be deemed to have met the exhaustion requirement absent a showing of one of two particulars. He must either demonstrate cause and prejudice or show that the failure to consider his claims will result in a fundamental miscarriage of justice.

*Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993) (internal quotation marks and citations omitted). As shown above, it is clear that raising IATC claims piggy-backed onto a VCCR claim in a reply brief, was insufficient for the purposes of exhausting the instant claims. Alvarez's relevant IATC claims are thus procedurally defaulted since they first reached the CCA in a subsequent state habeas application (Alvarez's second) that was rejected as an abuse of the writ.

## B.   If Alvarez's claims are not procedurally defaulted, then AEDPA's relitigation bar applies.

To the extent that the Court finds that these claims are procedurally defaulted, the Director agrees with Alvarez that they must be considered de

novo (since there is no state court decision to defer to). ECF No. 59 at 18-19. However, to whatever extent that they were properly presented to the state court (or otherwise addressed on the merits), then AEDPA's deferential scheme applies.

### C. Alvarez is not entitled to evade his procedural bars under *Martinez/Trevino*.

To the extent that Alvarez argues that he can circumvent the procedural default of his claim under *Martinez* and *Trevino*, Alvarez fails to demonstrate that he meets *Martinez*'s difficult[17] requirements. In *Martinez*, the Supreme Court held that when a State requires a petitioner to raise an IATC claim in an initial-review collateral proceeding, the petitioner may establish cause to excuse a default of that claim if either: (1) no counsel was appointed; or (2) counsel in that proceeding was ineffective under the standards of *Strickland*.[18] 132 S. Ct. at 1320. Alvarez had state habeas counsel, and therefore, he must demonstrate that his counsel was actually ineffective to qualify for *Martinez* relief. *Id*. at 1318, 1320.

---

[17]   Even in Trevino's case, subsequent district court proceedings did not ultimately find state habeas counsel was ineffective. *Trevino v. Stephens*, 2015 WL 3651534 at *6 (W.D. Tex. Jun. 11, 2015) (unpublished) ("Petitioner has failed to carry his burden under the [*Martinez*] standard of showing that his first state habeas corpus counsel rendered ineffective assistance during Petitioner's initial state habeas corpus proceeding.").

[18]   *Strickland v. Washington*, 466 U.S. 668, 695-96 (1984).

### 1.    Standard for ineffective assistance of appellate counsel.

Appellate counsel's effectiveness is measured by the same standard applied to trial counsel: whether the performance was objectively reasonable and whether any deficient performance prejudiced the proceeding. *Sharp v. Puckett*, 930 F.2d 450, 452 (5th Cir. 1991). Counsel is not ineffective merely because he fails to raise issues that the defendant, his client, requests him to raise. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Nor is counsel ineffective for failing to raise every possible point on appeal. *Id.* at 288. Rather, appellate counsel is obliged to raise and brief only those issues that he believes have the best chance of success. *Smith*, 528 U.S. at 285; *see also Engle v. Isaac*, 456 U.S. 107, 134 (1982) ("[T]he constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."). Only "solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *United States v. Williamson*, 183 F.3d 458, 462-63 (5th Cir. 1999). In the instant case, it is clear that Ribnik effectively investigated and prosecuted Alvarez's case under the standards set forth above. Indeed, Alvarez asserts a very different type of grievance against

his attorney than the complaint levied by Martinez[19]—Alvarez only claims that state habeas counsel failed to present certain claims and evidence in conjunction with Alvarez's state habeas application.

### 2.    State habeas counsel was not ineffective.

Here, the record reflects that Ribnik, Alvarez's initial state habeas counsel, filed a twenty-seven-page initial state writ, including VCCR and ineffectiveness claims. 1 SHCR-01 1-27. Upon further developments in the law, Ribnik moved to stay the case (*id*. at 170) and supplemented Alvarez's VCCR claims with new authority. Supp. SHCR-01 2-32. Alvarez's VCCR supplement contained almost two hundred pages of exhibits and affidavits. *Id*. at 34-227. The trial court, thinking that this supplement might constitute a new habeas application, sent it to the CCA for a determination. Ribnik objected in writing and prevailed. *Id*. at 230-33. The CCA found that the supplement only offered new precedent, did not raise new claims, and ordered the trial court to consider

---

[19]     Martinez was convicted in Arizona state court of sexual conduct with a minor. *Martinez*, 132 S. Ct. at 1313-15. His conviction was affirmed on direct appeal. *Id*. During the pendency of his appeal, Martinez's appellate counsel initiated collateral review in state court by filing a notice of post-conviction relief. *Id*. But counsel then filed a statement that she could find no colorable claim for post-conviction relief. *Id*. The state court gave Martinez the option of filing a pro se petition, but Martinez alleged that his counsel failed to inform him that he needed to do so. *Id*. After the time to file a petition expired, the trial court dismissed the collateral action. *Id*. Later, represented by new counsel, Martinez filed a new notice of postconviction relief in state court and alleged that Martinez's trial counsel had been unconstitutionally ineffective. *Id*. But Martinez's petition was dismissed since he did not present the claim in the first proceeding. *Id*. In subsequent federal habeas proceedings, the district court denied Martinez's claims as procedurally barred. *Id*.

Alvarez's claims to the extent they were appropriate. *Ex parte Alvarez*, No. 62,426-01 (Order of June 6, 2007).

Ribnik also pursued the possibility of a *Brady* violation with respect to the Houston Police Department's handling of the DNA in Alvarez's case. The factual predicate of this claim was made available to Alvarez on February 25, 2003, when the State alerted counsel to potential *Brady* issues. 1 SHCR-01 94 (*Brady* Disclosure). Ribnik sought and received discovery and retesting of the DNA during state habeas proceedings. 1 SHCR 79 (Motion for Preservation of Evidence); 88 (Motion to Abate); 153 (Request to Incur Expenses); 158 (Order Granting Request to Incur Expenses); 161 (Motion for Production); 166 (Order on Motion for Production).

Additionally, the affidavit supplied by Ribnik (and attached to Alvarez's federal habeas reply brief) shows his investigation and preparation of Alvarez's state writ. ECF 31-1 at 36-38 (using ECF numbering). Ribnik states that he met with Alvarez in prison at least four times. *Id*. He requested and reviewed the statement of facts and the transcript over the span of more than a month. *Id*. He reviewed the State's file and spent three days taking notes at the DA's office. *Id*. He reviewed this information with Alvarez in prison. *Id*. He did legal research. *Id*. He met with Alvarez's direct appeal attorney to discuss the case. *Id*. He met with Alvarez's trial attorney and received the attorney's case file. *Id*. He discussed a possible mitigation case with a specialist, but he opted not

to pursue a mitigation investigation *Id*. He met with six members of Alvarez's immediate family, Alvarez's mother, and two siblings. *Id*. He discussed juror conduct with Alvarez and reviewed the voir dire transcript. *Id*. It is difficult to see how this comports with Alvarez's contention that there were "no investigations on [Alvarez]'s behalf." ECF No. 59 at 59.

Moreover, as noted by the Court, attorney Susan Crump signed Alvarez's initial habeas application in addition to Ribnik. ECF No. 35 at 4 n.1. The Government of Mexico was also involved in Alvarez's case and may have provided counsel and resources. *Id*. And current federal counsel later represented Alvarez in state habeas proceedings following Ribnik's withdrawal.

Alvarez asserts that Ribnik has displayed a "pattern" of ineffective assistance in other cases.[20] ECF No. 59 at 32-40. However, it is clear that Ribnik's performance in other cases has little relevance to this proceeding, since Alvarez must necessarily show that Ribnik was ineffective in Alvarez's own case to obtain *Martinez/Trevino* relief. "Both prongs of the *Strickland* test [] require examination of the specific conduct and decisions made by counsel in the particular case; [petitioner] cannot establish that the representation he

---

[20]    Alvarez argues that Dr. Michael Adelberg has opined that Ribnik was likely suffering from the deleterious effects of Parkinson's disease during his representation of Alvarez. ECF No. 59 at 38-40. But Dr. Adelberg's retroactive assessment without personal evaluation of the patient in question is obviously of extremely dubious probative value.

received was constitutionally inadequate merely from evidence about [his attorney's] reputation or conduct in other cases." *Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir. 1994).

Regardless, prejudice cannot be shown in the absence of a reasonable probability that, but for counsel's omitting a particular ground of error, the case would have been reversed on appeal. *Smith*, 528 U.S. at 285. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. Petitioners must also "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

As shown below and in the Director's answer, Alvarez's IATC claims are without merit. ECF 22 at 39-87. Because Alvarez's underlying IATC claims are without merit, there is no way that Alvarez can make the "substantial" showing required by *Martinez* that he was prejudiced by state habeas counsel's alleged deficiencies. 132 S. Ct. at 1318-19 (requiring a showing "that the underlying [IATC] claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit"); *Canales*, 765 F.3d at 568, 571. Thus, Alvarez is not eligible to circumvent the procedural bars to review of his claims.

### 3.    Alvarez's argument under *Canales* is meritless.

Alvarez asserts that under *Canales*, the Fifth Circuit has proposed a three-part test for evaluating *Martinez* claims: "(1) that counsel in initial-review state collateral proceedings was deficient, meaning their performance fell below an objective standard of reasonableness; (2) that the underlying [IATC] claim is substantial, meaning it has 'some merit'; and (3) that the petitioner suffered prejudice as a result of the unreasonable performance of his trial counsel. ECF No. 59 at 14-15 (citing *Canales*, 765 F.3d at 567-68). But Alvarez's proposed test suggests that *Canales* stands for the proposition that the evaluation of state habeas counsel is solely predicated on deficient performance absent a prejudice component (or, perhaps, that the prejudice component is subsumed and reduced into the "some merit"/substantiality analysis). Such a view is contradicted by other published Fifth Circuit precedent on this matter that holds that state habeas counsel must be evaluated for both deficiency and prejudice under *Strickland*. "To establish ineffective assistance of state habeas counsel [under *Martinez*], [petitioner] must show both that habeas counsel's performance—in failing to present to the state habeas court the evidence that he presented for the first time in federal court—was deficient and that he was prejudiced by the deficient performance—that is, that there is a reasonable probability that he would have been granted state habeas relief had the evidence been presented in the state

habeas proceedings. *Newbury v. Stephens*, 756 F.3d 850, 872 (5th Cir. 2014) (citing *Strickland* and *Martinez*); *see also Beatty v. Stephens*, 759 F.3d 455, 466 (5th Cir. 2014) (citing *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 2876 (2014), for the proposition that "habeas counsel was not ineffective in failing to raise [a] claim at the first state proceeding" because "there was no merit to [the petitioner's] claim").[21] To the extent that *Canales* calls for something other than the evaluation called for *Newbury*, *Beatty*, and *Garza*, the Court should follow the aforementioned opinions and not *Canales*.

Indeed, the *Canales* opinion is extremely opaque and does not provide clear guidance on this issue. For instance, it is unclear whether Canales has received any relief under *Martinez*, or if such relief remains in question following the Fifth Circuit's remand to the district court for a determination on prejudice. The panel stated that "Canales has established cause to excuse the procedural default of his claim of ineffective assistance of trial counsel at sentencing," but then stated that "[w]e remand this claim for the district court to consider whether Canales can prove prejudice as a result of his trial

---

[21]    *Rayford v. Stephens*, 622 F. App'x 315, 332 (5th Cir. 2012) (unpublished) ("Rayford's claim here is that his state habeas counsel provided ineffective assistance[. . . .] We apply the two-step test set out in [*Strickland*], which first requires a defendant to "show that counsel's performance was deficient. [. . .] In the second step, the defendant is required to prove that his attorney's deficient performance prejudiced his defense.").

counsel's deficient performance, and if so, to address the merits of his habeas petition on this claim." *Canales*, 765 F.3d at 571. Given that the prejudice analysis was not undertaken by the panel and left for the district court, it is difficult to see how the panel could have found state habeas counsel ineffective (since prejudice is a component of the evaluation of an attorney's ineffectiveness) or how the underlying IATC claim could have some merit (with prejudice likewise a component)—both of which are required to allow evasion of a bar under *Martinez*. Likewise, in relation to another of Canales's claims for *Martinez* relief, the panel stated that "[t]o excuse the procedural default fully, Canales would then be required to prove that he suffered prejudice from the ineffective assistance of his trial counsel." This would seem to suggest that the panel believed that the claim remanded had not been "fully" excused since the prejudice analysis had not been conducted.

The Eastern District of Virginia has ably explained the interlocking and "matrioshkan" prejudice standards in *Martinez* and correctly set forth the issue with the *Canales* opinion:

> The first element of *Martinez* deals with the underlying, otherwise procedurally defaulted [IATC] claim. Specifically, the prisoner must "demonstrate that the underlying [IATC] is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318. The Supreme Court indicated that the "some merit" threshold bore some relation to the standards for issuing a certificate of appealability ("COA"). *Id.* at 1318-19 (citing *Miller–*

*El v. Cockrell*, 537 U.S. 322 (2003)).[22] Phrased in the alternative, a claim is not substantial if "it does not have any merit or is wholly without factual support." *Id.* at 1319. Obviously, this requires consideration of the claim under the standards for effective assistance of counsel first outlined in [Strickland]:(1) whether the petitioner's trial "counsel's performance was deficient"; and (2) whether "the deficient performance prejudiced the defense." 466 U.S. at 687.

The second element of *Martinez* focuses on the petitioner's state-habeas proceedings. Specifically, the petitioner must establish that he either lacked counsel or had ineffective counsel during his state-habeas proceedings. 132 S. Ct. at 1318. If the prisoner lacked counsel entirely, then the element is met automatically. If the prisoner had state-habeas counsel, however, this element requires a full analysis under *Strickland* to determine whether the state-habeas counsel's conduct fell below the constitutionally permissible threshold and prejudiced the outcome of the habeas proceeding.[23] To be clear, this *Strickland* analysis applies to the conduct of the prisoner's state-habeas counsel, and asks specifically whether he or she was constitutionally ineffective for failing to raise trial counsel's ineffectiveness.

Although *Martinez* separates the first and second elements, the two blend together. Specifically, the prejudice prong for

---

[22]    "Under the controlling standard [for issuing a COA], a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotations and alterations omitted). [footnote in original]

[23]    Some courts have determined that the second *Martinez* element focuses only on the deficiency prong of Strickland and bypasses the prejudice prong. *See*, *e.g.*, [*Canales*, 765 F.3d at 569]; *Detrich v. Ryan*, 740 F.3d 1237, 1245-56 (9th Cir.2013) (en banc) (plurality opinion). But *Martinez* itself requires an analysis of whether the state-habeas counsel "was ineffective under the standards of *Strickland*." 132 S. Ct. at 1318 (emphasis added). This indicates that both prongs must be considered. Without any indication that the habeas-ineffectiveness claim is limited to only the first half of *Strickland*, the Court must apply the whole test. *See*, *e.g.*, [*Newbury*, 756 F.3d at 872]; *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014). [footnote in original]

habeas-level ineffectiveness requires a consideration of the merits of the underlying trial-level ineffectiveness claim, because *Strickland* prejudice requires consideration of "whether it is 'reasonably likely' the result would have been different" in that proceeding. *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*, 466 U.S. at 693). In reviewing a *Martinez* claim, a court asks whether the state-level habeas proceeding would have come to a different result if habeas counsel brought forward the trial-level ineffectiveness claim. "Thus, the facts that bear on the *Strickland* prejudice analysis and the *Martinez* substantiality analysis will largely be the same," because both questions ask a court to consider the merits of that underlying claim. *Teleguz v. Davis*, No. 7:10-cv-254, 2014 WL 3548982, at *24 (W.D. Va. July 17, 2014). Somewhat circuitously, therefore, the *Martinez* exception to the procedural-default bar includes within it consideration of the merits of the procedurally defaulted claim.

[. . .]

A preliminary merits review of each [IATC] claim gives the Court the most efficient manner in which to decide the applicability of *Martinez* to the amended claims. If an underlying trial-ineffectiveness claim has no merit, then it fails not only under *Martinez*'s first element, but also the second element, because state-habeas counsel could not have been ineffective for failing to raise a meritless claim. *See, e.g., Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996) ("Failure to raise a meritless argument can never amount to ineffective assistance."). If the underlying claim has some merit, then the Court must decide whether state-habeas counsel's failure to raise it during the initial-review collateral proceedings violated the standards from *Strickland*. If state-habeas counsel lived up to the constitutional standard, then the amended claims are procedurally defaulted. If, on the other hand, the amended claims meet both the first and second elements, then the Court can determine the appropriate relief on the merits.

*Juniper v. Zook*, 117 F. Supp.3d 780, 789-91 (E.D. Va. Aug. 3, 2015).

Indeed, *Martinez* calls into play no less than four prejudice standards—the prejudice standard in evaluating IATC, the prejudice standard in evaluating IASHC, the substantiality requirement in *Martinez* itself, and the prejudice in the cause-and-prejudice standard required to excuse a procedural default. As suggested by the Virginia district court, the most efficient way to dispose of such claims is simply to conduct a preliminary review of the underlying IATC claim's merits. If the underlying IATC claim has no merit, then no further work from the Court is required and the claim can be summarily denied both on the merits with the procedural bar indisputably intact.[24]

## II.   Alvarez's Underlying IATC Claims Are Meritless.

Alvarez's IATC claims can be denied on the basis of the existing record.[25] Alvarez provided lengthy briefing in his petition concerning his IATC claims. ECF No. 18 at 44-140. The Director answered, explaining why counsel's

---

[24]   Nevertheless, to whatever extent that the Court wishes to evaluate the performance of state habeas counsel, the Court should employ the full *Strickland* evaluation called for by *Newbury*, *Beatty*, and *Garza*, and not the approach that Alvarez advocates.

[25]   The Fifth Circuit has previously denied an IATC claim based on a first-in-time review conducted by that court without remand, thereby demonstrating that *Martinez* does not require a hearing on a procedurally defaulted IATC claim and may be resolved on the merits based solely on the record. *See, e.g.*, *Reed v. Stephens*, 739 F.3d 753, 774-75 (5th Cir. 2014); *see also Canales*, 765 F.3d at 569 n.2 (leaving the determination of whether an evidentiary hearing is appropriate to the district court).

performance was not ineffective.[26] ECF No. 22 at 39-87. Given the length of Alvarez's briefing, the Director will rely on his answer to show that Alvarez's trial counsel was not deficient. *Id*.

But the Director does note that even assuming arguendo that counsel's performance was deficient at pretrial, guilt-innocence, or in any other respect, Alvarez has not demonstrated that he was prejudiced as a result. In order to establish that he has sustained prejudice, Alvarez "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id*. Here, the evidence of Alvarez's guilt included Alvarez's videotaped statement admitting his presence at the Prestwood and Woodfair shootings and as well as possession of the assault rifle and shotgun (21 RR 56-62; SX 138), the fact that the weapons were found in Alvarez's closet (21 RR 178-212; SX 58; SX 99), eyewitness and accomplice testimony that placed

---

[26]    *See, e.g., Richter*, 562 U.S. at 110 ("*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."); *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir. 1992) ("The defense of a criminal case is not an undertaking in which everything not prohibited is required. Nor does it contemplate the employment of wholly unlimited time and resources."); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (citations omitted) ("Countless times [the Fifth Circuit has] indicated that competency and adequacy are all that the Constitution commands of trial counsel. Counsel is not required to be errorless in his work, though surely that is a worthy goal. Effective assistance of counsel means 'not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.'").

Alvarez at the shootings (18 RR 131-87; 19 RR 11-49, 176-213; 20 RR 8-64), and the DNA evidence showing a victim's blood to the weapons. 22 RR 83-126.

Furthermore, with respect to punishment, the record reflects that the State produced evidence of Alvarez's commission of various extraneous offenses, including: (1) the drive-by shooting murder of Juan Nevarez (25 RR 9-98); (2) the drive-by shooting of Jesus Bear and Aniceto Espinoza (25 RR 98-202; 26 RR 5-39); (3) the aggravated robbery of Tomas Carreon, Jr. (26 RR 39-60, 124-43); and (4) the aggravated assault of Alex Trajejo, for which Alvarez received eight years deferred adjudication community supervision (26 RR 61-123). The defense, on the other hand, presented testimony from lay and expert witnesses, including but not limited to a psychologist, Alvarez's sisters, and his mother. ECF No. 22 at 21-24. These individuals related information to the jury concerning Alvarez's personal history, family background, and mental-health issues. *Id*. Moreover, the allegedly omitted personal history relied upon by Alvarez hardly compares the ones found prejudicially omitted by the Supreme Court in other cases. *See e.g.*, *Rompilla v. Beard*, 545 U.S. 374, 390-92 (2005); *Wiggins v. Smith*, 539 U.S. 510, 516-17, 525, 534-35 (2003); *Williams v. Taylor*, 529 U.S. 362 395 (2000); *see also* ECF No. 22 at 83-87. Thus, even if this Court finds deficient performance by trial counsel, Alvarez is not entitled to relief on any of his IATC claims due to a failure to show prejudice. *Ramirez v. Dretke*,

398 F.3d 691, 697 (5th Cir. 2005) (reiterating that both prongs of the *Strickland* test must be satisfied in order to be entitled to relief).

## III.   Alvarez Is Not Entitled to Funding or a Hearing to Investigate His Procedurally-Defaulted Ineffectiveness Claims.

Alvarez concedes in his supplemental brief that "*Martinez* does not address the right to competent counsel to conduct initial-review litigation of ineffectiveness claims in federal court." ECF No. 59 at 19-22. However, he nevertheless contends that "the same considerations that led the Supreme Court to conclude that competent counsel is necessary to conduct initial-review litigation in state court apply equally to initial-review litigation in federal court." *Id*. He therefore asserts that he is entitled to funding and resources to pursue his IATC claims, as well as an evidentiary hearing to conduct factual investigation.[27] *Id*.

---

[27]   To the extent that Alvarez persists in contending that his IATC claims are exhausted through presentation during his initial state habeas proceeding, he is also not entitled to funding for any additional investigation. Except for the narrow exceptions contained in 28 U.S.C. § 2254(e)(2), the evidence upon which Alvarez would now challenge the state court's findings on exhausted IATC claims must have been presented to the state court. *Cullen v. Pinholster*, 563 U.S. 170, 179-81 (2011). Furthermore, the Fifth Circuit has held that "once a claim is considered and denied on the merits by the state habeas court, *Martinez* is inapplicable, and may not function as an exception to *Pinholster*'s rule that bars a federal habeas court from considering evidence not presented to the state habeas court." *Escamilla v. Stephens*, 749 F.3d 380, 395 (5th Cir. 2014) (citing *Gallow v. Cooper*, 505 F. App'x 285, 291 (5th Cir. 2012), *Ross v. Thaler*, 511 F. App'x 293, 305 (5th Cir. 2013), cert. denied 134 S. Ct. 23 (2013)).

But the Fifth Circuit has "rejected the argument that *Martinez* and *Trevino* require the granting of funds to develop claims[.]" *Allen v. Stephens*, 805 F.3d 617, 638-39 (5th Cir. 2015) (citing *Crutsinger v. Stephens*, 576 F. App'x 422, 431 (5th Cir. Aug. 4, 2014) (unpublished), cert. denied 135 S. Ct. 1401 (2015) ("*Martinez* [] does not mandate pre-petition funding, nor does it alter our rule that a prisoner cannot show a substantial need for funds when his claim is procedurally barred from review.")); *see also Wilkins v. Stephens*, 560 F. App'x 299, 315 (5th Cir. Mar. 25, 2014) (unpublished), cert. denied 135 S. Ct. 1397 (2015) (affirming denial of funding on procedurally defaulted claims); *Sells v. Stephens*, 536 F. App'x 483, 499 (5th Cir. July 22, 2013) (unpublished), cert. denied 134 S. Ct. 1786 (2013) ("[O]ur precedent is clear that a habeas petitioner is not entitled to investigative funds" on claims that are defaulted.); *Woodward v. Epps*, 580 F.3d 318, 334 (5th Cir. 2009) (a petitioner cannot establish a substantial need when his claim is procedurally barred, or when the sought-after assistance would only support a meritless claim);. Because Alvarez's IATC claims are procedurally defaulted, Alvarez is not entitled to funds under *Allen*, *Wilkins*, *Crutsinger*, *Sells*, and *Woodward* unless he has first demonstrated that he can circumvent the procedural bar to federal review of his claims.

Moreover, Alvarez's reliance on *Mendoza* is misplaced. ECF No. 59 at 21. Since *Martinez* and *Trevino*, a number of federal habeas petitioners have

argued that they are entitled to "conflict-free" counsel—i.e., different state and federal habeas counsel. *See*, *e.g.*, *Mendoza v. Stephens*, 783 F.3d 203 (5th Cir. 2015); *Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015); *Tabler v. Stephens*, 591 F. App'x 281 (5th Cir. Jan. 27, 2015) (per curiam) (unpublished). But while *Mendoza*, *Speer*, and *Tabler* recognize that substitution of federal habeas counsel, or appointment of additional counsel, is warranted when that counsel must review their prior work, these cases plainly did not create or recognize a right to funding or the effective assistance of federal habeas counsel.

In any event, considering the already extensive briefing in this matter, it would appear that the case requires no additional investigation and is ripe for immediate adjudication. As noted by the Court:

> Before returning to state court for his third round of habeas review, Alvarez had already filed a detailed and fact-intensive federal habeas petition. His federal petition spans 310 pages, not including 77 exhibits. His amended petition contains 330 pages. This Court stayed the case to allow exhaustion of Alvarez's argument that state habeas counsel provided ineffective representation. Alvarez has already provided this Court with significant briefing, including important factual support, regarding that allegation.

ECF No. 44 at 2. Accordingly, the Court should proceed to rule on Alvarez's claims and deny any federal habeas relief.

## CONCLUSION

For the reasons set forth above, as well as the Director's answer and his other pleadings, the Director asks that the Court deny any habeas relief.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

ADRIENNE MCFARLAND
Deputy Attorney General
   for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division


                   s/ Stephen M. Hoffman

* Attorney-in-charge     *STEPHEN M. HOFFMAN
Assistant Attorney General
Texas Bar No. 24048978
Southern District Bar No. 602073
P. O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936-1400
Fax: (512) 320-8132
Email: Stephen.Hoffman@
   texasattorneygeneral.gov

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that March 15, 2016, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorneys of record, who consented in writing to accept this Notice as service of this document by electronic means:

Robert L. McGlasson
Attorney at Law
1024 Clairmont Rd
Decatur, GA 30030

and

Skyla Olds
819 Delaware St.
Berkeley, CA 94710

s/ Stephen M. Hoffman
STEPHEN M. HOFFMAN
Assistant Attorney General
